FILED
2025 Oct-17  AM 08:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

**CAROLYNN ELIZABETH WOOD,**

*Plaintiff,*

**ALABAMA DAMAGE SPECIALISTS, LLC,**
**TRENT THRASHER CONSTRUCTION, LLC**
**ELECTRIC PLUS, LLC,**

*Rule 19 Indispensable Parties,*

*v.*

**NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER,**
**and**
**JOHN DOE, Supplemental Servicer,**

*Defendants.*

## COMPLAINT FOR DECLARATORY
## AND INJUNCTIVE RELIEF AND DAMAGES

**JURY TRIAL DEMANDED**

**CAROLYNN ELIZABETH WOOD**
491 White Plains Road
Anniston, Calhoun County, AL 36207
Telephone: (928) 925-8031
Email: carolynn.e.c.wood@gmail.com
*Plaintiff, Pro Se*

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

I. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

II. Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. Rule 19 Indispensable Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

IV. Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

V. Venue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Background Overview Ties to Relative Statement of Facts . . . . . . . . . . . . . . . . . . . 8

VI. Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

VII. Causes of Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

    Count One – Fair Housing Act (Failure to Accommodate and Retaliation) . . . . . . . 22

    Count Two – Section 504 of the Rehabilitation Act . . . . . . . . . . . . . . . . . . . . . . .   25

    Count Three – Real Estate Settlement Procedures Act (12 U.S.C. § 2605) . . . . .   26

    Count Four – Declaratory and Injunctive Relief . . . . . . . . . . . . . . . . . . . . . . . . .   28

    Count Five – Related State-Law Claims (Bad-Faith Servicing / Contract) . . . . . . . 30

    Count Six – RESPA  (12 U.S.C. § 2605(e), (k); 12 C.F.R. §§ 1024.17, 1024.35,
    1024.38) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

VIII..HUD Admisnitrative Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   36

IX. Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   39

X.  Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

XI. Prayer For Relief  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   46

XII. Demand for Jury Trial  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   48

Verification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .48

Certificate of Service  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .48

Exhibit Index

# TABLE OF AUTHORITIES

**Statutes**

12 U.S.C. § 2605
28 U.S.C. § 1331 – Federal Question Jurisdiction
28 U.S.C. § 1343
28 U.S.C. § 1367(a)
28 U.S.C. § 1391(b)
28 U.S.C. § 2201-2202 – Declaratory Judgment Act
29 U.S.C. § 794 – Section 504 of the Rehabilitation Act of 1973
38 U.S.C. §3701-3775 – VA Home Loans
42 U.S.C. § 3601 *et seq.* – Fair Housing Act
42 U.S.C. § 3604(f)(2) - Discrimination in services related to a dwelling
42 U.S.C. § 3604(f)(3)(B) – Definition of Reasonable Accommodation
42 U.S.C. § 3613(a)(2) – Private Right of Action after 30 Days
42 U.S.C. § 3617 (interference, coercion, or intimidation in the exercise of fair-housing rights).

**HUD and DOJ Regulations and Guidance**

HUD–DOJ Joint Statement on Reasonable Accommodations (May 2004)

HUD Information for Housing Providers (the "interactive process")

HUD Mortgagee Letter 2023-12 requires mortgage servicers to engage in reasonable, good-faith communications and accommodations with borrowers, including those with disabilities.

**Rules**

Fed. R. Civ. P. 19(a)

**Regulations**

38 C.F.R. § Part 36 – VA Guidelines
12 C.F.R. § 1024 (Reg X) — RESPA servicing standards require timely acknowledgment and response to borrower inquiries
24 C.F.R. § 203.604
24 C.F.R. § 100.204 – Reasonable Accommodation Standards
12 C.F.R. § 8.4 – Section 504 Accessibility and Non-Discrimination
12 C.F.R. § 1024.36 – Servicer Response Requirements (Regulation X)
12 C.F.R. § 1024.36 (Reg X – Servicer response deadlines)

# UNITED STATES DISTRICT COURT
## for the
## NORTHERN DISTRICT OF ALABAMA
### Eastern Division, Anniston

*2025 OCT 16  P 3 53*

*U.S. DISTRICT COURT*
*N.D. OF ALABAMA*

|  |  |  |
|---|---|---|
| **CAROLYNN ELIZABETH WOOD,** | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **ALABAMA DAMAGE SPECIALISTS, INC.;** | ) | |
| **TRENT THRASHER CONSTRUCTION LLC;** | ) | |
| **and ELECTRIC PLUS, LLC,** | ) | **No. _____** |
| (Joined as indispensable parties under Fed. R. Civ. P. 19 | ) | |
| for declaratory purposes only) | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **NATIONSTAR, LLC** | ) | |
| d/b/a **MR. COOPER** Mortgage | ) | |
| *Defendant.* | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **JOHN DOE, Successor Servicer** [1] | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND DAMAGES
## JURY TRIAL DEMANDED

Comes now the Plaintiff, Carolynn Elizabeth Wood, stating that because of the

actions and inactions of Defendant Nationstar Mortgage, LLC d/b/a Mr. Cooper

Mortgage, she, and the members of her household have sustained irreparable injury,

loss, and damages. Plaintiff and her family will continue to sustain harm unless this

---

[1] The "John Doe Successor Servicer" refers to **PHH Mortgage Services**, as identified in
NationStar/Mr. Cooper's correspondence dated October 1, 2025, notifying Mrs. Wood that
servicing of the VA-backed mortgage loan will transfer effective October 20, 2025.

court provides the necessary relief, as Plaintiff has exhausted every administrative remedy and is left with no recourse but the instant action.

## I. INTRODUCTION

1.  This Complaint will describe and outline the history behind what has amounted to multiple harms caused by Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper. 1. By denial of Reasonable Accommodation; refusing to accept Plaintiff's monthly mortgage payment, and 2. wrongfully withholding and misapplication of insurance proceeds following a September 5, 2024 fire at Plaintiffs' residence in Calhoun County, Alabama.

2.  This is a civil action for declaratory and equitable relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and related statutory provisions under RESPA (12 U.S.C. § 2605), the Fair Housing Act (42 U.S.C. § 3604(f) and § 3617), and VA servicing regulations.

3.  Plaintiff seeks damages for emotional distress, loss of use, and associated expenses due to Defendant's failure to acknowledge Plaintiff's request for Reasonable accommodation under the Fair Housing Act, and Defendant's ongoing withholding and misapplication of insurance proceeds which constitutes unlawful servicing conduct, violates federal mortgage-servicing standards, and frustrates VA program objectives.

4.  This civil action also seeks declaratory and equitable relief to resolve an ongoing dispute over insurance proceeds held by Defendant

Plaintiff asks the Court to declare the parties' rights to approximately $76,954.07 of restricted hazard-loss funds and to enjoin Defendant from transferring servicing or otherwise impairing those funds while this case is pending.

5.    Plaintiff also seeks statutory and compensatory relief for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, and for conversion and breach of the implied covenant of good faith and fair dealing arising from Defendant's misapplication and withholding of insurance proceeds.

6.    Plaintiff also seeks statutory and compensatory relief for violations of the Federal Fair Housing Act, and Section 504 of the Rehabilitation Act for harm caused by Defendant's failure to provide the relief Plaintiff was and is entitled to receive under the Fair Housing Act which directly contributed to the current controversary and is therefore, not moot.

## II. PARTIES

### PLAINTIFF

7.    Carolynn Elizabeth Wood, (hereinafter "Mrs. Wood"), is a 62-year-old resident of Anniston, Calhoun County, Alabama. Mrs. Wood is a U.S. Army veteran (Retired) with a 100% service-connected disability rating. Mrs. Wood cosigned for the VA Loan for the property located at 491 White Plains Road, Anniston, Alabama 36207, the property is her primary residence.

**DEFENDANT**

8.    Nationstar Mortgage LLC d/b/a Mr. Cooper[2] (hereinafter "NationStar/Mr. Cooper") is a mortgage loan servicer doing business in Alabama, including the servicing of the VA-backed mortgage loan secured by Mrs. Wood's property located at 491 White Plains Road, Anniston, Alabama 36207.

9.    NationStar/Mr. Cooper is a Delaware corporation and operates as a mortgage lending and servicing corporation with its principal place of business at 8950 Cypress Waters Boulevard, Coppell, TX 75019. Nationstar/Mr. Cooper is a citizen of the states of Delaware and Texas for purposes of diversity jurisdiction.

10.    The registered agent for NationStar/Mr. Cooper is called: CORPORATION SERVICE COMPANY, 641 South Lawrence Street, Montgomery, AL 36104.

11.    At all times relevant to this matter, NationStar/Mr. Cooper's actions/inactions have caused the harm and damages to Mrs. Wood.

**JOHN DOE SUCCESSOR SERVICER**

12.    JOHN DOE SUCCESSOR SERVICER is an entity to be identified upon transfer notice that purports to assume servicing rights effective October 20, 2025, and is joined to ensure the availability of injunctive relief and complete declaratory relief.

---

[2] "Mr. Cooper" is a brand name for Nationstar Mortgage LLC.

13.    The "John Doe Successor Servicer" will more likely than not be PHH Mortgage

Services, as identified in NationStar/Mr. Cooper's correspondence dated October 1,

2025, received by Mrs. Wood on October 7, 2025 – notifying Mrs. Wood that servicing

of the VA-backed mortgage loan will transfer effective October 20, 2025. (At Exhibit

G)

## III.  INDISPENSABLE PARTIES (FED. R. CIV. P. 19) — JOINDER FOR DECLARATORY PURPOSES ONLY

14.    **Alabama Damage Specialists, Inc. ("ADS")** is an Alabama corporation

engaged in property repair and damage restoration. ADS was approved by

Nationstar/Mr. Cooper to have third-party access to Mrs. Wood's loss mitigation

account in order to perform post-fire restoration at Mrs. Wood's property, but work

has been delayed because NationStar/Mr. Cooper has withheld the remaining

insurance proceeds. ADS therefore has an outstanding financial interest in the

disputed funds and cannot presently collect under its valid contract. ADS is joined as

a necessary and indispensable party under Rule 19(a) solely to permit complete

adjudication of rights in the withheld insurance proceeds; Mrs. Wood does not assert

any wrongdoing or independent liability against ADS.

15.    Because a valid contract between the Mrs. Wood and Alabama Damage

Specialists (hereinafter "ADS") has been hindered by NationStar/Mr. Cooper, Mrs.

Wood is of the opinion that ADS should be joined because their absence might prevent

the court from granting complete relief, and the interests of ADS might be harmed.

16.    The enjoining of ADS would ensure that all necessary parties are included for a fair and efficient resolution of this dispute. Mrs. Wood believes that ADS is also an indispensable party due to the prior payments made to ADS which are in limbo pending further distribution of funds being held by NationStar/Mr. Cooper.

17.    NationStar/Mr. Cooper has placed demands on ADS to provide documentation to NationStar/Mr. Cooper, which ADS has provided on numerous occasions. NationStar/Mr. Cooper has either not accepted the documents or have rejected as "not adequate" (See TRO Motion Exhibit A) with no explanations; which has affected the rights of Mrs. Wood and ADS.

18.    **Trent Thrasher Construction, LLC, ("Thrasher")** is an Alabama limited liability company that performed demolition and site-remediation work after the September 5, 2024 fire, including removal of the destroyed five-car garage, the privacy fence, the two-level deck, and the unsafe in-ground swimming pool. Thrasher's contracts and receipts demonstrate Mrs. Wood's out-of-pocket payments for required work. Thrasher is joined for declaratory purposes only, without any allegation of wrongdoing.

19.    **Electric Plus, Inc.** ("Electric Plus") is an Alabama electrical contractor in Heflin, Alabama, who reran the electrical service to the garage foundation in preparation for rebuilding and has been verbally requested to perform interior wiring once reconstruction resumes. Electric Plus is joined under Rule 19(a) for declaratory purposes only, without any allegation of wrongdoing.

20.    Electric Plus has provided extensive reconstructive electrical work in preparation for the garage rebuild. Further work is to be provided, yet no contract can be entered into because there is no garage yet.

21.    The mutual agreement between Mrs. Wood and Electric Plus to have that company finish the work is therefore verbal only at this point.

22.    Rule 19 plays a crucial role in identifying necessary and indispensable parties by establishing criteria for when parties must be joined. ADS, Inc., and Electric Plus, Inc. should be included as Rule 19 parties because their interests are so connected to the matter at hand that complete relief cannot be granted without their presence.

## IV. JURISDICTION

23.    This Court has authority under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, to declare the rights and legal obligations of the parties concerning the mortgage servicing and disbursement of insurance proceeds at issue. Because this action arises under federal law—including the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794—this Court has federal-question jurisdiction under 28 U.S.C. § 1331 and civil-rights jurisdiction under § 1343. To the extent diversity exists, jurisdiction is also proper under 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000, exclusive of interest and costs. Supplemental jurisdiction exists over related state-law claims under 28 U.S.C. § 1367(a)

## V. VENUE

24.    Venue is proper in this District under 28 U.S.C. § 1391(b) because the property that is the subject of this action is located in Calhoun County, Alabama, within the Eastern Division of the Northern District of Alabama. Mrs. Wood resides at the property, and a substantial part of the events and omissions giving rise to these claims occurred within this District.

## Background Overview Ties To Relative Statement of Facts

25.    In early 2022 American homeowners experiencing Covid-related financial hardships were allowed to enter into forbearance agreements totaling not more than 12 months total.

## Back-to-Back Forbearance Plans Totaling 12-months Overall.

26.    Due to major financial hindrances, deaths and economic setbacks directly related to the Covid Pandemic Mrs. Wood enrolled in a 6-month voluntary Forbearance Plan from March 1, 2022, through August 31, 2022. Mrs. Wood elected a second 6-month forbearance in 2023 Mrs. Wood which ended in the fall of 2023. Nationstar/Mr. Cooper's letters offered Mrs. Wood choices to either short-sale, deed-in-lieu-of foreclosure or remedy the arrearage and Mrs. Wood took them up on their offer to stay in her home and repay with extra payments added to her mortgage payments each month.

27.    Upon recovering financially from the Covid-related hardships in November 2023, Mrs. Wood attempted to resume paying her monthly mortgage payments plus

an extra $900.00 each. However, NationStar/Mr. Cooper would not accept anything less than the full amount in arrears (at the time approximately $24,000) and the checks for the November and December 2023 payments were kicked back.

28. Mrs. Wood wrote several letters asking NationStar/Mr. Cooper to allow her to make her monthly payments plus an additional $900 per month. The standoff went on for over a year. Mrs. Wood saved her monthly payments and the extra $900 each month and was always just 4 or 5 payments shy of the total demanded. All the while, NationStar/Mr. Cooper added late fees, threatened and moved towards foreclosure, sent photographers to her home to take pictures and stick foreclosure notices on the door.

29.    NationStar/Mr. Cooper had already provided information to the contrary in letters dated, 10/15/2023 and 12/2/2023 (See Exhibit L page 2 and Exhibit L page 4) Excerpt below:

| OPTIONS TO STAY IN YOUR HOME | OVERVIEW | BENEFIT |
|---|---|---|
| Reinstatement | • Pay all past due amounts in a single lump-sum payment.<br>• Available if you have the funds to pay now. | • Allows you to bring your mortgage current immediately. |
| Repayment Plan | • Pay all past due amounts together with your regular monthly payments over an extended period of time.<br>• Available if you have sufficient income to cover more than your regular monthly payment. | • Allows you time to bring your mortgage current without having to make a single lump-sum payment. |
| Forbearance Plan | • Make reduced payments or no payments for a specific period of time (for example, six months). During this time, your mortgage will become increasingly delinquent. | • Allows you time to improve your financial situation and possibly qualify for another option, such as a modification, upon completion of the forbearance plan. |
| Modification | • Make modified payments based on new | • Allows you to bring your mortgage current |

## Pattern of bad faith.

30.    The letters show that NationStar/Mr. Cooper represented that Mrs. Wood *could repay arrearages over time*, then reversed course. That inconsistency supports the argument that the later refusal to release funds was arbitrary and retaliatory, not a neutral servicing decision.

## Reasonable reliance.

31.    Mrs. Wood relied on those written options, made plans accordingly, and suffered harm when the option was withdrawn. This action establishes detrimental reliance and emotional-distress causation.

32.    Mrs. Wood was able to sneak two payments through the escrow portal, but when she got caught making successful payments that access was cut off.

## Supporting RESPA / breach-of-contract theories.

33.    Under 12 U.S.C. § 2605(k)(1)(C) and (e)(2), a servicer must act honestly and respond accurately to borrower communications. These documents amounted to misrepresentation and negligent servicing.

34.    By January 2024, federal lawmakers were working with the VA and the mortgage industry to stop foreclosures at least until December 2024 while the VASP program[3] was developed and finalized. Once the VASP applications were made available, Mrs. Wood applied numerous times between the fall of 2024 and March 2025, Mrs. Wood was denied the VASP option every time.

35.    On April 10, 2024, NationStar/Mr. Cooper proposed a loan modification, with an interest rate increase from 4.625% to 7.375% and a principal and interest payment increase from $1,494.44 to $2,179.08. The second page of the proposal letter sent to Mrs. Wood indicated that there was not enough residual income to approve the terms of a modification. (See Exhibit _I_ )

36.    So, based on NationStar/Mr. Cooper's own determination that the modification terms were not financially sound, on May 22, 2024, Mrs. Wood declined the proposed modification. The modification proposal was thus rescinded on May 23, 2024, and a

---

[3] **Veterans Affairs Servicing Purchase (VASP) program**

Launched in May 2024, VASP was created in response to the financial struggles veterans faced after COVID. It allowed the VA to buy delinquent loans and offer new terms.

denial letter was issued citing Mrs. Wood for refusing to agree to an unrealistic long-term debt. (See Exhibit I )

**Request for Reasonable Accommodation under the Fair Housing Act**

37.    Mrs. Wood then asked NationStar/Mr. Cooper to provide a reasonable accommodation under the Fair Housing Act. The request was that NationStar/Mr. Cooper provide an exception to policy and allow her to make monthly payments plus additional payments over a period of eighteen months to catch up on the arrearage. This accommodation would allow Mrs. Wood to enjoy her home and reduce the stress caused by NationStar/Mr. Cooper's foreclosure threats being left on the front door and the constant phone calls and letters. Otherwise, the stress caused by the controversial decisions were not only affecting her disabilities, but all members of the household were constantly experiencing stress-related issues and exacerbated problems with their health.

38.    Mrs. Wood's Request for Accommodation under the Fair Housing Act was not addressed, despite being sent letters on July 11, July 30, and October 22, 2024, acknowledging her correspondence, they did not address the subject matter of her concerns. Neither gave comments as to the FHA, only that the loan exceeded the delinquency requirements. To date, no response was received regarding their request under the Fair Housing Act.

39.    Mrs. Wood continued to put every mortgage payment into savings and applied for the VA VASP program. By July 2024 there was approximately $21,350.00 in their savings earmarked for the mortgage payments. By November 2024, the amount to reinstate the loan was $33,883.69.

40.    Constant calls and letters threatening foreclosure continued, demanding the full amount of the arrears. Mrs. Wood was only short six payments ($7,650.00)

41.    Mrs. Wood continually requested to be considered for the VA's VASP Program but continued to be denied.

42.    By July 2025 Mrs. Wood was finally approved for VASP, and as of the date of this filing, she has made three on-time payments. Yet a lurking hardship has brought Mrs. Wood to this Court out of complete exhaustion – administratively, emotionally, and physically.  (See Exhibit Q)

## VI. STATEMENT OF FACTS

43.    491 White Plains Road, Anniston, Calhoun County, Alabama is a single-family residential dwelling. Mrs. Wood, her husband Mr. Tommy Wood and Mrs. Wood's brother, Mr. Campbell have resided at this property as their primary residence at all times relevant to this action. The property was insured by Orion 180 Insurance, but they dropped the policy.

44.    A new policy was issued by Universal Property and Casualty at a much higher rate than Orion 180. (See Exhibit A, pages 7-8)

13

45.     At all times relevant to this action, Plaintiff Carolynn E. Wood, her husband Mr. Tommy Wood, and her brother Mr. William V. Campbell, II resided at this property as their primary residence.

46.     On September 5, 2024, a fire originated near the fence line surrounding the property's pool pump house. Fueled by moderate winds, the fire spread rapidly and destroyed the attached five-car garage and adjoining structures.

47.     The fire also destroyed or rendered unusable:

   o   Approximately 250 linear feet of 8-foot-tall wooden privacy fencing;

   o   A two-level wooden deck measuring approximately twenty-five feet by twelve feet;

   o   A greenhouse measuring approximately twelve feet by ten feet; and

   o   All plumbing and pump fixtures controlling a 25-foot by 50-foot by 12-foot concrete in-ground swimming pool containing approximately 85,000 gallons of water.

48.     Only the garage structure was covered under the policy issued by Orion 180 Insurance Company. However, the remaining structures were necessarily impacted by the demolition and restoration process and had to be addressed for safety, code compliance, and property preservation. (See photographic documentation at Exhibit K.)

49.     The garage included an apartment with a bedroom, kitchenette, living room, and full bathroom with shower. This apartment served as the primary residence of Mrs. Wood's brother, Mr. William V. Campbell, II, a US Marine Corps Band veteran. Mr. Campbell lost all of his possessions in the fire, to include his musical instruments.

50.     After the fire, Mrs. Wood engaged Trent Thrasher Construction LLC to perform emergency demolition and debris removal, including complete removal of the destroyed five-car garage and the unsafe, unusable swimming pool. These services were paid out of savings by Mrs. Wood due to NationStar/Mr. Cooper. Nationstar/Mr. Cooper continued withholding of insurance proceeds. (See contracts and receipts at Exhibit T.)

51.     Mrs. Wood also contracted with Electric Plus, LLC, an electrical contractor in Heflin, Alabama, to rerun the electrical service to the garage foundation in preparation for rebuilding. Electric Plus was verbally authorized to perform future interior wiring once reconstruction resumes. (See receipt at Exhibit T)

52.     Insurance proceeds were issued jointly to Mr. and Mrs. Wood and NationStar/Mr. Cooper. NationStar/Mr. Cooper disbursed $10,000 partial funds but applied the remaining portion of the hazard-loss funds to the loan balance on or about October 4, 2024, which it later acknowledged as an "error" and reversed on or about October 29, 2024.

53.     It took six months to receive a second disbursement; this was for $28,984.69 and was after all of the demolishing work had been completed. This amount was for future rebuilding based on ADS's upload of their supplies list.

54.     Nowhere and at no time has NationStar/Mr. Cooper acknowledged the demolition that was a required step to rebuild the garage.

55.   Despite three inspections (10/22/2024) reported as 10%, (12/8/2024) reported at 15%, and (9/2/2025) back to 10% completion) and substantial out-of-pocket expenditures, NationStar/Mr. Cooper continues to withhold approximately $76,954.07 needed to rebuild.

56.   Following the fire and subsequent delays, Orion 180 Insurance Company non-renewed and terminated coverage on the property. Mrs. Wood obtained new coverage at higher premiums through Universal Property and Casualty and reduced terms due to the unresolved loss and incomplete restoration.

57.   NationStar/Mr. Cooper has made two disbursements of the insurance proceeds to date, which were applied toward legitimate and necessary restoration costs for the Property. The March 20, 2025 disbursement was held for ten business days by Mrs. Wood's bank. As soon as the funds were made available, Mrs. Wood immediately rerouted to directly to ADS – the contractor for supplies, architectural drawings, and the rerouting of electrical and water supply lines to prepare the site for rebuilding.

58.   Because NationStar/Mr. Cooper refuses to release the remaining $76,954.07 in insurance funds, necessary reconstruction has been indefinitely delayed, leaving the property in a partially restored and non-sellable condition.

59.   On September 9, 2025, Mrs. Wood sent a written notice to NationStar/Mr. Cooper's Loss Mitigation Department attaching a draft federal complaint and providing fifteen (15) days for response and cure. NationStar/Mr. Cooper did not

resolve the dispute. Instead, Mrs. Wood received notice that effective October 20, 2025, the loan would be transferred to a new servicer.

60.    In addition, Mrs. Wood expended more than $24,000 of the money she had put into savings (because NationStar/Mr. Cooper refused to accept her payments) on demolition of the destroyed garage, the swimming pool, the privacy fence, and the deck.

61.    Although the insurance policy covered only the garage loss, these additional demolitions were required by Calhoun County code and by property valuation concerns arising from the fire damage and the hazards of the abandoned pool. Each disbursement and expenditure was necessary to move the property toward restoration and to ensure compliance with local building and safety requirements.

62.    Despite Mrs. Wood's good-faith compliance and responsible use of the funds released to date, NationStar/Mr. Cooper continues to withhold the balance of the insurance proceeds, preventing the completion of the rebuilding project.

**VA-Backed Loan Oversight**

63.    VA loans are governed by 38 U.S.C. §§ 3701–3775 and VA regulations (38 C.F.R. Part 36). Servicers must follow VA servicing guidelines, including handling of loss drafts/insurance proceeds.

64.    VA oversight means the servicer had heightened obligations — not just under the mortgage contract, but also under federal regulations designed to protect veterans.

65.    The mortgage at issue is guaranteed through the U.S. Department of Veterans Affairs (VA) loan program. The loan was obtained by Mrs. Wood's husband, Tommy Wood, a veteran of the United States Air Force.

66.    Mrs. Wood's brother, William Vance Campbell, II, served honorably in the United States Marine Corps. He too received regular mental health treatment from the VA.

67.    Following the fire, Mrs. Wood, her husband, and her brother were forced to live together in the main house under increasingly difficult and overcrowded conditions. Mr. Campbell's VA treatment records reflect his frustration with the situation, his feelings about being a burden on the household, and his distress over NationStar/Mr. Cooper's refusal to release the funds needed to restore an autonomous, livable space.

70.    Mrs. Wood and her family undertook extensive cleanup and demolition from the money in their savings, contracting with Trent Thrasher Construction for removal of the damaged garage and pool and with ADS for restoration preparation. (See Exhibit T – Pool and Garage Demolition Contracts and Receipts.)

**Insurance Proceeds**

71.    On October 2, 2024 Orion 180 Insurance issued $115,938.76 to rebuild the garage lost due to the fire. The funds were issued via check made payable to Tommy and Carolynn Wood and Nationstar d/b/a: Mr. Cooper. The Woods immediately endorsed the check and overnighted it to NationStar/Mr. Cooper.

72.     Orion 180 coordinated a contractor, to wit: Alabama Damages Specialists who entered into a contract to rebuild yet are hindered by NationStar/Mr. Cooper's failure to release funds to continue. The total proceeds being held by NationStar/Mr. Cooper are $76,954.07.

73.     NationStar/Mr. Cooper has made only two disbursements of the insurance proceeds to date: First disbursement of $10,000 on 10/09/2024 paid to Tommy and Carolynn Wood. After a partial bank hold, the funds were made available on October 21, 2024. The second disbursement of $28,984.69 on 3/20/2025 paid to Tommy and Carolynn Wood. The second disbursement was in turn immediately paid by Mrs. Wood to Alabama Damage Specialists, for supplies, architectural drawings. (See exhibit T ) and the residual amount was paid to Electric Plus as part of their $9,089 bill.

**Mrs. Wood's Due Diligence to Mitigate Damages**

74.     In addition to the funds held by NationStar/Mr. Cooper, Mrs. Wood has expended $32,363 on demolition of the destroyed garage, swimming pool, privacy fence, deck, and repair/replacement of the underground electrical wiring system: (See Exhibit T )

75.     Electric Plus rerouted electrical service to the property to prepare for rebuilding. (See Exhibit T – Electric Plus LLC Invoice and Receipt.)

76.     Although the insurance carrier released all of the money, NationStar/Mr. Cooper, as mortgage servicer, has withheld the remaining balance in a restricted

escrow account, refusing to release the funds despite multiple contradictory inspections and documentation proving progress, and failing to account for demolition and property stabilization costs already paid by Mrs. Wood's savings (which were earmarked for her mortgage payments, but refused by NationStar/Mr. Cooper.)

77.    On August 17, 2025, after a heated discussion arising from NationStar/Mr. Cooper's continued refusal to release the insurance proceeds, Mr. Campbell left the house and tragically took his own life.

78.    While Mrs. Wood acknowledges that wrongful-death causation is not asserted as a separate claim herein, this tragic event underscores the profound stress and foreseeable harm inflicted by NationStar/Mr. Cooper's withholding of the insurance proceeds and illustrates the human consequences of NationStar/Mr. Cooper's failure to act in accordance with its contractual and regulatory duties.

79.    Follow up texts with Mona from State Farm (229) 454-4780, the third inspector confirmed that she had given a 35% completion rate which was changed to 10% by NationStar/Mr. Cooper.

80.    As a result, the property has remained unrepaired for more than a year. The absence of the garage has left two newly purchased motorcycles – which replaced the two that were destroyed in the fire – exposed to the elements, causing deterioration and reducing their value. These motorcycles are used in service to the community through the Patriot Guard Riders, escorting, and honoring fallen veterans at funerals.

81.    The prolonged loss of use and withheld funds have caused severe emotional distress, financial strain, and damage to Mrs. Wood's property value and quality of life. (See Exhibits _F__ – Correspondence Between Mrs. Wood and NationStar/Mr. Cooper.)

## Complaint Filed With The Alabama State Banking Department / Remedies Attempted

82.    Mrs. Wood filed a formal complaint with the Alabama State Banking Department on March 7, 2025, outlining NationStar/Mr. Cooper's refusal to release insurance proceeds and misapplication of loss-draft funds. See Exhibit H. There has been no resolution there either.

## Failure to maintain accurate escrow records under 12 C.F.R. § 1024.17(k) (RESPA's Regulation X).

83.    Violation of VA loan servicing standards, which require prompt, traceable application of all insurance funds to restoration.

84.    Mrs. Wood immediately questioned NationStar/Mr. Cooper of major irregular ledger activity in October 2024 that created the appearance of impropriety in the handling of restricted insurance proceeds. NationStar/Mr. Cooper later described these entries as 'mistakes,' but has provided no audit trail or written correction.

## Ambiguous Transaction Labels

85.    Some credits and debits in the October 2024 Statement are labeled with vague internal codes such as " Adjustment," " Misc Disb ," or " Suspense Transfer ," with no

corresponding invoice number, payee name, or property-inspection tag. For a federally regulated servicer, this type of bookkeeping violates the Consumer Financial Protection Bureau (CFPB) servicing guidance requiring transparency in loss-draft disbursements.

## Statutory and Regulatory Significance

86.   Even though NationStar/Mr. Cooper later called these "mistakes," the pattern still indicated fraudulent and negligent care, and Mrs. Wood filed a complaint with the Consumer Financial Protection Bureau. Just shortly afterwards, Mrs. Wood received a Notice of Default (See Exhibit O )

## VII. CAUSES OF ACTION
## COUNT ONE – FAIR HOUSING ACT (Failure to Accommodate and Retaliation)

87.   Mrs. Wood re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

88.   This claim arises under the Fair Housing Act, 42 U.S.C. § 3601 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 794. Mrs. Wood, a person with a disability that effects one or more daily activities and a history of the same, requested a reasonable accommodation from NationStar/Mr. Cooper which would allow her to maintain housing stability while rebuilding after the devastating fire, which would permit repayment of mortgage arrearages by making monthly payments plus $900, NationStar/Mr. Cooper refused to consider or respond to this request, stating that there were 'no exceptions to policy,' in violation of 42 U.S.C. § 3604(f)(3)(B) and 24

C.F.R. § 100.204. (See Exhibit 5 – Letters to NationStar/Mr. Cooper, Nov. 29, 2024.) Because Mrs. Wood's loan is VA-backed, NationStar/Mr. Cooper's actions also violate Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibiting discrimination in federally funded programs. (See Exhibit H pp. 3-10 – Fair Housing Complaint.)

89. The U.S. Department of Housing and Urban Development requires mortgage servicers to engage in interactive communication with regard to requests for reasonable accommodations with borrowers with disabilities. See HUD–DOJ Joint Statement on Reasonable Accommodations (May 17 2004); HUD Mortgagee Letter 2023-12.

90. Mrs. Wood filed her Fair Housing complaint with HUD in August 2024, which was assigned to Investigator Christian Newsome. Due to administrative delays in early 2025, and now the federal government shutdown beginning September 30, 2025, the complaint remains unresolved. Mrs. Wood therefore brings this private civil action for relief under 42 U.S.C. § 3613(a)(2), as more than thirty days have elapsed since the HUD filing. (See Exhibit H p. 10 – HUD Autoreply, Oct. 13, 2025.)

91. This claim arises under the Fair Housing Act, 42 U.S.C. § 3601 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"). Both statutes prohibit discrimination on the basis of disability in the provision of housing-related services, including mortgage servicing, insurance disbursement, and foreclosure avoidance. Discrimination includes the refusal to make reasonable accommodations in policies or practices when such accommodations are necessary to afford a person with

disabilities an equal opportunity to use and enjoy a dwelling. See 42 U.S.C. § 3604(f)(3)(B); 24 C.F.R. § 100.204.

92.    Mrs. Wood receives treatment for PTSD and depression through the Department of Veterans Affairs. On multiple occasions—both in writing and by telephone—Mrs. Wood requested that NationStar/Mr. Cooper provide a reasonable accommodation by accepting monthly mortgage payments plus $900 toward the arrearage, rather than demanding immediate payment of the full balance. This accommodation would have enabled Mrs. Wood to remain current on her VA-backed mortgage and maintain stable housing while recovering from trauma associated with the fire and her disability.

93.    NationStar/Mr. Cooper refused to grant or even consider the request, stating by phone that "there is no exception to policy." NationStar/Mr. Cooper provided no written response, did not engage in the interactive process required under the FHA and HUD–DOJ Joint Statement on Reasonable Accommodations (May 17 2004), and continued to treat the loan as delinquent. NationStar/Mr. Cooper's conduct constitutes a failure to accommodate and discriminatory application of servicing policies in violation of 42 U.S.C. § 3604(f)(3)(B) and 24 C.F.R. § 100.204.

94.    Because Mrs. Wood's mortgage is VA-backed, NationStar/Mr. Cooper is a participant in a federally assisted housing program and is therefore subject to the Rehabilitation Act § 504, which prohibits discrimination on the basis of disability in federally funded activities. 29 U.S.C. § 794; 24 C.F.R. § 8.4. NationStar/Mr. Cooper's

refusal to provide an accommodation, its failure to communicate in good faith, and its continued withholding of insurance funds constitute discrimination and denial of equal access to federally supported housing.

95.    NationStar/Mr. Cooper's unlawful conduct has caused Mrs. Wood substantial injury, including loss of housing security, emotional distress, and out-of-pocket expenses such as the purchase of a shed and trailer to protect household property from weather exposure. Mrs. Wood seeks compensatory and equitable relief as permitted by 42 U.S.C. § 3613(c)(1) and 29 U.S.C. § 794a.

## COUNT TWO – SECTION 504 OF THE REHABILITATION ACT

96.    Mrs. Wood re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

97.    Congress enacted the Fair Housing Act, 42 U.S.C. § 3601 et seq., to prohibit discrimination in housing and related services, including mortgage servicing, insurance disbursement, and maintenance of dwellings. Discrimination includes a refusal to make reasonable accommodations in policies or practices when such accommodations are necessary to afford a person with disabilities an equal opportunity to use and enjoy their dwelling. 42 U.S.C. § 3604(f)(3)(B); 24 C.F.R. § 100.204.

98.    Section 504 of the Rehabilitation Act of 1973 prohibits discrimination based on disability in programs and activities that receive federal financial assistance, including mortgage servicers. This means that mortgage servicers must ensure that their services are accessible and non-discriminatory for individuals with disabilities.

99.    Key points include compliance with Federal Law. Mortgage servicers must adhere to federal laws such as the Fair Housing Act and the Americans with Disabilities Act.

## COUNT THREE – Real Estate Settlement Procedures Act (12 U.S.C. § 2605)

100.    Mrs. Wood re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

101.    As a direct and proximate result of NationStar/Mr. Cooper's misconduct, Mrs. Wood has suffered economic and non-economic damages, including loss of use of her garage and apartment, depreciation of property value, and deterioration of vehicles and equipment exposed to the weather. The purchase of a shed to protect tools and materials was necessary only because of NationStar/Mr. Cooper's failure to release funds for reconstruction. Mrs. Wood's damages also include emotional distress, inconvenience, and financial hardship arising from these ongoing conditions.

102.    NationStar/Mr. Cooper's actions constitute a pattern or practice of noncompliance within the meaning of 12 U.S.C. § 2605(f)(1)(B).

103.    Mortgage servicers and insurers are also subject to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, and its implementing regulation, 12 C.F.R. Part 1024 (Reg X), which require timely and good-faith communication with borrowers regarding escrowed insurance proceeds and loss-mitigation options.

104. Restoration should be considered holistically (garage + demolition + code compliance). This will neutralize the inspections issue: If inspectors keep reporting artificially low completion rates, the court's declaration would reframe how "completion" is measured. This means that out-of-pocket expenditures count toward completion percentages.

105. The servicer cannot rely on arbitrary inspection percentages to withhold funds. Mrs. Wood is asking the court to recognize her due diligence and out-of-pocket sacrifices as part of restoring the lender's collateral.

106. NationStar/Mr. Cooper maintains that Mrs. Wood has not reached sufficient completion percentages to justify further disbursement. NationStar/Mr. Cooper's inspectors have reported inconsistent and inaccurate completion percentages (10%, 15%, and then back to 10%), which do not reflect the reality of the work performed.

107. Mrs. Wood has in fact applied the disbursed proceeds responsibly and, in addition, has expended all of the funds they were holding for NationStar/Mr. Cooper in their savings account. Mrs. Wood has been responsible to alert the County Commissioners of their due diligence; promising to demolish unsafe structures, bring the Property into compliance with local code requirements, and they have mitigated further loss through purchase of a storage shed. These expenditures were necessary components of restoring the Property to its pre-loss condition and protecting the mortgagee's collateral.

## COUNT FOUR – DECLARATORY JUDGMENT (28 U.S.C. § 2201)

108.   Mrs. Wood re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

109.   Mrs. Wood seeks a declaration that: (a) demolition, code compliance, and mitigation expenses reasonably necessary to restore the property count toward percentage-of-completion requirements; (b) "NationStar/Mr. Cooper" may not withhold disbursement based on arbitrary or inaccurate percentage reports; and (c) the remaining funds must be released for reconstruction consistent with the mortgage and applicable law.

110.   Mrs. Wood seeks declaratory judgment under 28 U.S.C. § 2201 declaring that NationStar/Mr. Cooper's withholding of insurance proceeds violates the governing mortgage agreement, federal mortgage servicing standards, and equitable principles.

111.   Mrs. Wood requests that the Court declare that the demolition and restoration work already completed satisfies the inspection threshold necessary for release of remaining insurance funds, and that NationStar/Mr. Cooper must promptly release those funds to complete reconstruction. (See Exhibits 1–3.)

112.   Plaintiff seeks a judicial declaration that NationStar/Mr. Cooper must release withheld insurance proceeds to restore the property and that future servicing transfers remain subject to this Court's equitable supervision.

113.   An actual and justiciable controversy exists between Mrs. Wood and NationStar/Mr. Cooper regarding the release of the withheld insurance proceeds.

NationStar/Mr. Cooper has claimed that Mrs. Wood has not reached sufficient completion percentages to justify further disbursement. NationStar/Mr. Cooper's inspectors have reported inconsistent and inaccurate completion percentages (10%, 15%, and then back to 10%), which do not reflect the reality of the work performed.

114.  Mrs. Wood has in fact applied the disbursed proceeds responsibly and, in addition, has expended substantial out-of-pocket funds to demolish unsafe structures and bring the Property into compliance with local code requirements. These expenditures are necessary components of restoring the Property to its pre-loss condition and protecting the mortgagee's collateral.

115.  Mrs. Wood seeks a declaratory judgment that:

a. Restoration of the Property must be evaluated as a whole, including demolition and code compliance measures necessary to protect the Property's value, not just the discrete insured structure;

b. Mrs. Wood's out-of-pocket expenditures for demolition and restoration should count toward satisfaction of NationStar/Mr. Cooper's percentage-of-completion requirements; and

c. NationStar/Mr. Cooper may not withhold disbursement of insurance proceeds based on arbitrary or inaccurate percentage-completion reports when substantial, necessary work has been performed in good faith.

## COUNT FIVE – RELATED STATE LAW CLAIMS (Breach of Good Faith and Fair Dealing)

116.   Mrs. Wood re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

**Inconsistent Ledger Entries**

117.   Mrs. Wood's October 2024 statement from NationStar/Mr. Cooper (See Exhibit E) contained multiple same-day reversals and re-postings of identical dollar amounts within Mrs. Wood's restricted insurance-loss (escrow) account. Mrs. Wood complained immediately that the bookkeeping made it appear that funds were "moving," even though the balance never changed. This extreme irregularity created the appearance of circular money movement or "wash" entries. The mortgage contract requires NationStar/Mr. Cooper to apply insurance proceeds to repair and restoration of the Property.

118.   NationStar/Mr. Cooper's failure and refusal to release the withheld funds constitutes a material breach of contract.

119.   As a direct and proximate result of NationStar/Mr. Cooper's breach, Mrs. Wood has suffered damages including, but not limited to: (a) loss of use of the garage and associated property; (b) depreciation and deterioration of vehicles, tools, and yard equipment that could not be properly stored or protected; (c) increased repair and rebuilding costs due to delay; and (d) emotional distress and mental anguish.

120.   Mrs. Wood was further required to purchase and install a storage shed to secure tools, woodworking equipment, and household items that otherwise would

have been stored in the garage. While the shed marginally increased the property's value, it was not a discretionary improvement; it was necessitated solely by the destruction of the garage and NationStar/Mr. Cooper's failure to release insurance funds to restore it. The cost of the shed and installation represents an additional consequential damage flowing from NationStar/Mr. Cooper's breach.

121.   NationStar/Mr. Cooper breached the mortgage servicing contract and the implied covenant of good faith and fair dealing by failing to properly disburse insurance funds, by disregarding documentation of completed work, and by applying unreasonable inspection standards. NationStar/Mr. Cooper's conduct has deprived Mrs. Wood of the benefit of her bargain and caused foreseeable damages including property devaluation, loss of use, and emotional suffering. (See Exhibits 4–5.)

122.   The mortgage and loss-draft provisions required NationStar/Mr. Cooper to apply insurance proceeds to repair and restoration and to administer disbursements in good faith. By withholding funds and misapplying proceeds to the loan balance, NationStar/Mr. Cooper breached its contractual duties and the implied covenant of good faith.

## Relevant Letters Between Borrower and Servicer at Exhibit F

June 3 2025 Letter to NationStar/Mr. Cooper (Request for Release of Funds)
June 27 2025 Letter to NationStar/Mr. Cooper (Second Request for Release)

123.   Mrs. Wood documented out-of-pocket electrical replacement ($9,289) and a specific request for $30,000 additional disbursement. Shows reasonable, written request—no response received.

124.   **July 16 2025 Letter from NationStar/Mr. Cooper**

States Mrs. Wood had made "no updates in 45 days" and warns that failure to request inspection could make her ineligible for expedited processing. Shows ongoing delay tactics and shifting inspection demands. Contains an admission that NationStar/Mr. Cooper can apply proceeds to the loan if repair "not economically feasible," revealing threat of foreclosure pressure instead of restoration support.

### 125.    July 23 2025 Letter to NationStar/Mr. Cooper (Third Request)

Mrs. Wood responds directly to NationStar/Mr. Cooper's July 16 letter, explaining why inspection is impossible until funds are released. Evidence of vicious cycle—they demand progress before releasing funds, but progress requires those funds. Mrs. Wood provides copies to the **Alabama Banking Commission**, showing external escalation.

### 126.    August 15 2025 Letter to NationStar/Mr. Cooper (Fourth Request)

Mrs. Wood documents new damages (shed $4,500 + cargo trailer $3,500) necessitated by the lack of a garage. Supports damages for loss of use and depreciation; shows mitigation steps taken at your own cost. Confirms continued requests for $30,000 release and inspection.

### 127.    September 5 2025 Letter to NationStar/Mr. Cooper

Mrs. Wood notes missing inspection pages on InsuranceClaimCheck.com; proving that she was tracking and documenting evidence gaps. Shows diligence and that servicer failed even basic recordkeeping duties under RESPA § 1024.38.

### 128.    September 9 2025 Letter to Mr. Cooper  (Fair Warning)

Mrs. Wood explicitly notifies NationStar/Mr. Cooper of **pending litigation** and references a comparable case, *Belton v. Nationstar Mortgage LLC* (E.D. La. 2018). Establishes that Mrs. Wood gave formal pre-suit notice and a 15-day opportunity to cure. Frames Mrs. Wood's good-faith exhaustion of remedies before filing federal declaratory relief.

## COUNT SIX — INJUNCTIVE RELIEF (TRO/PRELIMINARY INJUNCTION)

129.   Mrs. Wood re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

130.   NationStar/Mr. Cooper has noticed transfer of servicing effective October 20, 2025. Absent immediate injunctive relief, the transfer will frustrate this Court's ability to grant complete relief, risk further misapplication of funds, and irreparably harm Mrs. Wood by further delaying reconstruction and jeopardizing insurance coverage.

131.   Mrs. Wood has therefore filed a Motion for a temporary restraining order under separate cover. Mrs. Wood is entitled to this court's protection via a preliminary injunction enjoining Nationstar and any successor servicer with notice of this action from transferring or otherwise impairing servicing rights or the restricted insurance funds and compelling the immediate release of the remaining balance for reconstruction subject to reasonable inspection safeguards.

**Persuasive Precedence**

132.   In *Belton v. Nationstar Mortgage LLC*, No. 6:21-cv-00603 (W.D. La. 2021), the Western District of Louisiana considered nearly identical facts in which Nationstar

withheld insurance proceeds issued jointly to the homeowner and the servicer following catastrophic property damage. The court recognized that such withholding could justify declaratory and injunctive relief to compel release of the funds. There, as here, the borrower undertook good-faith efforts to mitigate loss and proceed with repairs, yet Nationstar's inaction caused further deterioration of the property and emotional distress. Although *Belton* was decided within the Fifth Circuit, its reasoning is persuasive in demonstrating that a servicer's delay or refusal to release insurance proceeds, when those proceeds are essential to restoring the secured collateral, creates a justiciable controversy suitable for federal intervention.

133.   The same pattern of conduct is present in this case. Plaintiff Wood, a disabled veteran whose VA-backed mortgage loan is serviced by Nationstar, experienced the same obstruction in the aftermath of the fire that destroyed the garage and attached apartment at her family home. Despite multiple inspections, out-of-pocket expenditures for demolition, and compliance with all lender requirements, NationStar/Mr. Cooper has withheld approximately $76,954.07 in insurance proceeds, now attempting to transfer the loan to another servicer before resolution.

134.   As in *Belton*, these actions have resulted in ongoing property damage, financial hardship, and severe emotional distress. The parallels between the two cases underscore a broader pattern of Nationstar's failure to responsibly administer insurance loss proceeds in accordance with federal law and equitable mortgage-servicing duties.

135.   Accordingly, Mrs. Wood seeks a judicial declaration clarifying the parties' respective rights and obligations under the mortgage and applicable federal standards, including that the withheld insurance proceeds must be promptly released or applied toward the restoration of the property, and that the servicer may not transfer or otherwise impair those funds pending the Court's determination.

136.   Mrs. Wood notes that other federal courts have also addressed similar conduct by Nationstar Mortgage LLC and its correspondent lenders. See *Guzman v. USAA Fed. Sav. Bank*, No. 3:23-cv-01193 (N.D. Ohio 2023). In that case, Nationstar's loss-mitigation practices were challenged under RESPA § 2605. Although the lender sought dismissal on agency grounds, several courts—including *Feldmann v. Lakeview Loan Servicing*, 2021 WL 1627048 (W.D. Wash. Apr. 27, 2021)—have held that RESPA incorporates ordinary tort-based vicarious-liability rules.

137.   Mrs. Wood respectfully submits that these authorities support recognition of liability where a servicer acts under the lender's delegated authority in managing restricted insurance proceeds.

138.   As previously mentioned, on September 9, 2025, Mrs. Wood sent a written notice to NationStar/Mr. Cooper's Loss Mitigation Department, attaching a copy of her proposed federal complaint and cover letter. The correspondence requested correction of accounting irregularities and release of restricted insurance funds and provided fifteen (15) days for NationStar/Mr. Cooper to respond in good faith. NationStar/Mr. Cooper did not respond to the notice within the requested timeframe

or thereafter. Instead, Mrs. Wood subsequently received notice that effective October 20, 2025, the loan would be transferred to a new servicer.

139.    The timing of this transfer, immediately after NationStar/Mr. Cooper's receipt of Mrs. Wood's notice of intent to file suit, evidences an attempt to avoid accountability and constitutes further bad-faith conduct. NationStar/Mr. Cooper's failure to respond also violates its obligations under 12 U.S.C. § 2605(e)(2), which requires timely written acknowledgment and investigation of borrower inquiries.

## VIII. HUD ADMINISTRATIVE COMPLAINT

140.    On or about August 20, 2024, Mrs. Wood filed a formal administrative complaint with the U.S. Department of Housing and Urban Development ("HUD") alleging that NationStar/Mr. Cooper discriminated on the basis of disability by refusing to provide a reasonable accommodation in connection with her VA-backed mortgage. The matter was assigned to HUD Investigator Christian Newsome. During January–February 2025, federal operations affecting HUD's Office of Fair Housing and Equal Opportunity were suspended, and no formal adjudication occurred. In late May 2025, Mr. Newsome informed Mrs. Wood by telephone that his supervisor had not yet reviewed the file but that he would follow up. As of the filing of this action, no further response has been received, and the administrative case remains unresolved.

141.    Pursuant to 42 U.S.C. § 3613(a)(2), Mrs. Wood is entitled to bring this private civil action for relief under the Fair Housing Act after more than 30 days have elapsed since filing the HUD complaint.

**NOTICE OF EXHAUSTION AND PRIVATE RIGHT OF ACTION**

142.   Mrs. Wood provides notice to this Court that she has satisfied the administrative filing requirement under 42 U.S.C. § 3613(a)(2) of the Fair Housing Act. Mrs. Wood filed a formal complaint with the U.S. Department of Housing and Urban Development ("HUD") in August 2024, alleging discrimination on the basis of disability arising from NationStar/Mr. Cooper's refusal to provide a reasonable accommodation. More than thirty (30) days have elapsed since the filing of that complaint, and HUD has not issued a final determination or conciliation agreement. Accordingly, pursuant to federal law, Mrs. Wood is entitled to bring this private civil action for declaratory, injunctive, and compensatory relief. Mrs. Wood's diligence in pursuing administrative remedies further demonstrates her good faith and commitment to resolution through lawful means.

143.   The HUD complaint remains unresolved due to suspension of HUD operations, confirmed by the automatic email of Investigator Christian Newsome dated October 13, 2025. Mrs. Wood is therefore entitled to bring this private action for declaratory, injunctive, and compensatory relief under federal law.

**STATUTORY AND REGULATORY BACKGROUND**

144.   The Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and its implementing regulation, 24 C.F.R. § 100.204, prohibit discrimination in housing and housing-related services, including mortgage servicing and insurance disbursement, on the basis of disability. Discrimination includes a refusal to make reasonable

accommodations in policies or practices when such accommodations are necessary to afford a person with disabilities an equal opportunity to use and enjoy their dwelling. *See* 42 U.S.C. § 3604(f)(3)(B).

145.    As previously stated, Mrs. Wood requested a reasonable accommodation from NationStar/Mr. Cooper to allow monthly mortgage payments plus $900 toward arrears, an arrangement that would have enabled her, as a disabled veteran, to remain current and preserve stable housing. NationStar/Mr. Cooper refused, stating by telephone that "there is no exception to policy." This blanket denial, without any interactive process or written response, constitutes a failure to accommodate in violation of the Fair Housing Act and HUD–DOJ Joint Statement on Reasonable Accommodations (May 17 2004).

146.    NationStar/Mr. Cooper's actions also violate the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, and 12 C.F.R. Part 1024 (Reg X), which require timely, written acknowledgment and good-faith resolution of borrower inquiries and accommodation requests, and they are inconsistent with HUD Mortgagee Letter 2023-12 and 24 C.F.R. § 203.604 (servicer communication standards for federally backed loans).

## Legal Significance of the HUD Complaint

## Exhaustion is not required.

147.    Under 42 U.S.C. § 3613(a)(2), Mrs. Wood does not have to wait for HUD to finish its investigation before filing in federal court, and she can bring her own civil

action any time after 30 days from filing the administrative complaint. So, even though HUD has not ruled, her federal claim is fully ripe.

**Proof of good-faith effort.**

148.    Filing a HUD complaint demonstrates that Mrs. Wood tried to resolve the issue administratively before coming to court.

**Potential notice evidence.**

149.    The existence of a HUD complaint proves Nationstar/Mr. Cooper was on notice of the discrimination allegations, which helps establish willfulness and strengthens any request for compensatory or punitive damages.

## IX. DAMAGES

150.    Mrs. Wood re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

151.    As a direct and proximate result of NationStar/Mr. Cooper's continued withholding of insurance proceeds, delay in inspections, and failure to communicate in good faith, Mrs. Wood has suffered substantial financial and emotional injury. NationStar/Mr. Cooper's actions have deprived Mrs. Wood of the full use and enjoyment of her home, caused continuing deterioration of the property, and resulted in measurable depreciation of vehicles, tools, and equipment that remained exposed to weather during the prolonged reconstruction delay.

152.    Mrs. Wood has also sustained loss-of-use damages arising from the destruction of the attached garage and apartment, which previously provided functional

workspace and separate living quarters. The ongoing inability to rebuild has forced Mrs. Wood to incur additional out-of-pocket expenses for temporary storage and replacement of essential structures, including the installation of a shed to protect tools and woodworking materials that would otherwise remain unprotected.

153. Beyond financial losses, Mrs. Wood has endured severe emotional distress stemming from NationStar/Mr. Cooper's refusal to release funds vital to restoring her home and stability. The extended delay contributed to intense family stress culminating in the tragic death of Mrs. Wood's brother, whose mental health had already been fragile following the fire and subsequent displacement. NationStar/Mr. Cooper's pattern of neglect and indifference aggravated Mrs. Wood's pre-existing service-connected post-traumatic stress disorder and depression, causing further psychological and physical harm.

154. Mrs. Wood therefore seeks compensatory damages for:

   a.    The diminished market value of the property resulting from prolonged exposure and incomplete reconstruction;

   b.    The loss of use and enjoyment of the residence and attached apartment;

   c.    The depreciation and loss of personal property, vehicles, and tools affected by NationStar/Mr. Cooper's delay; (valuation and inventory forthcoming.)

   d.    Emotional distress, mental anguish, and physical suffering attributable to NationStar/Mr. Cooper's actions; and

e.    All incidental and consequential damages resulting from NationStar/

Mr. Cooper's wrongful conduct. This will require an extensive injunctive and

accounting request for which more time is needed and will follow.

155.    As a direct and proximate result of NationStar/Mr. Cooper's conduct described

above, Mrs. Wood has suffered the following injuries and losses:

156.    Emotional distress and mental anguish arising from the prolonged harassment

and threats of foreclosure before the fire, and loss of use and enjoyment of property

the inability to restore her home and the emotional trauma of unsafe living conditions

following the fire.

157.    Depreciation and damage to personal property, including two motorcycles,

tools, and yard equipment that remained exposed to the elements due to the withheld

insurance disbursements.

158.    Out-of-pocket expenses, including payments made to Thrasher Construction,

Alabama Damage Specialists, and Electric Plus LLC to secure and prepare the

property for rebuilding.

159.    Loss of consortium and familial support, due to the emotional and financial

strain that culminated in the tragic death of Mrs. Wood's brother, producing ongoing

grief and psychological injury.

160.   Mrs. Wood seeks compensation for these harms under 42 U.S.C. § 3613(c)(1), 29 U.S.C. § 794a(b), and 12 U.S.C. § 2605(f), as well as any other equitable or legal relief the Court deems appropriate, including punitive damages where authorized.

**Missed Potential to Overcome Depreciation and Receive Full-Value**

161.   The Insurance Adjuster provided a timely estimate to rebuild which included a decrease for depreciation. It was explained that depending on how well the garage was rebuilt, there was potential to receive the replacement cost value which would be $131,649.80, with a net claim potential of $129,149.80. But this was at 2024 prices of lumber and labor (See Exhibit D page 13 of 17)

> Replacement Cost Value $131,649.80
>
> Less Depreciation ($13,211.04)
>
> Actual Cash Value $118,438.76
>
> Less Deductible ($2,500.00)
>
> Net Claim $115,938.76
>
> **Total Recoverable Depreciation $13,211.04**
>
> Net Claim if Depreciation is Recovered $129,149.80

162.   Although the insurance policy technically covered only the garage loss, additional demolitions were required by Calhoun County's "abandoned swimming pools" code and were necessary to maintain property value and safety.

163.   Each disbursement and expenditure was necessary to restore the Property and comply with local building and safety requirements.

164.   Mrs. Wood was forced to purchase and install a storage shed to secure tools, woodworking equipment, and household items that otherwise would have been stored in the garage. While the shed marginally increased the property's value, it was not a discretionary improvement; it was necessitated solely by the destruction of the garage and NationStar/Mr. Cooper's failure to release insurance funds to restore it.

165. Despite Mrs. Wood's good-faith compliance and responsible use of funds released to date, NationStar/Mr. Cooper continues to withhold the balance of the insurance proceeds, preventing the completion of the rebuilding project.

## Inspectors Reports are Being Manipulated/Altered and Downgraded

166.   Mrs. Wood is required to pay for the inspections, and NationStar/Mr. Cooper's inspectors have conducted three inspections.

167.   These reports fail to account for the substantial demolition, restoration, and mitigation measures already performed by Mrs. Wood. Only the first page of the three pages of each report is available to Mrs. Wood despite her request to provide the other pages; a total of six missing pages. All constituting  violations of RESPA / Failure to Respond to Loss-Mitigation Requests.

## X.  SUMMARY

168.   Mrs. Wood's mortgage was guaranteed under the Veterans Affairs (VA) loan program. Mrs. Wood, her husband and her brother, all of whom are veterans, relied upon the VA-backed structure of the loan as assurance of stability and protection in the event of hardship. Despite this, NationStar/Mr. Cooper has refused to release the

insurance proceeds necessary to rebuild the garage destroyed by fire, contrary to both the mortgage contract and the spirit of the VA guarantee program. The withholding of these funds has inflicted extraordinary stress upon the household.

169.   When Mrs. Wood asked NationStar/Mr. Cooper to accept a modified repayment plan ($900 plus the current payment) so she could remain stably housed while coping with PTSD and depression, that counted as a formal request for a reasonable accommodation under 42 U.S.C. § 3604(f)(3)(B) (Fair Housing Act) and 24 C.F.R. § 100.204 (HUD regulation).

170.  Both provisions require housing-related service providers—including mortgage servicers—to adjust standard policies when necessary to give a person with a disability an equal opportunity to use and enjoy their dwelling.

**Their refusal was discriminatory.**

171.   By stating "there is no exception to policy," NationStar/Mr. Cooper effectively refused to engage in the required interactive process and denied the accommodation outright. HUD and DOJ guidance (Joint Statement on Reasonable Accommodations, May 17 2004) makes clear that a blanket "no exceptions" policy violates the FHA when applied to a disabled borrower.

**Also violates servicing law.**

172.   The refusal and lack of written response contravene 12 U.S.C. § 2605 (RESPA) and 12 C.F.R. § 1024.36 (Reg X), which require servicers to acknowledge and respond to borrower inquiries and error notices in writing within 30 days.

**Section 504 parallel.**

173.   Because the loan is VA-backed, NationStar/Mr. Cooper was acting as a participant in a federally assisted housing program, so the same conduct may also violate 29 U.S.C. § 794 (Section 504 of the Rehabilitation Act).

**RESPA Belongs in this Case because it bridges consumer protection and disability law.**

174.   This case shows how a servicer's failure to properly oversee insurance proceeds, written requests, and payment accommodations can become not only a servicing violation but also a civil-rights violation when the borrower is disabled.

**Creates a "hybrid" precedent.**

175.   Most published Fair Housing Act opinions do not discuss loan servicing. Adding RESPA unites the Fair Housing and RESPA frameworks — an intersection that is rarely explored in case law.

**Reinforces jurisdiction and remedies.**

176.   Including RESPA gives the federal court clear statutory footing under 28 U.S.C. § 1331 and makes it easier for later litigants to cite this type of case when challenging similar behavior by national servicers.

**Preserves the record.**

177.   Even if the RESPA count is later deemed secondary or duplicative, it will remain part of the appellate record, which helps future borrowers and veterans argue parallel claims.

## XI. PRAYER FOR RELIEF

WHEREFORE,  Mrs. Wood respectfully requests that this Honorable Court enter judgment in her favor and grant the following relief:

(a) Issue a Declaratory Judgment pursuant to 28 U.S.C. §§ 2201–2202, declaring that NationStar/Mr. Cooper's conduct, including the failure to process Mrs. Wood's reasonable accommodation request and the attempted transfer of her mortgage loan without proper review or accommodation, violated the Fair Housing Act, RESPA, and Section 504 of the Rehabilitation Act.

(b) Issue a Preliminary and Permanent Injunction restraining NationStar/Mr. Cooper, their agents, successors, and assigns from transferring, selling, or otherwise disposing of Mrs. Wood's mortgage loan or account until compliance with federal accommodation and servicing requirements is verified.

(c) Award compensatory damages for emotional distress, loss of enjoyment of her home, reputational harm, and other injuries caused by NationStar/Mr. Cooper's discriminatory and retaliatory conduct in violation of the Fair Housing Act, 42 U.S.C. § 3613(c)(1).

(d) Award punitive damages under 42 U.S.C. § 3613(c)(1) to deter and punish NationStar/Mr. Cooper's willful, intentional, and reckless disregard for Mrs. Wood's federally protected rights.

(e) Award equitable and compensatory relief as permitted under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a(b), for failure to provide a reasonable accommodation to a person with disabilities.

(f) Award reasonable costs and expenses of litigation, including but not limited to filing fees, service costs, and any attorney's fees that may later be incurred, pursuant to 42 U.S.C. § 3613(c)(2).

(g) Award equitable and compensatory relief as permitted under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a(b), including damages for failure to provide a reasonable accommodation to a person with disabilities.

(h) Injunctive relief prohibiting transfer or assignment of the servicing rights until compliance is verified."

(i) Statutory damages under 12 U.S.C. § 2605(f) and 42 U.S.C. § 3613(c).

(j) Grant such other and further relief as this Court deems just and proper in law or equity.

(k)  Provide pro se leniency to this filing; allowing an amendment before dismissal (in order to reach the merits of each claim.)

## XII. DEMAND FOR JURY TRIAL

Mrs. Wood hereby demands a trial by jury on all issues so triable as of right under

Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

Carolynn Elziabeth Wood, Plaintiff, Pro Se
491 White Plains Road
Anniston, Al 36207
(928)925-8031
Carolynn.e.c.wood@gmail.com
Dated: 10/16/2025

## VERIFICATION

This is the certify under 28 U.S.C. § 1746, that I, Carolynn Elziabeth Wood have read the forgoing complaint and that it and each of the attached exhibits are true and accurate to the best of my knowledge.

Carolynn Elizabeth Wood

## CERTIFICATE OF SERVICE

I certify that on 16 October 2025, I filed this COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; DAMAGES and all attachments with the Clerk of the UNITED STATES DISTRICT COURT for the NORTHERN DISTRICT OF ALABAMA at the Birmingham Courthouse because the Eastern Division, in Anniston has no clerk.

.

Carolynn Elizabeth Wood, Plaintiff, *Pro Se*
491 White Plains Road
Anniston, Al 36207
(928)925-8031
Carolynn.e.c.wood@gmail.com

# EXHIBIT INDEX

**Exhibit A** – *Insurance Policy & Loss-Draft Endorsement*
Policy declarations and endorsements showing Mr. Cooper as mortgagee; relevant coverage terms for dwelling and garage.

**Exhibit B** – *Payment & Disbursement Table*
Detailed breakdown of all insurance disbursements, amounts received, and payments made for demolition and restoration.

**Exhibit C** – *Inspection Reports Summary*
Chronological summary of three post-fire inspections showing inconsistent completion percentages (10%, 15%, 10%).

**Exhibit D** – *Property Damage & Cost Overview*
Summary of structural loss, materials, and restoration estimates for garage, cabana apartment, deck, and pool.

**Exhibit E** – *Erroneous Ledger Entries / Appearance of Impropriety*
October 2024 statement showing circular debit and credit entries suggesting internal accounting irregularities.

**Exhibit F** – *Letters Between Borrower and Servicer.*

**Exhibit G** – *Servicer Transfer Notice (Effective Oct. 20, 2025)*
Notice of servicing transfer issued by Defendant after receiving Plaintiff's pre-suit notice.

**Exhibit H** – *Complaints to Alabama State Banking Commission and HUD*
Complaint filed March 7, 2025, with the Alabama State Banking Department regarding improper servicing and withheld funds. HUD filed August 20, 2024

**Exhibit I** – *Unreasonable Proposed Loan Modification*
Contradicts itself on page 2 where it clearly indicates that Plaintiff was not qualified.

**Exhibit J** – *Borrower Correspondence)*
Plaintiff's written accommodation and accounting requests; no responses ever received.

**Exhibit K** – *Photographic Evidence of Property and Loss*
Photos showing destruction of garage, cabana apartment, and greenhouse after fire.

**Exhibit L** – *Servicer Correspondence Offering Repayment Options (Oct. 15 & Dec. 2, 2023)*
Defendant's written offers of repayment and forbearance, later rescinded.

**Exhibit M** – *Servicer Correspondence Regarding Repayment and Forbearance (Mar. 31 & Jun. 27, 2023)*
Letters outlining early repayment and forbearance options, later reversed, demonstrating Plaintiff's continued cooperation and Defendant's inconsistency.

**Exhibit N** – *Servicer Correspondence Does Not Acknowledge Errors and Loss-Draft Mishandling (Nov. 19, 2024)*
Correspondence acknowledging Plaintiff's correspondence regarding hazard-loss-draft errors and inconsistent corrections, but does not mention or explain the narrative of Complaint. Supporting RESPA § 2605 claims.

**Exhibit O** – *Borrower Communications and Retaliatory Default Sequence*
Correspondence showing retaliation and escalation following protected Fair Housing activity and accommodation requests and Report to C.F.P.B..

**Exhibit P** – *Borrower Requests and Compliance Under VA Relief Programs (Feb. 28 – Aug. 13, 2024)*
Documents proving Plaintiff's full compliance with VA COVID-19 and VASP relief processes; Defendant's failure to implement relief measures.

**Exhibit Q** – *Initial Servicer Correspondence Offering Forbearance and Repayment (Mar. 31 & Jun. 27, 2023)* Early letters showing Defendant's acknowledgment of curable arrears and subsequent withdrawal of cooperation.

**Exhibit R** – ~~*Initial 2022 Loss-Mitigation Correspondence (Mar. 6 – Nov. 23, 2022)* Early communications showing Plaintiff's hardship submissions and Defendant's repeated resets of evaluation processes. Establishes servicing misconduct timeline.~~ *Rescinded- Duplicated Elsewhere*

**Exhibit S** – *Final Demand and Pre-Suit Correspondence ( Sept. 9, 2025)*
Plaintiff's last written demand NOTICE of Pending Litigation

**Exhibit T** – *Verified Demolition and Restoration Costs (Thrasher Contracts & Receipts, ADS Receipts, Electric Plus Receipts)*
Contracts, invoices, and receipts confirming demolition and cleanup costs paid by Plaintiff; establishes legitimate use of insurance proceeds.

# Exhibit A

## Insurance Policy & Loss-Draft Endorsement

Policy pages and endorsements for the Orion 180 Insurance policy governing the
hazard loss and mortgagee clause.

*Carolynn E Wood*

Carolynn E. Wood, Plaintiff (Pro Se)



# HOMEOWNER POLICY DECLARATION

| POLICY NUMBER: | OICH3AL_01330195-3 |
|---|---|
| EFFECTIVE DATE: | 01/10/2024 12:01 AM |
| EXPIRATION DATE: | 01/10/2025 12:01 AM |

Orion180 Insurance Services, LLC ● 930 S. Harbor City Blvd., Suite 302 ● Melbourne, FL 32901 ● (866) 590-3550

| Applicant Information<br>Carolynn Elizabeth Wood<br><br>Tommy Wayne Wood<br>491 WHITE PLAINS RD<br>ANNISTON, AL 36207<br>928-925-8031 | Agent Information<br>Luke Etheredge  NPN: 16662909<br>Aldridge Insurance, LLC DBA Providence Insurance<br>107 Grant St, SE<br>Decatur AL 35601<br>334-566-0051 |
|---|---|
| **Property Address:** | 491 White Plains Rd Anniston Al 36207 |

**Important Phone Numbers:**
Customer Service: 1-866-590-3550
Claims Reporting: 1-866-590-3550

Policy Type: AL Orion180 Homeowner HO3 Policy

INSURER: Orion180 Insurance Company (A) Demotech Rated

This company has been approved by the director or his designee of the Alabama Department of Insurance to write business in this state as an eligible surplus lines insurer, but it is not afforded guaranty fund protection.

| TOTAL ESTIMATED POLICY PREMIUM, FEES AND TAXES: | $ 2,608.66 |
|---|---|

| COVERAGES | |
|---|---|
| Coverage A - Dwelling (Replacement Cost as Described in policy) | $550,000 |
| Coverage B - Other Structures | Excluded |
| Coverage C - Personal Contents | $55,000 |
| Coverage D - Loss of Use | Excluded |
| Coverage E - Personal Liability | Excluded |
| Coverage F - Medical Payments | Excluded |

| DEDUCTIBLES | |
|---|---|
| Hurricane/Wind/Hail or Tornado Deductible | 2.00 % |
| All Other Peril Deductible | $2,500 |

| BASE PREMIUM (Without fees and taxes.) | $ 2,286.00 |
|---|---|

| FEES & TAXES | |
|---|---|
| Policy Fee (This fee applies to all new and renewal policies and is fully earned and non-refundable.) | $ 175.00 |
| AL SL Surplus Tax (6%) | $ 147.66 |

| TOTAL PREMIUM | $ 2,608.66 |
|---|---|

*Additional processing fees may apply.*

| OPTIONAL COVERAGE | |
|---|---|
| Residence Held in Trust | No |
| Loss Assessment Coverage | $1,000 |
| Special Computer Coverage | Excluded |
| Jewelry, Watches & Furs Limits (Unscheduled) | $1,500 |
| Silverware, Goldware, Pewterware Limits (Unscheduled) | $2,500 |
| Limited Fungi, Other Microbes or Rot Coverage | $5,000 |
| Water Back Up & Sump Discharge or Overflow | Excluded |

OIC H3 N320 AL 06 23

*Ex. A pg 1*

| | |
|---|---|
| Ordinance or Law Coverage | $55,000 |
| Identity Theft Protection | Excluded |
| Covg. A – Additional 25% Dwelling Coverage | Excluded |
| Personal Injury Coverage | Excluded |
| Covg. C – Personal Property Replacement Cost | Excluded |
| Equipment Breakdown Coverage | Excluded |
| Fortified Roof Endorsement | Excluded |
| Swimming Pool & Hot Tub Liability Coverage | Excluded |

| DISCOUNTS | |
|---|---|
| Building Code Discount | None |
| Golden Age (Age 60 or older) | Yes |
| Claim Free | Yes |
| E-Policy | Yes |
| Window & Door Opening Protection (Proof Required) | No |
| Secured Community Discount | No |
| Burglar Alarm, Central Station with Alarm (Proof Required) | Reporting Alarm |
| Fire Alarm, Central Station with Alarm (Proof Required) | Reporting Alarm |
| Military / First Responder Discount (Proof Required) | Yes |
| Companion Policy Discount (Proof Required) | No |
| Roof Coverage Exclusion Endorsement Discount | No |
| Tankless Water Heater (Proof Required) | No |
| Tree Free Yard (Proof Required) | No |

| RATING INFORMATION | |
|---|---|
| Home is deeded to, and/or owned by a corporation, LLC, Partnership, estate, association or any other business entity. | No |
| Square Footage | 3182 |
| Year Built | 1930 |
| Home Type | Single Family Home |
| Construction Type Siding | Frame |
| Foundation Type | Crawl Space < 3 ft |
| Basement | No Basement |
| Protection Class | 4 |
| Roof Covering | Metal |
| Roof Shape | Gable |
| Roof Replaced | Yes |
| What year was the roof installed | 2018 |
| Occupancy Type | Primary |
| Number of Fire Claims in the last 3 years | 0 |
| Number of Property Claims in the last 3 years | 0 |
| Number of Liability Claims in the last 3 years | 0 |

| FINANCIAL INFORMATION | |
|---|---|
| First Mortgagee | Second Mortgagee |
| Nationstar Mortgage LLC Its Successors And Or Assigns<br>Loan Number: 692141328<br>PO BOX 7729<br>Springfield, OH 45501 | |

OIC H3 N320 AL 06 23

Page 2 of 3

*Ex. A pg. 2*

| POLICY FORMS AND ENDORSEMENTS | |
|---|---|
| OIC H3 N006 CW 08 23 | Renewal Letter Orion180 |
| OIC H3 N010 CW 03 23 | Policy Jacket |
| OIC H3 N015 CW 12 22 | Orion180 Insurance Company Privacy Policy Notice |
| OIC H3 N020 CW 05 23 | Homeowners Policy Invoice - Insured |
| OIC H3 N322 AL 06 23 | Homeowner Policy Renewal Declaration |
| OIC H3 N325 AL 06 23 | Homeowners Application |
| OIC H3 N300 CW 06 23 | Orion180 Insurance Company Homeowners Policy |
| OIC H3 N305 CW 12 22 | Hurricane Wind Hail or Tornado Deductible |
| OIC H3 N330 CW 12 22 | Limited Water Damage Coverage |
| OIC H3 N310 CW 12 22 | Roof Damage Exclusion |
| OIC H3 N335 CW 12 22 | Exclusion of Cosmetic Damage to Roof Coverings Caused by Hail |
| OIC H3 N601 CW 12 22 | Animal Liability Exclusion Endorsement |
| OIC H3 N610 CW 12 22 | Renewable Energy Systems Exclusion |
| OIC H3 N615 CW 12 22 | Limited Water Damage Exclusion |
| OIC H3 N405 AL 12 22 | Outline of Coverage and Comprehensive Policy Checklist |
| OIC H3 N410 AL 12 22 | Alabama Homeowners Bill of Rights |

**Surplus Lines Broker & Mailing Address**
Kenneth M. Gregg
Orion180 Insurance Services, LLC
930 S. Harbor City Blvd, Suite 302
Melbourne, FL 32901

**Countersignature or Authorized Representative**

**Forms and Endorsements made a part of this policy at time of issue: Refer to Schedule of Forms and Endorsements.**

**THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.**

*Ex. A pg. 3*

 **Universal Property & Casualty Insurance Company**

1110 W. Commercial Blvd
Fort Lauderdale, FL 33309

# UNDERWRITING SUSPENSE FORM

Date Sent: 02/03/2025

To: Aldridge Insurance, LLC

Regarding: Carolynn and Tommy Wayne Wood

Due Date: 02/18/2025

Agency Code: AL34523

## POLICY NO: 0301-2500-0003

To avoid delays, provide information requested by due date listed above.
Note: All submitted documents are subject to underwriting review and approval.

**Notes**

1. Please be advised the roof year has been updated per the Verisk Roof Age Report.

2. Please be advised the subitted RCE is not acceptable as the loss settlement is functional replacement cost Please resubmit a revised RCE calculated at functional replacement cost, amend sq ft to 2493 per county records and add 800sq ft pool along with an insured signed request to amend the dwelling coverage to the amount listed on the revised RCE. If an acceptable RCE is not received to verify the coverage amount, the policy will be set to cancel.

3. Please be advised the square footage has been amended per the county records.

**Agent Reply**

_____
Insured's signature (if applicable)

_____
Agent's signature (if applicable)

Please upload and follow the status of your document via Atlasbridge.

Underwriting Department 800-425-9113

REV. 16.08.30          To avoid delays, provide information requested by due date listed above.

*Ex. A pg 4*

 **Gmail**                                                    **Carolynn Wood <carolynn.e.c.wood@gmail.com>**

---

**Tax assessor response**
4 messages

---

**Carolynn Wood** <carolynn.e.c.wood@gmail.com>                    Tue, Feb 11, 2025 at 12:07 PM
To: Heather Hale <heather@providenceins.net>

Hi Heather,
I visited the Tax Assessment office today and turned in a copy of the Police Report from the fire and signed a request for an updated Assessment.

This will not apply until 2026. I asked for a waiver or an exception to have it done sooner. The answer was "no."

---

**Heather Hale** <heather@providenceins.net>                       Tue, Feb 11, 2025 at 1:05 PM
To: Carolynn Wood <carolynn.e.c.wood@gmail.com>

Thank you for letting me know. Will they do an assessment before 2026 or not until then? I thought maybe they would do that, but it would not show up on their site until after that. If they can do it before then and can sign a form of what changes will be made, that would also work.

[Quoted text hidden]

---

**Carolynn Wood** <carolynn.e.c.wood@gmail.com>                    Tue, Feb 11, 2025 at 4:08 PM
To: Heather Hale <heather@providenceins.net>

No, they won't do any report for me earlier than 2026.

It makes no sense.  What if we wanted to sell?? It would be a disaster trying to list it 😵
[Quoted text hidden]

---

**Heather Hale** <heather@providenceins.net>                       Tue, Feb 11, 2025 at 4:18 PM
To: Carolynn Wood <carolynn.e.c.wood@gmail.com>

I am so sorry, I know that is so frustrating!

[Quoted text hidden]

Ex A pg. 5

2/5/25, 1:44 PM                                    AtlasBridge-Change Quote

## Policy Change Request

Policy Number: 0301-2500-0003
Form: HO3
EffectiveDate: 02/05/2025

| | Original | Quote |
|---|---|---|
| Base Coverages | Original | Quote |
| RCE | $0.00 | $583,959.00 |
| Dwelling | $370,780.00 | $583,959.00 |
| Other Structures | $37,078.00 | $37,078.00 |
| Contents | $185,390.00 | $145,991.00 |
| Loss of Use | $74,156.00 | $116,792.00 |
| Liability | $100,000.00 | $100,000.00 |
| Medical Payments | $1,000.00 | $1,000.00 |
| Deductibles | Original | Quote |
| Hurricane Deductible | 1.000 % | 1.000 % |
| AOP Deductible | $2,500.00 | $2,500.00 |
| Occupancy | Original | Quote |
| Dwelling Use | Primary | Primary |
| Occupancy Type | Owner | Owner |
| Unoccupied Months | none | none |
| Credits | Original | Quote |
| Fire Alarm | Central | Central |
| Burglar Alarm | Central | Central |
| Sprinklers | None | None |
| Renovations/Updates | Original | Quote |
| Electrical Type | No Update | No Update |
| Electrical Year | 1930 | 1930 |
| Plumbing Type | No Update | No Update |
| Plumbing Year | 1930 | 1930 |
| Heating Type | No Update | No Update |
| Heating Year | 1930 | 1930 |
| Roofing Type | Full | Full |
| Roofing Year | 2010 | 2010 |
| Wind Mitigation | Original | Quote |
| IBHS Certification | No IBHS Certification | No IBHS Certification |
| Other Coverages | Original | Quote |
| Auto Companion Discount | Included | Included |
| Limited Fungi, Wet or Dry Rot, or Bacteria | Amount: $10,000/$50,000 | Amount: $10,000/$50,000 |
| Loss Assessment Coverage | Amount: $1,000 | Amount: $1,000 |
| Loss Settlement | Type: Functional | Type: Functional |
| Retired Daytime Occupancy Discount | Included | Included |
| Figures | Original | Quote |
| Total Premium | $3,485.16 | $5,214.49 |

This quote is provided for informational purposes only and does not alter or affect the terms and conditions of your policy. The requested coverage/policy change will NOT be effective unless approved by the carrier. The request is subject to underwriting review and receipt of supporting documentation when required. Note: Deductible changes for current policies will be effective at the next policy renewal date (In Florida changes will be effective January 1 for reduced hurricane deductibles after a hurricane loss).

Make this change effective on: 02/05/2025

Acknowledged and Agreed _Carolyn Elliott_

Ex. A pg 6

**UNIVERSAL PROPERTY**
& CASUALTY INSURANCE COMPANY

**Quote Prepared By**

Aldridge Insurance, LLC
107 Grant Street SE
Decatur, AL 35601
(334) 566-0051

**Quote Prepared For**

Carolynn Wood
491 White Plains Road
Anniston, AL 36207
Home: (928) 925-8031

**QuoteID: 24313603**
**Quote as of 11/25/2024**
**Created: 11/25/2024**

Thank you for your interest in Universal Property & Casualty Insurance Company's products. This quotation shows rates, coverages and rating information used to determine this quotation. This quotation is not a guarantee of acceptance by UPCIC nor is it a binder of anykind on the carrier. Your application information must be submitted to and accepted by the carrier for coverage to begin.

Please review this quotation and call our agency if you have any additions that may more accurately cover your exposure.

**Property Address**    491 White Plains Rd  Anniston, AL 36207

| | | | |
|---|---|---|---|
| **Dwelling** | $370,780 | **Policy Form** | HO3 |
| **Other Structures** | $37,078 | **Policy Effective Date** | 1/9/2025 |
| **Contents** | $185,390 | **Policy Expiration Date** | 1/9/2026 |
| **Loss Of Use** | $74,156 | | |
| **Liability Coverage** | $100,000 | **Wind Portion of Premium** | **$1,498.92** |
| **Medical Payments** | $1,000 | **Total Premium** | **$4,369.42** |

**Additionally the following endorsements were added to this quotation:**          **LIMITS**    **PREMIUMS**

| | | | |
|---|---|---|---|
| HO 00 03 05 11 | Homeowners 3 Special Form | | $4,570.81 |
| UPCIC 01 01 10 21 | Special Provisions - Alabama | | |
| UPCIC 01 28 10 21 | Animal Liability Exclusion | | |
| HO 05 30 05 11 | Functional Replacement Cost Loss Settlement | | |
| HO 04 27 05 11 | Limited Fungi, Wet or Dry Rot, or Bacteria Section I - $10,000 Section II - $50,000 | | |
| HO 03 12 05 11 | Windstorm or Hail Percentage Deductible | | |
| UPCIC 01 36 10 21 | Matching Undamaged Exterior Surfacing Roof Surface Material Exclusion | | |
| | Age of Home | | $228.54 |
| | Prior Insurance Discount | | ($479.93) |
| | MGA Fee | | $25.00 |
| | Inspection Fee | | $25.00 |

**The premium for this quotation was based on the following rating criteria:**

| | | | |
|---|---|---|---|
| **Territory** | 40 | **AOP Deductible** | $2,500.00 |
| **Protection Class** | 6 | **Wind or Hail Deductible** | 1% - $3,708 |
| **BCEG Credit** | $0.00 | **Year Built** | 1930 |
| **Alarm Discount** | $0.00 | **Construction Type** | Frame |
| **Loss Assessment** | $1,000 | | |

*Ex. A pg. 7*

| Plan Type | Payment | Premium | Setup Fee | Payment Fee | Amount Due | Due Date |
|---|---|---|---|---|---|---|
| Two Payments | 1 | $2,622.00 | $10.00 | $30.00 | $2,662.00 | 1/24/2025 |
| | 2 | $1,747.42 | $0.00 | $30.00 | $1,777.42 | 7/8/2025 |
| Four Payments | 1 | $1,529.00 | $10.00 | $30.00 | $1,569.00 | 1/24/2025 |
| | 2 | $1,092.00 | $0.00 | $30.00 | $1,122.00 | 4/9/2025 |
| | 3 | $1,092.00 | $0.00 | $30.00 | $1,122.00 | 7/8/2025 |
| | 4 | $656.42 | $0.00 | $30.00 | $686.42 | 10/6/2025 |

Ex. A pg. 8

# Exhibit B

## Payment & Disbursement Table

Detailed table of insurance proceeds received, disbursed, and withheld by the servicer.

Carolynn E. Wood, Plaintiff (Pro Se)

| Date | Description | Source | Amount ($) | Applied To | Mrs. Wood's Ledger Balance |
|------|-------------|--------|-----------|------------|----------------------------|
| 9/24/2024 | Paid to Trasher Const | savings | $5,472.00 | Demolition Contract | $5,472.00 |
| 9/30/2024 | Paid to Trasher Const | savings | $5,022.00 | Demolition Contract | $10,494.00 |
| 10/2/2024 | Total Settlement | Orion 180 | $115,938.76 | N/A held by Mr Cooper | $494.00 |
| 10/9/2024 | Partial Disbursement | Mr. Cooper | $10,000.00 | Demolition Contract | $10,000.00 |
| 10/16/2024 | Paid to Trasher Const | savings | $6,390.00 | Demolition Contract | $6,884.00 |
| 10/22/2024 | Paid to Trasher Const | savings | $6,390.00 | Demolition Contract | $13,274.00 |
| 11/11/2024 | Home Depot | savings | $3,052.54 | Shed kit for Tools/Yard Equip. | $16,326.54 |
| 12/6/2024 | Johnson Reconstruction | savings | $2,175.00 | Build Shed from Kit | $18,501.54 |
| 3/20/2025 | Partial Disbursement | Mr Cooper | $28,984.69 | For Supplies to ADS | $28,984.69 |
| 4/1/2025 | To ADS | bank account | $26,329.96 | To ADS for Supplies | $26,329.96 |
| 5/30/2025 | Trailer Solutions | savings | $4,200.00 | Trailer for 1 bike | $20,046.81 |
| 6/1/2025 | To Electric Plus | savings | $9,289.00 | Electrical system for garage | $29,335.81 |

Balance Owed by Mr. Cooper:        $76,954.07              paid from savings:        $29,335.81

Exhibit B Payment and Disbursement Table

# Exhibit C

## Inspection Reports Summary

Summary of inspection reports documenting completion percentages and property condition assessments.

Despite a written request, only the first pages of each of the three Inspections have been provided by NationStar/Mr. Cooper

*Carolynn E. Wood*

Carolynn E. Wood, Plaintiff (Pro Se)



**Safeguard**
Properties

7887 Safeguard Circle
Valley View, OH 44125

Toll Free 800.852.8306
Fax 216.739.2700
www.safeguardproperties.com

## Final Update

| Client: SolutionStar - NSTAR | | |
|---|---|---|
| | **Loan:** | 692141328 |
| | **Loan Type:** | CV |
| | **Mortgagor:** | CAROLYNN WOOD |
| | **Addresss:** | 491 WHITE PLAINS RD |
| | | ANNISTON, AL 36207 |
| **Sent Date:** 10/22/2024 | **Work Order#:** | 346013992 |

```
To: SolutionStar - NSTAR
From: Safeguard Auditor
Work Ordered: IL WITH SCOPE OF WORK
Loan Number: 0692141328
*** Final Update ***

Date Time Instructions
-Completed Date: 10/22/2024

Charge Pay Fax
-Insp First Name from INSPI2: DREAMSCAPE
-Insp Last Name from INSPI2: RESOURCES
-Insp Number from INSPI2: 2569963407


Interior Inspections
-Is the mortgagor satisfied with the work completed to date?: Yes
-Safeguard Reviewer Comments:
-Please describe repairs completed on site per scope: demo debris
general slab , removal  temp
work
-Please describe work still required for completion: Building back
structure utility kitchen bedroom
-What is the percentage of work completed?: 10
-Did the mortgagor or contractor pull any necessary permits for the
work being completed?: N/A
-If the home was significantly damaged (over 50% damaged), did the
mortgagor follow local elevation requirements?: Yes
-Describe damages as fully as possible.  (If no repair list
available): Complete loss of structure
-Is an Estimated Date of Completion Known?: No


Damages
```

*Ex C pg. 1*

10/23/2024, 06:04:58 EST



**Safeguard**
Properties

7887 Safeguard Circle
Valley View, OH 44125

Toll Free 800.852.8306
Fax 216.739.2700

www.safeguardproperties.com

## Final Update

| Client: SolutionStar - NSTAR | Loan: | 692141328 |
| --- | --- | --- |
| | Loan Type: | CV |
| | Mortgagor: | CAROLYNN WOOD |
| | Addresss: | 491 WHITE PLAINS RD |
| | | ANNISTON, AL 36207 |
| Sent Date:  12/08/2024 | Work Order#: | 346968798 |

```
To: SolutionStar - NSTAR
From: Safeguard Auditor
Work Ordered: IL WITH SCOPE OF WORK
Loan Number: 0692141328
*** Final Update ***

Date Time Instructions
-Completed Date: 12/06/2024

Charge Pay Fax
-Insp First Name from INSPI2: DREAMSCAPE
-Insp Last Name from INSPI2: RESOURCES
-Insp Number from INSPI2: 2569963407

Interior Inspections
-Is the mortgagor satisfied with the work completed to date?: Yes
-Safeguard Reviewer Comments:
-Please describe repairs completed on site per scope: demo debris

general slab , removal  temp
work
-Please describe work still required for completion: Building back
structure utility kitchen bedroom
-What is the percentage of work completed?: 15
-Did the mortgagor or contractor pull any necessary permits for the
work being completed?: N/A
-If the home was significantly damaged (over 50% damaged), did the
mortgagor follow local elevation requirements?: Yes
-Describe damages as fully as possible.  (If no repair list
available): See scope
-Is an Estimated Date of Completion Known?: No

Comments
```

*Ex. C pg. 2*

12/10/2024, 15:08:00 EST



**Safeguard**
P r o p e r t i e s

7887 Safeguard Circle
Valley View, OH 44125

Toll Free 800.852.8306
Fax 216.739.2700

www.safeguardproperties.com

## Final Update

| | | |
|---|---|---|
| **Client:** Mr. Cooper | **Loan:** | 692141328 |
| | **Loan Type:** | CV |
| | **Mortgagor:** | CAROLYNN WOOD |
| | **Addresss:** | 491 WHITE PLAINS RD |
| | | ANNISTON, AL 36207 |
| **Sent Date:** 09/02/2025 | **Work Order#:** | 350936880 |

```
To: Mr. Cooper
From: Safeguard Auditor
Work Ordered: IL WITH SCOPE OF WORK
Loan Number: 0692141328
*** Final Update ***

Date Time Instructions
-Completed Date: 09/02/2025


Interior Inspections
-Please describe repairs completed on site per scope: Demo, content
manipulation, temp repairs work as completed.
-Please describe work still required for completion: roof, drywall,
insulation, windows, doors, painting, plumbing, framing, electrical
work pending.
-Percentage of Work Completed: 10
-Did the mortgagor or contractor pull any necessary permits for the
work being completed?: N/A
-If the home was significantly damaged (over 50% damaged), did the
mortgagor follow local elevation requirements?: Yes
-Describe damages as fully as possible.  (If no repair list
available): .
-Is an Estimated Date of Completion Known?: No


Damages

No Damages Have Been Reported For This Property



Client Property Type:
```

09/05/2025, 05:11:53 EST

*Ex. C pg. 3*



# Exhibit D

## Property Damage & Cost Overview

Summary of fire-related damages and restoration cost estimates for garage, deck, ~~greenhouse~~, and fencing/ pool demo.

*Carolynn E Wood*

Carolynn E. Wood, Plaintiff (Pro Se)



**Alternative Claims Services, Inc.**

16400 W. 118th St
Olathe, KS 66061
Phone 800-354-5732
Fax    800-255-9708

| | | | |
|---|---|---|---|
| Insured: | CAROLYNN ELIZABETH WOOD | Home: | (928) 925-8031 |
| Property: | 491 WHITE PLAINS RD | E-mail: | carolynn.e.c.wood@gmail.com |
| | ANNISTON, AL 36207 | | |
| Home: | 491 WHITE PLAINS RD | | |
| | ANNISTON, AL 36207 | | |

| | | | |
|---|---|---|---|
| Claim Rep.: | Josh Proulx | Business: | (866) 590-3550 |
| Company: | Orion 180 | | |
| Business: | 930 S. Harbor City Blvd., Suite 302 | | |
| | Melbourne, FL 32901 | | |

| | | | |
|---|---|---|---|
| Estimator: | Daniel Kane AL#300271036 | Business: | (800) 354-5732 |
| Company: | Alternative Claims Services | | |

Reference:
Company:    None

**Claim Number:** C-1016697          **Policy Number:** OICH3AL_01330195-3          **Type of Loss:** Fire - Other

| | | | |
|---|---|---|---|
| Date Contacted: | 9/7/2024 8:00 AM | | |
| Date of Loss: | 9/5/2024 12:00 AM | Date Received: | 9/6/2024 12:00 AM |
| Date Inspected: | 9/9/2024 8:00 AM | Date Entered: | 9/6/2024 11:17 AM |
| Date Est. Completed: | 9/12/2024 9:08 AM | | |

| | |
|---|---|
| Price List: | ALAN8X_SEP24 |
| | Restoration/Service/Remodel |
| Estimate: | CAROLYNN_ELIZABETH_1 |

*Ex D pg 1*



16400 W. 118th St
Olathe, KS 66061
Phone 800-354-5732
Fax    800-255-9708

**CAROLYNN_ELIZABETH_1**

**Risk Photos**

### Risk Photos

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 1. Clean the surface area | 3,182.00 SF | 0.23 | 2.23 | 0.00 | 734.09 | (0.00) | 734.09 |
| Insureds time to clean dwelling | | | | | | | |
| **Total: Risk Photos** | | | 2.23 | 0.00 | 734.09 | 0.00 | 734.09 |

### Main Level

### Main Level

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Contents and Temporary Items | | | | | | | |
| 2. Job-site cargo/storage container - 40' long (per month) | 4.00 MO | 115.84 | 32.44 | 92.68 | 588.48 | (0.00) | 588.48 |
| Storage container for any salvageable contents from attached garage | | | | | | | |
| 3. Job-site cargo container - pick up/del. (each way) 16'-40' | 2.00 EA | 150.00 | 21.00 | 60.00 | 381.00 | (0.00) | 381.00 |
| 4. Temporary toilet (per month) | 4.00 MO | 145.00 | 0.00 | 116.00 | 696.00 | (0.00) | 696.00 |
| Demolition and prep | | | | | | | |
| 5. Dumpster load - Approx. 40 yards, 7-8 tons of debris | 1.00 EA | 657.80 | 0.00 | 131.56 | 789.36 | (0.00) | 789.36 |
| For DEMO debris | | | | | | | |
| 6. Skid steer loader and operator | 16.00 HR | 95.74 | 0.00 | 306.36 | 1,838.20 | (0.00) | 1,838.20 |
| Loader and helper for demo of attached garage | | | | | | | |
| 7. General Laborer - per hour | 16.00 HR | 44.40 | 0.00 | 142.08 | 852.48 | (0.00) | 852.48 |
| 8. Clean the floor with pressure steam | 1,779.21 SF | 1.14 | 27.40 | 405.66 | 2,461.36 | (0.00) | 2,461.36 |
| Prep concrete | | | | | | | |
| 9. Epoxy finish - one coat over concrete floor | 1,779.21 SF | 2.56 | 48.57 | 910.96 | 5,514.31 | (222.74) | 5,291.57 |
| Framing | | | | | | | |
| 10. Dumpster load - Approx. 30 yards, 5-7 tons of debris | 1.00 EA | 598.00 | 0.00 | 119.60 | 717.60 | (0.00) | 717.60 |
| Restoration debris | | | | | | | |
| 11. Stud wall - 2" x 4" x 9' load bearing* | 221.50 LF | 22.43 | 137.53 | 993.66 | 6,099.44 | (630.67) | 5,468.77 |
| 12. Stud wall - 2" x 4" x 9' - 24" oc* | 90.00 LF | 19.88 | 44.98 | 357.84 | 2,192.02 | (206.27) | 1,985.75 |
| Adjusted to 9 ft - Interior walls | | | | | | | |
| Siding | | | | | | | |
| 13. Rigid foam insulation board - 3/4" | 1,575.00 SF | 1.08 | 88.20 | 340.20 | 2,129.40 | (404.46) | 1,724.94 |
| 14. Fiber cement lap siding - 12" | 1,575.00 SF | 4.35 | 259.09 | 1,370.26 | 8,480.60 | (0.00) | 8,480.60 |
| 15. Siding trim - 1" x 4" fiber cement trim board | 108.00 LF | 5.26 | 12.70 | 113.62 | 694.40 | (58.24) | 636.16 |
| 16. Seal (1 coat) & paint (1 coat) trim | 108.00 LF | 1.73 | 1.13 | 37.36 | 225.33 | (5.20) | 220.13 |

CAROLYNN_ELIZABETH_1

9/16/2024          Page: 2

*Ex D Pg. 2*



**Alternative Claims Services, Inc.**

16400 W. 118th St
Olathe, KS 66061
Phone 800-354-5732
Fax    800-255-9708

### CONTINUED - Main Level

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 17. Exterior - paint two coats | 1,575.00 SF | 1.45 | 49.61 | 456.76 | 2,790.12 | (227.51) | 2,562.61 |
| 18. Soffit & fascia - wood - 1' overhang | 165.00 LF | 10.21 | 65.26 | 336.94 | 2,086.85 | (299.26) | 1,787.59 |
| 19. Prime & paint exterior soffit - wood | 165.00 SF | 2.68 | 5.89 | 88.44 | 536.53 | (27.02) | 509.51 |
| Rafters and insulation - Decking and up in roof | | | | | | | |
| 20. Telehandler/forklift (per day) - no operator | 2.00 DA | 538.00 | 0.00 | 215.20 | 1,291.20 | (0.00) | 1,291.20 |
| Necessary for setting truss system | | | | | | | |
| 21. Truss - 4/12 slope | 900.00 LF | 8.42 | 337.05 | 1,515.60 | 9,430.65 | (1,545.62) | 7,885.03 |
| 22. Batt insulation - 8" - R25 - unfaced batt | 1,779.21 SF | 1.49 | 130.77 | 530.20 | 3,311.99 | (599.68) | 2,712.31 |
| wiring and ELS | | | | | | | |
| 23. Breaker panel - 100 amp | 1.00 EA | 846.63 | 16.87 | 169.32 | 1,032.82 | (77.38) | 955.44 |
| 24. Circuit breaker - main disconnect - up to 100 amp | 1.00 EA | 119.49 | 4.26 | 23.90 | 147.65 | (19.55) | 128.10 |
| 25. Rewire\wire - avg. residence - boxes & wiring | 1,779.21 SF | 2.83 | 88.43 | 1,007.04 | 6,130.63 | (405.50) | 5,725.13 |
| Market adjusted for shed application - No code issues in this county | | | | | | | |
| 26. Surveillance camera - color | 2.00 EA | 606.86 | 56.00 | 242.74 | 1,512.46 | (428.00) | 1,084.46 |
| 27. Wireless Smoke detector - By wifi* | 1.00 EA | 210.69 | 10.15 | 42.14 | 262.98 | (15.52) | 247.46 |
| 28. Fire alarm - Horn/Bell | 1.00 EA | 178.47 | 2.36 | 35.70 | 216.53 | (3.61) | 212.92 |
| 29. Exterior light fixture | 4.00 EA | 95.93 | 11.76 | 76.74 | 472.22 | (53.93) | 418.29 |
| 30. Light bulb - Incand. standard bulb - 2000 hr - mat. only | 14.00 EA | 1.90 | 1.86 | 5.32 | 33.78 | (8.54) | 25.24 |
| Pex Water Supply | | | | | | | |
| 31. Gate valve - 1/2" | 1.00 EA | 46.49 | 1.06 | 9.30 | 56.85 | (4.85) | 52.00 |
| 32. Water supply line - PEX with fitting and hanger, 1/2" | 75.00 LF | 11.30 | 4.36 | 169.50 | 1,021.36 | (19.99) | 1,001.37 |
| Pex supply to water closet and vanity area | | | | | | | |
| **Total: Main Level** | | | **1,458.73** | **10,422.68** | **63,994.60** | **5,263.54** | **58,731.06** |



king   East Parking   Vanity

**East Parking**                                                    **Height: 9'**

615.00 SF Walls                    290.67 SF Ceiling
905.67 SF Walls & Ceiling          290.67 SF Floor
32.30 SY Flooring                  68.33 LF Floor Perimeter
68.33 LF Ceil. Perimeter

CAROLYNN_ELIZABETH_I

9/16/2024        Page: 3

Ex D Pg. 3



**Alternative Claims Services, Inc.**

16400 W. 118th St
Olathe, KS 66061
Phone 800-354-5732
Fax    800-255-9708

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Ceiling | | | | | | | |
| 33.  Overhead door & hardware - 9' x 7' - Standard grade | 1.00 EA | 988.11 | 49.98 | 197.62 | 1,235.71 | (229.19) | 1,006.52 |
| 34.  Sheathing - OSB - 5/8" | 290.67 SF | 1.97 | 20.55 | 114.52 | 707.69 | (94.23) | 613.46 |
| 35.  Fluorescent - two tube - 8' - fixture w/lens | 1.00 EA | 185.33 | 7.30 | 37.06 | 229.69 | (111.55) | 118.14 |
| 36.  Light bulb - Fluorescent tube - 8' cool white - mat. only | 2.00 EA | 10.48 | 1.47 | 4.20 | 26.63 | (6.73) | 19.90 |
| Walls are exposed studs | | | | | | | |
| 37.  Interior door unit | 1.00 EA | 306.97 | 17.75 | 61.40 | 386.12 | (81.37) | 304.75 |
| door to sitting room - Open wall to Middle parking | | | | | | | |
| 38.  Door knob - interior - Standard grade | 1.00 EA | 34.76 | 1.08 | 6.96 | 42.80 | (4.96) | 37.84 |
| 39.  Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | 38.25 | 0.86 | 15.30 | 92.66 | (13.20) | 79.46 |
| Water heater was abandoned in place | | | | | | | |
| Breaker box in Main level | | | | | | | |
| | | | 98.99 | 437.06 | 2,721.30 | 541.23 | 2,180.07 |
| **Totals: East Parking** | | | | | | | |



### Middle Parking

**Height: 9'**

538.83  SF Walls
769.25  SF Walls & Ceiling
25.60  SY Flooring
62.83  LF Ceil. Perimeter

230.42  SF Ceiling
230.42  SF Floor
58.83  LF Floor Perimeter

**Missing Wall - Goes to Floor**      4' X 6' 8"      Opens into OLD_STORE

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Ceiling | | | | | | | |
| 40.  Sheathing - OSB - 5/8" | 230.42 SF | 1.97 | 16.29 | 90.78 | 561.00 | (74.71) | 486.29 |
| 41.  Fluorescent - two tube - 8' - fixture w/lens | 2.00 EA | 185.33 | 14.60 | 74.14 | 459.40 | (223.10) | 236.30 |
| 42.  Light bulb - Fluorescent tube - 8' cool white - mat. only | 2.00 EA | 10.48 | 1.47 | 4.20 | 26.63 | (6.73) | 19.90 |
| Walls | | | | | | | |
| 43.  Sheathing - OSB - 5/8" | 538.83 SF | 1.97 | 38.10 | 212.30 | 1,311.90 | (174.70) | 1,137.20 |
| 44.  Overhead door & hardware - 9' x 7' - Standard grade | 1.00 EA | 988.11 | 49.98 | 197.62 | 1,235.71 | (229.19) | 1,006.52 |
| 45.  Overhead (garage) door opener | 1.00 EA | 448.36 | 17.01 | 89.68 | 555.05 | (130.01) | 425.04 |
| 46.  Door opening (jamb & casing) - 32"to36"wide - paint grade | 3.00 EA | 168.02 | 25.52 | 100.82 | 630.40 | (117.05) | 513.35 |
| 47.  Paint door/window trim & jamb - 2 coats (per side) | 3.00 EA | 38.25 | 1.30 | 22.96 | 139.01 | (5.94) | 133.07 |

CAROLYNN_ELIZABETH_1

Ex D pg. 4



16400 W. 118th St
Olathe, KS 66061
Phone 800-354-5732
Fax     800-255-9708

**CONTINUED - Middle Parking**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| | | | 164.27 | 792.50 | 4,919.10 | 961.43 | 3,957.67 |
| **Totals: Middle Parking** | | | | | | | |

Height: 9'



**Old Store**

975.33 SF Walls
1688.67 SF Walls & Ceiling
79.26 SY Flooring
111.33 LF Ceil. Perimeter

713.33 SF Ceiling
713.33 SF Floor
107.33 LF Floor Perimeter

**Missing Wall - Goes to Floor**       4' X 6' 8"       Opens into MIDDLE_PARKI

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Ceiling | | | | | | | |
| 48. 5/8" drywall - hung, taped, ready for texture | 713.33 SF | 1.91 | 38.95 | 272.50 | 1,673.91 | (178.61) | 1,495.30 |
| 49. Acoustic ceiling (popcorn) texture | 713.33 SF | 0.78 | 3.50 | 111.28 | 671.18 | (16.03) | 655.15 |
| 50. Light fixture | 4.00 EA | 72.57 | 9.24 | 58.06 | 357.58 | (42.37) | 315.21 |
| Walls | | | | | | | |
| 51. Overhead door & hardware - 9' x 7' - Standard grade | 2.00 EA | 988.11 | 99.96 | 395.24 | 2,471.42 | (458.39) | 2,013.03 |
| 52. Exterior door - metal - insulated - flush or panel style | 1.00 EA | 466.28 | 27.03 | 93.26 | 586.57 | (123.94) | 462.63 |
| 53. Door lockset & deadbolt - exterior | 1.00 EA | 90.91 | 4.57 | 18.18 | 113.66 | (20.94) | 92.72 |
| 54. Door opening (jamb & casing) - 32"to36"wide - paint grade | 1.00 EA | 168.02 | 8.51 | 33.60 | 210.13 | (39.01) | 171.12 |
| 55. Paint door/window trim & jamb - 2 coats (per side) | 3.00 EA | 38.25 | 1.30 | 22.96 | 139.01 | (5.94) | 133.07 |
| 56. Wood window - picture (fixed), 12-23 sf, Standard grade | 2.00 EA | 522.13 | 61.08 | 208.86 | 1,314.20 | (280.08) | 1,034.12 |
| 57. Window trim set (casing & stop) | 24.00 LF | 5.82 | 5.31 | 27.94 | 172.93 | (24.34) | 148.59 |
| 58. 1/2" drywall - hung, taped, floated, ready for paint | 975.33 SF | 2.02 | 49.84 | 394.04 | 2,414.05 | (228.55) | 2,185.50 |
| 59. Seal/prime (1 coat) then paint (1 coat) the walls | 975.33 SF | 1.15 | 15.02 | 224.32 | 1,360.97 | (68.88) | 1,292.09 |
| 60. Baseboard - 2 1/4" | 107.33 LF | 3.22 | 11.27 | 69.12 | 425.99 | (51.68) | 374.31 |
| 61. Paint baseboard - two coats | 107.33 LF | 1.76 | 1.35 | 37.78 | 228.03 | (6.21) | 221.82 |
| **Totals: Old Store** | | | 336.93 | 1,967.14 | 12,139.63 | 1,544.97 | 10,594.66 |

CAROLYNN_ELIZABETH_1

*Ex. D pg. 5*



16400 W. 118th St
Olathe, KS 66061
Phone 800-354-5732
Fax    800-255-9708



**Bedroom**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Height: 9'**

490.50 SF Walls　　　　　　　　181.81 SF Ceiling
672.31 SF Walls & Ceiling　　　　181.81 SF Floor
20.20 SY Flooring　　　　　　　　54.50 LF Floor Perimeter
54.50 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Ceiling | | | | | | | |
| 62. 5/8" drywall - hung, taped, ready for texture | 181.81 SF | 1.91 | 9.93 | 69.46 | 426.65 | (45.52) | 381.13 |
| 63. Acoustic ceiling (popcorn) texture | 181.81 SF | 0.78 | 0.89 | 28.36 | 171.06 | (4.09) | 166.97 |
| 64. Ceiling fan & light - Standard grade | 1.00 EA | 296.48 | 5.67 | 59.30 | 361.45 | (26.00) | 335.45 |
| Walls | | | | | | | |
| 65. Wood window - single hung, 9-12 sf, Standard grade | 1.00 EA | 452.68 | 24.72 | 90.54 | 567.94 | (113.38) | 454.56 |
| 66. Window trim set (casing & stop) | 14.00 LF | 5.82 | 3.10 | 16.30 | 100.88 | (14.20) | 86.68 |
| 67. Paint wood window - 1 coat (per side) - Small | 2.00 EA | 31.47 | 0.36 | 12.58 | 75.88 | (1.63) | 74.25 |
| 68. Paneling | 490.50 SF | 2.52 | 29.19 | 247.22 | 1,512.47 | (133.84) | 1,378.63 |
| 69. Baseboard - 2 1/4" | 54.50 LF | 3.22 | 5.72 | 35.10 | 216.31 | (26.25) | 190.06 |
| 70. Paint baseboard - two coats | 54.50 LF | 1.76 | 0.69 | 19.18 | 115.79 | (3.15) | 112.64 |
| 71. Interior door unit door to middle parking | 1.00 EA | 306.97 | 17.75 | 61.40 | 386.12 | (81.37) | 304.75 |
| 72. Door knob - interior - Standard grade | 1.00 EA | 34.76 | 1.08 | 6.96 | 42.80 | (4.96) | 37.84 |
| 73. Paint door/window trim & jamb - 2 coats (per side) | 3.00 EA | 38.25 | 1.30 | 22.96 | 139.01 | (19.81) | 119.20 |
| **Totals: Bedroom** | | | 100.40 | 669.36 | 4,116.36 | 474.20 | 3,642.16 |



**Sitting Area**　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Height: 9'**

483.00 SF Walls　　　　　　　　165.94 SF Ceiling
648.94 SF Walls & Ceiling　　　　165.94 SF Floor
18.44 SY Flooring　　　　　　　　53.67 LF Floor Perimeter
53.67 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Ceiling | | | | | | | |
| 74. 5/8" drywall - hung, taped, ready for texture | 165.94 SF | 1.91 | 9.06 | 63.40 | 389.41 | (41.55) | 347.86 |
| 75. Acoustic ceiling (popcorn) texture | 165.94 SF | 0.78 | 0.81 | 25.88 | 156.12 | (3.72) | 152.40 |

CAROLYNN_ELIZABETH_1

9/16/2024　　　　Page: 6

*Ex D pg. 6*



16400 W. 118th St
Olathe, KS 66061
Phone 800-354-5732
Fax    800-255-9708

**CONTINUED - Sitting Area**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 76. Ceiling fan & light - Standard grade | 1.00 EA | 296.48 | 5.67 | 59.30 | 361.45 | (26.00) | 335.45 |
| Walls | | | | | | | |
| 77. French door - Exterior - pre-hung unit | 1.00 EA | 879.47 | 55.95 | 175.90 | 1,111.32 | (256.56) | 854.76 |
| 78. Door lockset & deadbolt - exterior | 1.00 EA | 90.91 | 4.57 | 18.18 | 113.66 | (20.94) | 92.72 |
| 79. 1/2" drywall - hung, taped, floated, ready for paint | 483.00 SF | 2.02 | 24.68 | 195.14 | 1,195.48 | (113.18) | 1,082.30 |
| 80. Seal/prime (1 coat) then paint (1 coat) the walls | 483.00 SF | 1.15 | 7.44 | 111.10 | 673.99 | (34.11) | 639.88 |
| 81. Baseboard - 2 1/4" | 53.67 LF | 3.22 | 5.64 | 34.56 | 213.02 | (25.84) | 187.18 |
| 82. Paint baseboard - two coats | 53.67 LF | 1.76 | 0.68 | 18.90 | 114.04 | (3.10) | 110.94 |
| 83. Interior door unit | 1.00 EA | 306.97 | 17.75 | 61.40 | 386.12 | (81.37) | 304.75 |
| door to bedroom | | | | | | | |
| 84. Door knob - interior - Standard grade | 1.00 EA | 34.76 | 1.08 | 6.96 | 42.80 | (4.96) | 37.84 |
| 85. Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | 38.25 | 0.86 | 15.30 | 92.66 | (13.20) | 79.46 |
| **Totals: Sitting Area** | | | **134.19** | **786.02** | **4,850.07** | **624.53** | **4,225.54** |



**Vanity**                                                                                    **Height: 9'**

226.50 SF Walls                          39.50 SF Ceiling
266.00 SF Walls & Ceiling                39.50 SF Floor
4.39 SY Flooring                         25.17 LF Floor Perimeter
25.17 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Ceiling | | | | | | | |
| 86. 5/8" drywall - hung, taped, ready for texture | 39.50 SF | 1.91 | 2.16 | 15.10 | 92.71 | (9.89) | 82.82 |
| 87. Acoustic ceiling (popcorn) texture | 39.50 SF | 0.78 | 0.19 | 6.16 | 37.16 | (0.89) | 36.27 |
| 88. Light fixture | 1.00 EA | 72.57 | 2.31 | 14.52 | 89.40 | (10.59) | 78.81 |
| Walls | | | | | | | |
| 89. 1/2" drywall - hung, taped, floated, ready for paint | 226.50 SF | 2.02 | 11.57 | 91.50 | 560.60 | (53.07) | 507.53 |
| 90. Seal/prime (1 coat) then paint (1 coat) the walls | 226.50 SF | 1.15 | 3.49 | 52.10 | 316.07 | (16.00) | 300.07 |
| 91. Baseboard - 2 1/4" | 25.17 LF | 3.22 | 2.64 | 16.22 | 99.91 | (12.12) | 87.79 |
| 92. Paint baseboard - two coats | 25.17 LF | 1.76 | 0.32 | 8.86 | 53.48 | (1.46) | 52.02 |

CAROLYNN_ELIZABETH_I                                              9/16/2024              Page: 7

Ex. D pg 7



**Alternative Claims Services, Inc.**

16400 W. 118th St
Olathe, KS 66061
Phone 800-354-5732
Fax    800-255-9708

### CONTINUED - Vanity

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 93. Interior door unit | 1.00 EA | 306.97 | 17.75 | 61.40 | 386.12 | (81.37) | 304.75 |
| door to sitting room | | | | | | | |
| 94. Door knob - interior - Standard grade | 1.00 EA | 34.76 | 1.08 | 6.96 | 42.80 | (4.96) | 37.84 |
| 95. Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | 38.25 | 0.86 | 15.30 | 92.66 | (13.20) | 79.46 |
| Plumbing | | | | | | | |
| 96. Pedestal sink - Standard grade | 1.00 EA | 390.45 | 12.17 | 78.10 | 480.72 | (55.82) | 424.90 |
| 97. Angle stop valve | 2.00 EA | 38.66 | 1.75 | 15.46 | 94.53 | (8.02) | 86.51 |
| 98. Plumbing fixture supply line | 3.00 EA | 20.32 | 1.52 | 12.20 | 74.68 | (6.97) | 67.71 |
| 99. Material Only P-trap assembly - ABS (plastic) | 1.00 EA | 8.36 | 0.59 | 1.68 | 10.63 | (2.69) | 7.94 |
| 100. Drain/Vent line - PVC pipe with fitting and hanger, 1-1/2" | 10.00 LF | 9.30 | 1.27 | 18.60 | 112.87 | (5.84) | 107.03 |
| 101. Plumbing - On demand water heater* | 1.00 EA | 43.00 | 3.01 | 8.60 | 54.61 | (4.60) | 50.01 |
| 110V Electric Water Heater Faucet Stainless Steel Instant Water Heater Faucet Fast Heating Tap Water Faucet 360° Rotatable Hot Water Faucet with LED Digital Display for Bathroom Kitchen - From Amazon | | | | | | | |
| 102. Material Only Sink sprayer attachment - side pull | 1.00 EA | 20.19 | 1.41 | 4.04 | 25.64 | (0.00) | 25.64 |
| Hand shower | | | | | | | |
| 103. Plumber - per hour | 1.00 HR | 107.94 | 0.00 | 21.58 | 129.52 | (0.00) | 129.52 |
| Install on demand water heater | | | | | | | |
| 104. Floor drain - PVC - 6" | 1.00 EA | 388.70 | 23.55 | 77.74 | 489.99 | (107.97) | 382.02 |
| | | | 87.64 | 526.12 | 3,244.10 | 395.46 | 2,848.64 |

**Totals: Vanity**



**W/C**                                                                                   **Height: 9'**

162.00 SF Walls                          18.00 SF Ceiling
180.00 SF Walls & Ceiling           18.00 SF Floor
  2.00 SY Flooring                       18.00 LF Floor Perimeter
 18.00 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Ceiling | | | | | | | |
| 105. 5/8" drywall - hung, taped, ready for texture | 18.00 SF | 1.91 | 0.98 | 6.88 | 42.24 | (4.50) | 37.74 |
| 106. Acoustic ceiling (popcorn) texture | 18.00 SF | 0.78 | 0.09 | 2.80 | 16.93 | (0.41) | 16.52 |
| 107. Light fixture | 1.00 EA | 72.57 | 2.31 | 14.52 | 89.40 | (10.59) | 78.81 |

CAROLYNN_ELIZABETH_I                                        9/16/2024        Page: 8

Ex. D pg. 8



16400 W. 118th St
Olathe, KS 66061
Phone 800-354-5732
Fax     800-255-9708

**CONTINUED - W/C**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Walls | | | | | | | |
| 108. 1/2" drywall - hung, taped, floated, ready for paint | 162.00 SF | 2.02 | 8.28 | 65.44 | 400.96 | (37.96) | 363.00 |
| 109. Seal/prime (1 coat) then paint (1 coat) the walls | 162.00 SF | 1.15 | 2.49 | 37.26 | 226.05 | (11.44) | 214.61 |
| 110. Baseboard - 2 1/4" | 18.00 LF | 3.22 | 1.89 | 11.60 | 71.45 | (8.67) | 62.78 |
| 111. Paint baseboard - two coats | 18.00 LF | 1.76 | 0.23 | 6.34 | 38.25 | (1.04) | 37.21 |
| 112. Interior door unit door to sitting room | 1.00 EA | 306.97 | 17.75 | 61.40 | 386.12 | (81.37) | 304.75 |
| 113. Door knob - interior - Standard grade | 1.00 EA | 34.76 | 1.08 | 6.96 | 42.80 | (4.96) | 37.84 |
| 114. Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | 38.25 | 0.86 | 15.30 | 92.66 | (13.20) | 79.46 |
| Plumbing | | | | | | | |
| 115. Toilet | 1.00 EA | 528.16 | 22.95 | 105.64 | 656.75 | (105.27) | 551.48 |
| 116. Angle stop valve | 1.00 EA | 38.66 | 0.87 | 7.74 | 47.27 | (4.00) | 43.27 |
| 117. Plumbing fixture supply line | 1.00 EA | 20.32 | 0.51 | 4.06 | 24.89 | (2.32) | 22.57 |
| 118. Toilet flange | 1.00 EA | 250.76 | 6.56 | 50.16 | 307.48 | (30.10) | 277.38 |
| **Totals: W/C** | | | 66.85 | 396.10 | 2,443.25 | 315.83 | 2,127.42 |



**Kitchenette** **Height: 9'**

| 232.50 SF Walls | 41.50 SF Ceiling |
|---|---|
| 274.00 SF Walls & Ceiling | 41.50 SF Floor |
| 4.61 SY Flooring | 25.83 LF Floor Perimeter |
| 25.83 LF Ceil. Perimeter | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Ceiling | | | | | | | |
| 119. 5/8" drywall - hung, taped, ready for texture | 41.50 SF | 1.91 | 2.27 | 15.86 | 97.40 | (10.39) | 87.01 |
| 120. Acoustic ceiling (popcorn) texture | 41.50 SF | 0.78 | 0.20 | 6.48 | 39.05 | (0.93) | 38.12 |
| 121. Light fixture | 1.00 EA | 72.57 | 2.31 | 14.52 | 89.40 | (10.59) | 78.81 |
| Walls | | | | | | | |
| 122. Wood window - single hung, 9-12 sf, Standard grade | 1.00 EA | 452.68 | 24.72 | 90.54 | 567.94 | (113.38) | 454.56 |
| 123. Paint wood window - 1 coat (per side) - Small | 2.00 EA | 31.47 | 0.36 | 12.58 | 75.88 | (1.63) | 74.25 |

CAROLYNN_ELIZABETH_1

9/16/2024     Page: 9

*Ex. D pg. 9*



Alternative
Claims
Services, Inc.

16400 W. 118th St
Olathe, KS 66061
Phone 800-354-5732
Fax    800-255-9708

## CONTINUED - Kitchenette

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 124.  Window trim set (casing & stop) | 14.00 LF | 5.82 | 3.10 | 16.30 | 100.88 | (14.20) | 86.68 |
| 125.  Interior door unit | 1.00 EA | 306.97 | 17.75 | 61.40 | 386.12 | (81.37) | 304.75 |
| door to sitting room | | | | | | | |
| 126.  Door knob - interior - Standard grade | 1.00 EA | 34.76 | 1.08 | 6.96 | 42.80 | (4.96) | 37.84 |
| 127.  Paint door/window trim & jamb - 2 coats (per side) | 2.00 EA | 38.25 | 0.86 | 15.30 | 92.66 | (13.20) | 79.46 |
| 128.  Window AC unit * | 1.00 EA | 342.85 | 16.81 | 68.58 | 428.24 | (77.10) | 351.14 |
| 129.  1/2" drywall - hung, taped, floated, ready for paint | 232.50 SF | 2.02 | 11.88 | 93.94 | 575.47 | (54.48) | 520.99 |
| 130.  Seal/prime (1 coat) then paint (1 coat) the walls | 232.50 SF | 1.15 | 3.58 | 53.48 | 324.44 | (16.42) | 308.02 |
| 131.  Baseboard - 2 1/4" | 25.83 LF | 3.22 | 2.71 | 16.64 | 102.52 | (12.43) | 90.09 |
| 132.  Paint baseboard - two coats | 25.83 LF | 1.76 | 0.33 | 9.10 | 54.89 | (1.49) | 53.40 |
| **Totals: Kitchenette** | | | **87.96** | **481.68** | **2,977.69** | **412.57** | **2,565.12** |



Utility                                              Height: 8'

190.67 SF Walls                    34.04 SF Ceiling
224.71 SF Walls & Ceiling          34.04 SF Floor
3.78 SY Flooring                   23.83 LF Floor Perimeter
23.83 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Ceiling | | | | | | | |
| 133.  1/2" drywall - hung, taped, floated, ready for paint | 34.04 SF | 2.02 | 1.74 | 13.76 | 84.26 | (7.97) | 76.29 |
| 134.  Seal/prime (1 coat) then paint (1 coat) the ceiling | 34.04 SF | 1.15 | 0.52 | 7.84 | 47.51 | (2.41) | 45.10 |
| 135.  Light fixture | 1.00 EA | 72.57 | 2.31 | 14.52 | 89.40 | (10.59) | 78.81 |
| Walls | | | | | | | |
| 136.  Exterior door - double - metal - insul. - flush or panel | 1.00 EA | 650.15 | 33.66 | 130.04 | 813.85 | (154.36) | 659.49 |
| 137.  Door lockset - exterior | 1.00 EA | 52.35 | 2.31 | 10.48 | 65.14 | (10.61) | 54.53 |
| 138.  220 volt copper wiring run, box and receptacle | 1.00 EA | 208.41 | 8.76 | 41.68 | 258.85 | (40.17) | 218.68 |
| 139.  1/2" drywall - hung, taped, floated, ready for paint | 190.67 SF | 2.02 | 9.74 | 77.04 | 471.93 | (44.68) | 427.25 |

Ex. D pg 10



16400 W. 118th St
Olathe, KS 66061
Phone 800-354-5732
Fax   800-255-9708

**CONTINUED - Utility**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 140.  Seal/prime (1 coat) then paint (1 coat) the walls | 190.67 SF | 1.15 | 2.94 | 43.86 | 266.07 | (13.46) | 252.61 |
| 141.  Baseboard - 2 1/4" | 23.83 LF | 3.22 | 2.50 | 15.34 | 94.57 | (11.47) | 83.10 |
| 142.  Paint baseboard - two coats | 23.83 LF | 1.76 | 0.30 | 8.38 | 50.62 | (1.38) | 49.24 |
| 143.  Door opening (jamb & casing) - 32"to36"wide - paint grade | 1.00 EA | 168.02 | 8.51 | 33.60 | 210.13 | (39.01) | 171.12 |
| 144.  Paint door/window trim & jamb - 2 coats (per side) | 1.00 EA | 38.25 | 0.43 | 7.66 | 46.34 | (1.98) | 44.36 |

| Totals:  Utility | | | 73.72 | 404.20 | 2,498.67 | 338.09 | 2,160.58 |
|---|---|---|---|---|---|---|---|

| Total:  Main Level | | | 2,609.68 | 16,882.86 | 103,904.77 | 10,871.85 | 93,032.92 |
|---|---|---|---|---|---|---|---|

**Roof**



**Roof**

2364.16  Surface Area          23.64  Number of Squares
261.32  Total Perimeter Length      63.00  Total Ridge Length

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 145.  Sheathing - plywood - 1/2" CDX | 2,364.16 SF | 2.11 | 172.11 | 997.68 | 6,158.17 | (789.25) | 5,368.92 |
| 146.  Roofing felt - 15 lb. | 23.64 SQ | 25.48 | 10.79 | 120.48 | 733.62 | (49.48) | 684.14 |
| 147.  Metal roofing - ribbed - 24 gauge - up to 1" | 2,364.16 SF | 6.27 | 511.37 | 2,964.66 | 18,299.31 | (1,094.33) | 17,204.98 |
| 148.  Steel rake/gable trim - color finish | 86.91 LF | 5.27 | 16.61 | 91.60 | 566.23 | (76.16) | 490.07 |
| 149.  Gutter / downspout - PVC* | 141.20 LF | 7.08 | 53.97 | 199.94 | 1,253.61 | (329.97) | 923.64 |
| Material adjustment for PVC | | | | | | | |

| Totals:  Roof | | | 764.85 | 4,374.36 | 27,010.94 | 2,339.19 | 24,671.75 |
|---|---|---|---|---|---|---|---|

| Total:  Roof | | | 764.85 | 4,374.36 | 27,010.94 | 2,339.19 | 24,671.75 |
|---|---|---|---|---|---|---|---|

| Line Item Totals:  CAROLYNN_ELIZABETH_1 | | | 3,376.76 | 21,257.22 | 131,649.80 | 13,211.04 | 118,438.76 |
|---|---|---|---|---|---|---|---|

Ex D pg. 11



16400 W. 118th St
Olathe, KS 66061
Phone 800-354-5732
Fax    800-255-9708

## Grand Total Areas:

| | | |
|---|---|---|
| 4,170.33 SF Walls | 1,779.21 SF Ceiling | 5,949.54 SF Walls and Ceiling |
| 1,779.21 SF Floor | 197.69 SY Flooring | 467.50 LF Floor Perimeter |
| 0.00 SF Long Wall | 0.00 SF Short Wall | 475.50 LF Ceil. Perimeter |
| | | |
| 1,779.21 Floor Area | 1,895.24 Total Area | 4,170.33 Interior Wall Area |
| 2,613.06 Exterior Wall Area | 214.83 Exterior Perimeter of Walls | |
| | | |
| 2,483.50 Surface Area | 24.84 Number of Squares | 306.19 Total Perimeter Length |
| 63.00 Total Ridge Length | 0.00 Total Hip Length | |

Ex D pg. 12



16400 W. 118th St
Olathe, KS 66061
Phone 800-354-5732
Fax     800-255-9708

## Summary for CoverageA

| | |
|---|---:|
| Line Item Total | 107,015.82 |
| Overhead | 10,628.61 |
| Profit | 10,628.61 |
| Material Sales Tax | 3,323.32 |
| Storage Rental Tax | 53.44 |
| **Replacement Cost Value** | **$131,649.80** |
| Less Depreciation | (13,211.04) |
| **Actual Cash Value** | **$118,438.76** |
| Less Deductible | (2,500.00) |
| **Net Claim** | **$115,938.76** |
| Total Recoverable Depreciation | 13,211.04 |
| **Net Claim if Depreciation is Recovered** | **$129,149.80** |

Daniel Kane AL#300271036

Ex. D pg. 13



16400 W. 118th St
Olathe, KS 66061
Phone 800-354-5732
Fax    800-255-9708

## Recap of Taxes, Overhead and Profit

| | Overhead (10%) | Profit (10%) | Material Sales Tax (7%) | Storage Rental Tax (7%) |
|---|---|---|---|---|
| Line Items | 10,628.61 | 10,628.61 | 3,323.32 | 53.44 |
| **Total** | **10,628.61** | **10,628.61** | **3,323.32** | **53.44** |

CAROLYNN_ELIZABETH_1                    9/16/2024        Page: 14

*Ex D pg. 14*



16400 W. 118th St
Olathe, KS 66061
Phone 800-354-5732
Fax     800-255-9708

## Recap by Room

**Estimate: CAROLYNN_ELIZABETH_1**

| | | |
|---|---:|---:|
| **Area: Risk Photos** | 731.86 | 0.68% |
| Area Subtotal:  Risk Photos | 731.86 | 0.68% |
| **Area: Main Level** | 52,113.19 | 48.70% |
| East Parking | 2,185.25 | 2.04% |
| Middle Parking | 3,962.33 | 3.70% |
| Old Store | 9,835.56 | 9.19% |
| Bedroom | 3,346.60 | 3.13% |
| Sitting Area | 3,929.86 | 3.67% |
| Vanity | 2,630.34 | 2.46% |
| W/C | 1,980.30 | 1.85% |
| Kitchenette | 2,408.05 | 2.25% |
| Utility | 2,020.75 | 1.89% |
| Area Subtotal:  Main Level | 84,412.23 | 78.88% |
| **Area: Roof** | | |
| Roof | 21,871.73 | 20.44% |
| Area Subtotal:  Roof | 21,871.73 | 20.44% |
| **Subtotal of Areas** | 107,015.82 | 100.00% |
| **Total** | 107,015.82 | 100.00% |

*Ex. D pg. 15*



**Alternative Claims Services, Inc.**

16400 W. 118th St
Olathe, KS 66061
Phone 800-354-5732
Fax     800-255-9708

## Recap by Category with Depreciation

| O&P Items | RCV | Deprec. | ACV |
|---|---|---|---|
| CLEANING | 2,028.30 | | 2,028.30 |
| CONTENT MANIPULATION | 763.36 | | 763.36 |
| GENERAL DEMOLITION | 1,255.80 | | 1,255.80 |
| DOORS | 8,238.52 | 1,934.47 | 6,304.05 |
| DRYWALL | 7,774.79 | 800.40 | 6,974.39 |
| ELECTRICAL | 6,420.38 | 521.60 | 5,898.78 |
| ELECTRICAL - SPECIAL SYSTEMS | 1,392.19 | 403.37 | 988.82 |
| HEAVY EQUIPMENT | 3,318.24 | | 3,318.24 |
| FINISH CARPENTRY / TRIMWORK | 2,135.56 | 370.35 | 1,765.21 |
| FINISH HARDWARE | 442.73 | 76.90 | 365.83 |
| FRAMING & ROUGH CARPENTRY | 16,423.50 | 2,547.85 | 13,875.65 |
| HEAT,  VENT & AIR CONDITIONING | 342.85 | 72.06 | 270.79 |
| INSULATION | 4,352.02 | 938.45 | 3,413.57 |
| LIGHT FIXTURES | 2,181.75 | 511.51 | 1,670.24 |
| PLUMBING | 2,921.81 | 334.98 | 2,586.83 |
| PANELING & WOOD WALL FINISHES | 1,236.06 | 125.08 | 1,110.98 |
| PAINTING | 11,550.77 | 715.83 | 10,834.94 |
| ROOFING | 20,872.03 | 1,877.78 | 18,994.25 |
| SIDING | 7,419.33 | 54.43 | 7,364.90 |
| SOFFIT, FASCIA, & GUTTER | 2,684.35 | 588.06 | 2,096.29 |
| TEMPORARY REPAIRS | 580.00 | | 580.00 |
| WINDOWS - WOOD | 1,949.62 | 473.68 | 1,475.94 |
| **O&P Items Subtotal** | **106,283.96** | **12,346.80** | **93,937.16** |

| Non-O&P Items | RCV | Deprec. | ACV |
|---|---|---|---|
| HAZARDOUS MATERIAL REMEDIATION | 731.86 | | 731.86 |
| Non-O&P Items Subtotal | 731.86 | 0.00 | 731.86 |
| O&P Items Subtotal | 106,283.96 | 12,346.80 | 93,937.16 |
| Overhead | 10,628.61 | | 10,628.61 |
| Profit | 10,628.61 | | 10,628.61 |
| Material Sales Tax | 3,323.32 | 864.24 | 2,459.08 |
| Storage Rental Tax | 53.44 | | 53.44 |
| **Total** | **131,649.80** | **13,211.04** | **118,438.76** |

A COPY OF THIS DOCUMENT DOES NOT CONSTITUTE A SETTLEMENT OF THIS CLAIM.  THE ABOVE FIGURES ARE SUBJECT TO THE INSURANCE COMPANY APPROVAL.  ANY ADDITIONAL REPAIR TO OR REPLACEMENT OF ITEMS NOT INCLUDED IN THE ABOVE ESTIMATE IS ALSO SUBJECT TO THE INSURANCE COMPANY'S

*Ex D. Pg. 16*



16400 W. 118th St
Olathe, KS 66061
Phone 800-354-5732
Fax    800-255-9708

PRIOR APPROVAL.

REQUESTS FOR PAYMENT OVER AND ABOVE THAT OUTLINED IN THIS ESTIMATE SHALL BE SUBMITTED IN
A TIMELY MANNER AND SHALL BE SUPPORTED BY SUFFICIENT DOCUMENTATION.  ANY ESTIMATES
SUBMITTED FOR CONSIDERATION BY OR ON BEHALF OF THE INSURED SHALL BE ITEMIZED BY UNIT COST
AND QUANTITY.  LUMP SUM BIDS\ESTIMATES ARE NOT ACCEPTABLE.

Ex D. pg. 17



## "PARTNERSHIPS BUILT FOR LIFE..."

3053 Steele Station Road, Rainbow City, AL 35906  -  Office: 256-413-0612  -  Fax: 256-413-0613  -  office@ttcllc.pro

10/4/2024

### BUILDING & ERECTING
### Going to Anniston, AL

**CAROLYNN WOOD**
**(928) 925-8031**
**491 WHITE PLAINS ROAD**
**ANNISTON, AL 30267**
**carolynn.e.c.wood@gmail.com**

: ONE YEAR LIMITED WARRANTY ON LABOR
: MANUFACTURERS WARRANTY ON ALL NEW MATERIAL AND PARTS
: PERMITS WHEN REQUIRED

TRENT THRASHER CONSTRUCTION, LLC IS FULLY LICENSED AND INSURED – GENERAL LIABILITY AND WORKERS COMPENSATION
ANY CHANGES FROM WHAT IS OUTLINED IN THIS CONTRACT BY SELLER, BUYER, EMPLOYEE OR SUBCONTRACTOR, MUST BE PRESENTED IN WRITTEN FORM
AND SIGNATURE APPROVED BY AN OFFICER OF TRENT THRASHER CONSTRUCTION, LLC.

**BUILDING: 42' x 36' x 11'**
- COLLATERAL LOAD: 3 LB
- INCLUDES DRILLING AND EPOXYING ANCHOR BOLTS
- INCLUDES ENGINEERED METAL BUILDING DRAWINGS
- BAY SPACING @ 19' & 17'
- STRAIGHT COLUMNS
- FLUSH GIRTS
- EXTRA GIRT @ 3' 6"
- HALF LOADED MAIN FRAME
- FIXED BASE COLUMN

**INSULATION:**
- 3" INSULATION IN WALLS
- 3" INSULATION IN ROOF

**ROOF: 42' X 36'**
- 5:12 PITCH GABLE SCREW DOWN ROOF
- "PBR" WITH LONG LIFE SCREWS
- ROOF PANEL FINISH: CUSTOMERS CHOICE OF COLOR
- 5' PURLIN EXTENTION WITH SOFFIT
- 5' BELOW EAVE CANOPY WITH SOFFIT
- 3' FOLLOW THE EAVE CANOPY AROUND ROOF

**WALL PANELS:**
- "PBR" WITH STANDARD SCREWS
- FINISH: CUSTOMERS CHOICE OF COLOR
- WAINSCOT TO 3' 6" ON BOTH 36' SIDE WALLS

**GUTTERS/DOWNSPOUTS: INCLUDED**

**ROLL-UP DOOR(S):**
- TWO (2) 8' X 7' SERIES 2500 ROLL UP DOORS
- TWO (2) 10' X 9' SERIES 2500 ROLL UP DOORS

*Ex D pg. 18*



BUYER INITIALS: _____          SELLER INITIALS: _____          Page 1 of 2



# "PARTNERSHIPS BUILT FOR LIFE..."

3053 Steele Station Road, Rainbow City, AL 35906 - Office: 256-413-0612 - Fax: 256-413-0613 - office@ttcllc.pro

**WALK DOOR(S):** TWO (2) 3' X 7' FRAMED OPENING FOR WALKDOORS, DOORS SUPPLIED BY OTHERS
ONE (1) 6' X 7' FRAMED OPENING FOR FRENCH DOOR, DOOR SUPPLIED BY OTHERS

**FRAMED OPENINGS: WINDOWS**
- FIFTEEN (15) 3' X 3' FRAMED OPENINGS, DOES NOT INCLUDE COSTS FOR FRAMING OF WINDOWS, WINDOWS SUPPLIED BY OTHERS

**PERMITS, EQUIPMENT, & CLEANUP**

### EXCLUSIONS INCLUDE:
### ARCHITECTURAL DRAWINGS, SITE WORK, LANDSCAPING,
### HVAC, ELECTRICAL, PLUMBING AND/OR ANY UTILITY TIE ON, ANYTHING NOT LISTED ON THIS QUOTE

| | |
|---|---|
| DRAW FOR DOWN PAYMENT AND MATERIAL COST DUE AT SIGNING | $ 21,525.00 |
| DRAW DUE FIVE DAYS BEFORE DELIVERY OF BUILDING | $ 57,800.00 |
| DRAW DUE FOR COMPLETION OF RED IRON | $ 23,442.00 |
| DRAW DUE AT COMPLETION OF CONTRACT | $ 4,860.00 |
| **TOTAL AMOUNT OF CONTRACT** | **$ 107,627.00** |

*THE ABOVE PRICE IS GOOD FOR 14 DAYS FROM DATE LISTED ON CONTRACT*

THE PRICES, SPECIFICATIONS AND CONDITIONS ARE SATISFACTORY AND ARE HEREBY ACCEPTED SUBJECT TO THE TERMS PROPOSED ABOVE. PAYMENT WILL BE MADE AS OUTLINED ABOVE. ALL WORK WILL BE DELAYED IF CONTRACT PAYMENTS ARE NOT MET. A 15% FEE PER MONTH WILL BE ADDED TO ANY PAYMENT NOT RECEIVED PER CONTRACT AGREEMENT. ANY COLLECTION OR ATTORNEY FEE'S WILL BE THE RESPONSIBILITY OF THE BUYER. ALL PRICES QUOTED ARE VALID FOR FOURTEEN (14) DAYS FROM ABOVE DATE. IF YOU ARE REQUIRED TO HAVE A CO (CERTIFICATE OF OCCUPANCY), IT WILL NOT BE APPLIED FOR UNTIL ALL INVOICES (THIS INCLUDES WORK ORDER CHANGES, EXTRAS OR ADD-ONS) ARE PAID IN FULL. SIGNATURE REQUIRED FROM BOTH PARTIES. THIS CONTRACT IS NOT BINDING UNTIL SIGNED BY BOTH SELLER AND BUYER.

**TRENT THRASHER CONSTRUCTION, LLC**
tb

**(BUYER)**
AUTHORIZED SIGNATURE _____    DATE _____

**TRENT THRASHER CONSTRUCTION, LLC (SELLER)**
AUTHORIZED SIGNATURE _____    DATE _____

*Ex D pg. 19*



# Exhibit E

## Erroneous Ledger Entries / Appearance of Impropriety

October 2024 statement showing circular debit/credit entries evidencing internal accounting irregularities.

Carolynn E. Wood, Plaintiff (Pro Se)

**mr. cooper**

RETURN SERVICE ONLY
PLEASE DO NOT SEND MAIL TO THIS ADDRESS
PO Box 619063
5800 Postal Road
Cleveland, OH 44181

## MORTGAGE LOAN STATEMENT

| STATEMENT DATE | PAYMENT DUE DATE |
|---|---|
| 10/08/2024 | 11/01/2024 |

LOAN NUMBER
0692141328

**AMOUNT DUE**

PROPERTY ADDRESS
491 WHITE PLAINS RD
ANNISTON, AL 36207

**$1,711.83**

If payment is received on or
after 11/17/2024, a $59.78
late fee will be charged.

## QUESTIONS? WE'RE HERE TO HELP.

CUSTOMER SERVICE: 888-480-2432
Mon-Thu 7 a.m. to 8 p.m. (CT)
Fri 7 a.m. to 7 p.m. (CT)
Sat 8 a.m. to 12 p.m. (CT)
www.mrcooper.com

YOUR Dedicated Loan Specialist is:
Ashley Guzman
AND CAN BE REACHED AT:
(866)-316-2432
or via mail at:
Lake Vista 4
800 State Highway 121 Bypass
Lewisville, TX 75067

### TRANSACTION ACTIVITY (09/19/2024 TO 10/08/2024) (See page 2 for more transactions)

| DATE | DESCRIPTION | TOTAL | PRINCIPAL | INTEREST | ESCROW | OTHER |
|---|---|---|---|---|---|---|
| 10/04/2024 | Payment | $1,711.83 | $410.35 | $1,084.09 | $217.39 | |
| 10/04/2024 | Payment | $1,711.83 | $408.77 | $1,085.67 | $217.39 | |
| 10/04/2024 | Payment | $1,711.83 | $407.20 | $1,087.24 | $217.39 | |
| 10/04/2024 | Payment | $1,711.83 | $405.64 | $1,088.80 | $217.39 | |
| 10/04/2024 | Payment | $1,711.83 | $404.08 | $1,090.36 | $217.39 | |
| 10/04/2024 | Payment | $1,711.83 | $402.53 | $1,091.91 | $217.39 | |
| 10/04/2024 | Payment | $1,711.83 | $400.98 | $1,093.46 | $217.39 | |
| 10/04/2024 | Payment | $1,711.83 | $399.44 | $1,095.00 | $217.39 | |
| 10/04/2024 | Payment | $1,711.83 | $397.91 | $1,096.53 | $217.39 | |
| 10/04/2024 | Payment | $1,797.81 | $396.38 | $1,098.06 | $303.37 | |
| 10/04/2024 | Payment | $1,797.81 | $394.86 | $1,099.58 | $303.37 | |
| 10/04/2024 | Payment | $1,797.81 | $393.34 | $1,101.10 | $303.37 | |
| 10/04/2024 | Payment | $1,797.81 | $391.83 | $1,102.61 | $303.37 | |
| 10/04/2024 | Payment | $1,797.81 | $390.33 | $1,104.11 | $303.37 | |
| 10/04/2024 | Payment | $1,797.81 | $388.83 | $1,105.61 | $303.37 | |
| 10/04/2024 | Payment | $1,797.81 | $387.34 | $1,107.10 | $303.37 | |
| 10/04/2024 | Payment | $1,797.81 | $385.85 | $1,108.59 | $303.37 | |
| 10/04/2024 | Payment | $1,797.81 | $384.37 | $1,110.07 | $303.37 | |
| 10/04/2024 | Payment | $1,797.81 | $382.89 | $1,111.55 | $303.37 | |
| 10/04/2024 | Reversal-Partial Payment | $99,999.99 | | | | $99,999.99 |
| 10/04/2024 | Reversal-Partial Payment | $15,938.77 | | | | $15,938.77 |
| 10/04/2024 | Reversal-Partial Payment | $15,938.77 | | | | $15,938.77 |
| 10/04/2024 | Hazard Loss Deposit | $99,999.99 | | | | $99,999.99 |
| 10/04/2024 | Hazard Loss Deposit | $83,707.34 | | | | $83,707.34 |
| 10/04/2024 | Reversal-Partial Payment | $99,999.99 | | | | $99,999.99 |
| 10/04/2024 | Reversal-Partial Payment | $99,999.99 | | | | $99,999.99 |
| 10/04/2024 | Reversal-Partial Payment | $99,999.99 | | | | $99,999.99 |
| 10/04/2024 | Reversal-Partial Payment | $99,999.99 | | | | $99,999.99 |
| 10/04/2024 | Reversal-Partial Payment | $99,999.99 | | | | $99,999.99 |
| 10/04/2024 | Reversal-Partial Payment | $99,999.99 | | | | $99,999.99 |
| 10/04/2024 | Reversal-Partial Payment | $99,999.99 | | | | $99,999.99 |
| 10/04/2024 | Reversal-Partial Payment | $83,707.42 | | | | $83,707.42 |
| 10/04/2024 | Reversal-Partial Payment | $83,707.42 | | | | $83,707.42 |
| 10/04/2024 | Hazard Loss Deposit | $99,999.99 | | | | $99,999.99 |
| 10/04/2024 | Hazard Loss Deposit | $99,999.99 | | | | $99,999.99 |
| 10/04/2024 | Hazard Loss Deposit | $99,999.99 | | | | $99,999.99 |
| 10/04/2024 | Hazard Loss Deposit | $99,999.99 | | | | $99,999.99 |
| 10/04/2024 | Hazard Loss Deposit | $99,999.99 | | | | $99,999.99 |
| 10/04/2024 | Hazard Loss Deposit | $99,999.99 | | | | $99,999.99 |
| 10/04/2024 | Hazard Loss Deposit | $99,999.99 | | | | $99,999.99 |
| 10/04/2024 | Hazard Loss Deposit | $99,999.99 | | | | $83,707.35 |
| 10/04/2024 | Reversal-Partial Payment | $83,707.35 | | | | $0.01 |
| 10/04/2024 | Reversal-Partial Payment | $0.01 | | | | $0.01 |
| 10/04/2024 | Hazard Loss Deposit | $83,707.35 | | | | $83,707.35 |
| 10/04/2024 | Hazard Loss Deposit | $125.00 | | | | $125.00 |
| 10/04/2024 | Legal Fees | $75.00 | | | | $75.00 |
| 10/04/2024 | Property Inspections | $59.78 | | | | $59.78 |
| 10/04/2024 | Late Charges Payment | $59.78 | | | | $59.78 |
| 10/04/2024 | Late Charges Payment | $59.78 | | | | $59.78 |
| 10/04/2024 | Late Charges Payment | $59.78 | | | | $59.78 |
| 10/04/2024 | Late Charges Payment | $59.78 | | | | $59.78 |
| 10/04/2024 | Late Charges Payment | $59.78 | | | | $59.78 |
| 10/04/2024 | Reversal-Payment | $1,711.83 | $410.35 | $1,084.09 | $217.39 | |
| 10/04/2024 | Reversal-Fee Payment | $59.78 | | | | $59.78 |
| 10/04/2024 | Reversal-Fee Payment | $59.78 | | | | $59.78 |
| 10/04/2024 | Reversal-Fee Payment | $59.78 | | | | $59.78 |
| 10/04/2024 | Reversal-Fee Payment | $59.78 | | | | $59.78 |
| 10/04/2024 | Reversal-Fee Payment | $59.78 | | | | $59.78 |
| 10/04/2024 | Reversal-Partial Payment | $125.00 | | | | $125.00 |
| 10/04/2024 | Reversal-Partial Payment | $75.00 | | | | $75.00 |
| 10/04/2024 | Reversal-Principal Payment | $81,995.51 | $81,995.51 | | | |
| 10/04/2024 | Principal Payment | $81,995.51 | $81,995.51 | | | |
| 10/04/2024 | Property Inspections | $75.00 | | | | $75.00 |
| 10/04/2024 | Legal Fees | $125.00 | | | | $125.00 |
| 10/04/2024 | Late Charges Payment | $59.78 | | | | $59.78 |
| 10/04/2024 | Late Charges Payment | $59.78 | | | | $59.78 |
| 10/04/2024 | Late Charges Payment | $59.78 | | | | $59.78 |
| 09/26/2024 | Property Inspections | -$25.00 | | | | -$25.00 |

Ex. E pg. 1

## MORTGAGE LOAN STATEMENT

*mr.* **cooper**
CHANGING THE FACE OF HOME LOANS

RETURN SERVICE ONLY
PLEASE DO NOT SEND MAIL TO THIS ADDRESS
PO Box 619000
5101 Postal Road
Cleveland, OH 44181

| | |
|---|---|
| STATEMENT DATE | PAYMENT DUE DATE |
| 10/08/2024 | 11/01/2024 |
| LOAN NUMBER | **AMOUNT DUE** |
| 0692141328 | **$1,711.83** |
| PROPERTY ADDRESS | If payment is received on or |
| 491 WHITE PLAINS RD | after 11/17/2024, a $59.78 |
| ANNISTON, AL 36207 | late fee will be charged. |

### QUESTIONS? WE'RE HERE TO HELP.

CUSTOMER SERVICE: 888-480-2432
Mon-Thu 7 a.m. to 8 p.m. (CT)
Fri 7 a.m. to 7 p.m. (CT)
Sat 8 a.m. to 12 p.m. (CT)
www.mrcooper.com

YOUR Dedicated Loan Specialist is:
Ashley Guzman
AND CAN BE REACHED AT:
(866)-316-2432
or via mail at:
Lake Vista 4
800 State Highway 121 Bypass
Lewisville, TX 75067

TOMMY WAYNE WOOD
CAROLYNN ELIZABETH WOOD
491 WHITE PLAINS RD
ANNISTON, AL 36207

### ACCOUNT OVERVIEW

| INTEREST BEARING PRINCIPAL BALANCE | INTEREST RATE |
|---|---|
| $281,278.51 | 4.625% |
| | ESCROW BALANCE |
| | $2,972.47 |

*The Principal Balance does not represent the payoff amount of your account and is not to be used for payoff purposes.*



REGULAR
MONTHLY PAYMENT
**$1,711.83**

INTEREST
$1,084.09

PRINCIPAL
$410.35

ESCROW
TAXES
& INSURANCE
$217.39

### PAST PAYMENTS BREAKDOWN

| CATEGORY | PAID SINCE 09/19/2024 | PAID YEAR TO DATE |
|---|---|---|
| PRINCIPAL | $7,122.57 | $7,122.57 |
| INTEREST | $19,777.35 | $19,777.35 |
| ESCROW (TAXES & INSURANCE) | $4,772.82 | $5,117.82 |
| OPTIONAL INSURANCE | $0.00 | $0.00 |
| FEES & CHARGES | $358.68 | $358.68 |
| LENDER PAID EXPENSES | $200.00 | $200.00 |
| PARTIAL PAYMENT (UNAPPLIED) | $0.00 | $0.00 |
| TOTAL | $32,231.42 | $32,576.42 |

### EXPLANATION OF AMOUNT DUE

| | |
|---|---|
| REGULAR MONTHLY PAYMENT | $1,711.83 |
| TOTAL FEES & CHARGES | $0.00 |
| OVERDUE PAYMENT(S) | $0.00 |
| PARTIAL PAYMENT (UNAPPLIED) | $0.00 |
| **TOTAL AMOUNT DUE** | **$1,711.83** |
| TRIAL/WORKOUT PAYMENT AMOUNT | $0.00 |

### HERE'S SOME HELPFUL INFORMATION

Want to make payments even easier? Pay online at www.mrcooper.com, on the go with the Mr. Cooper app, or by setting up AutoPay. No matter how you pay, we'll never charge a transaction fee.

Be the first to receive discount alerts, offers and new products by signing up for Mr. Cooper's text alerts. Simply, text JOIN to COOPER (266737)

### TRANSACTION ACTIVITY (09/19/2024 to 10/08/2024) (See page 2 for more transactions)

| DATE | DESCRIPTION | TOTAL | PRINCIPAL | INTEREST | ESCROW | OTHER |
|---|---|---|---|---|---|---|
| | | | | | | -$10,000.00 |
| 10/08/2024 | HAZ LOSS SUSP DISB | -$10,000.00 | | | | |
| 10/04/2024 | Late Charges Payment | $59.78 | | | | $59.78 |
| 10/04/2024 | Late Charges Payment | $59.78 | | | | $59.78 |
| 10/04/2024 | Late Charges Payment | $59.78 | | | | $59.78 |

Mr. Cooper is a brand name for Nationstar Mortgage LLC. Nationstar Mortgage LLC is doing business as Nationstar Mortgage LLC d/b/a Mr. Cooper. Mr. Cooper is a registered service mark of Nationstar Mortgage LLC. All rights reserved.

If you are a successor in interest (received the property from a relative through death, devise, or divorce, and you are not a borrower on the loan) that has not assumed, or otherwise become obligated on the debt, this communication is for informational purposes only and is not an attempt to collect a debt from you personally.

---

✂ - - - - - - DETACH HERE AND RETURN WITH YOUR PAYMENT. PLEASE ALLOW A MINIMUM OF 7 TO 10 DAYS FOR POSTAL DELIVERY. - - - - - - -

*mr.* **cooper®**
CHANGING THE FACE OF HOME LOANS   www.mrcooper.com

☐ PLEASE CHECK BOX IF MAILING ADDRESS OR PHONE NUMBER HAS CHANGED, ENTER CHANGES ON BACK OF COUPON

TOMMY WOOD
CAROLYNN WOOD

MR. COOPER
PO BOX 650783
DALLAS, TX 75265-0783

| ACCOUNT NUMBER | TOTAL AMOUNT DUE* |
|---|---|
| 0692141328 | 11/01/2024   $1,711.83 |

WRITE YOUR LOAN NUMBER ON YOUR CHECK OR MONEY ORDER AND MAKE PAYABLE TO MR. COOPER®

| PAYMENT DUE IF RECEIVED ON OR AFTER |
|---|
| 11/17/2024   $1,771.61 |

| | |
|---|---|
| ADDITIONAL ESCROW | $_____ |
| **ADDITIONAL PRINCIPAL | $_____ |
| FEES | $_____ |
| LENDER PAID EXPENSES | $_____ |
| ***TOTAL AMOUNT OF YOUR CHECK*** | |
| ***DO NOT SEND CASH*** | |

*All amounts must be paid in full before additional principal can be made.

91 0692141328Ø 000171183  000177161   *Ex. E pg. 2*

**IMPORTANT PAYMENT INFORMATION**

- It is important to use the remittance stub and envelope provided since both contain computer encoding that will help ensure prompt and accurate posting of payments. Always include your loan number on your check or money order. However, should you not receive your statement, DO NOT DELAY PAYMENT. Simply write your loan number on your check or money order and mail to the payment address as provided in the Contact Information section below.

- Do not send cash or correspondence as this could delay processing. Correspondence should be sent to the address provided in the Contact Information section below.

- Please be advised that if your account is delinquent or if there are fees and charges due, your account may not be paid ahead nor may principal reduction payments be applied. When Mr. Cooper receives a remittance that is in excess of a payment amount, that excess is applied to your account in accordance with a predetermined sequence: 1) Principal and Interest due; 2) Applicable Escrow amounts; 3) Fees and other charges assessed to your account. Once this sequence has been satisfied, you may give specific instructions as to how you would like excess amounts to be applied to your account by noting your preference on the face of your remittance stub.

- Any lump sum received that is not accompanied by a payoff quote will be applied according to our standard payment application rules. This will not result in satisfaction of all amounts due and owing on the account. Amount tendered satisfies all amounts due and owing on the account.

- A Schedule of Fee for Select Services may be found on our website at www.mrcooper.com.

**SERVICEMEMBERS CIVIL RELIEF ACT**
The Servicemembers Civil Relief Act (SCRA) may offer protection or relief to members of the military who have been called to active duty. If you are a member of the military who has been called to active duty or received a Permanent Change of Station order and you have not already made us aware, please forward a copy of your orders to us at:
Mr. Cooper, Attn: Military Families, P.O. Box 619098, Dallas, TX 76261-9741, fax 855-866-0427 or email MilitaryFamilies@mrcooper.com. Be sure to include your loan number with the copy of the orders. Please visit our website at www.mrcooper.com for complete details regarding Legal Rights and Protections Under the SCRA.

**LATE CHARGES AND OVERDRAFT FEES**
Payments received and posted after a grace period will be assessed a late charge. The late charge rate and number of grace days are shown on your Note. Please allow adequate time for postal delays as the receipt and posting date will govern the assessment of a late charge. Partial payments cannot be applied. If a payment is credited to your account and subsequently dishonored by your bank, Mr. Cooper will reverse that payment and assess your loan account an insufficient funds fee of up to $50.00, as permitted by applicable law. (This fee may vary by state.)

**HOMEOWNER COUNSELING NOTICE**
If your loan is delinquent, you are entitled to receive homeownership counseling from an agency approved by the United States Department of Housing and Urban Development (HUD). A list of the HUD-approved, nonprofit homeownership counseling agencies may be downloaded from the Internet at https://apps.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or by calling the HUD toll free number 1-800-569-4287 (toll free TDD number 1-800-877-8339) to obtain a list of approved nonprofit agencies serving your residential area.

**NEW YORK STATE RESIDENTS**
For those customers who reside in the state of New York, a borrower may file complaints about the Servicer with the New York State Department of Financial Services or may obtain further information by calling the Department's Consumer Help Unit at 1-800-342-3736 or by visiting the Department's website at www.dfs.ny.gov. Mr. Cooper is registered with the New York Superintendent of Financial Services.

---

You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

---

## PAYMENT OPTIONS

**AUTOPAY** Allows you to have your payment automatically debited, each month, from the checking or savings account of your choice. Mr. Cooper does not charge a fee to activate this service. Call 888-480-2432 for more information or visit our website at www.mrcooper.com.

**ONLINE PAYMENT** Allows you to sign in to your account anytime to make a payment. There is no charge for this service. Sign in to www.mrcooper.com.

**AUTOMATED PHONE PAYMENT** Is a pay-by-phone service provided through our automated phone system. There is no charge for this service. Call 888-480-2432.

**PAY BY MAIL** Detach the coupon provided with this statement and mail it with your check or money order in the envelope provided. Please write your loan number on your payment and allow adequate time for postal delays as the receipt and posting date will govern the assessment of late charges. Send payment via express or overnight mail to Mr. Cooper, Attn: Payment Processing - 650783, 3000 Kellway Drive, Suite 120, Carrollton, TX 75006.

**WIRE** Allows you to send payoff/reinstatement funds via wire transfer. Visit our website www.mrcooper.com or refer to your payoff statement for wiring instructions.

**MONEYGRAM® EXPRESSPAYMENT** Ensures same-day delivery of your payment to Mr. Cooper. Visit your local MoneyGram Agent. Call 1-800-926-9400 to locate the one nearest you. Complete the ExpressPayment form, providing your name and Mr. Cooper loan number. The MoneyGram Receive Code is ***1678***. All ExpressPayment transactions require cash. The agent will charge a fee for this service.

**WESTERN UNION® QUICK COLLECT®** Ensures same-day delivery of your payment to Mr. Cooper. Visit your local Western Union Agent. Call 1-800-325-6000 to locate the one nearest you. Complete the Quick Collect form with your name and Mr. Cooper loan number, indicating:

Pay to: Mr. Cooper    Code City: MRCOOPER    State: TX
All Quick Collect transactions require cash. Western Union will charge a fee for this service.

---

## NOTICE TO CUSTOMERS MAKING PAYMENTS BY CHECK

**Authorization to Convert Your Check:** If you send us a check to make your payment, your check may be converted into an electronic fund transfer. An electronic fund transfer is the process in which your financial institution transfers funds electronically from your account to our account. By sending your completed signed check to us, you authorize us to copy your check and use the information from your check to make an electronic funds transfer from your account for the same amount as the check. If the electronic fund transfer cannot be processed for technical reasons, you authorize us to process the copy of your check.

**Insufficient Funds:** The electronic fund transfer from your account will usually occur within 24 hours of our receipt of your check. If the electronic fund transfer cannot be completed because of insufficient funds, you may be assessed an NSF fee in connection with the attempted transaction.

**Transaction Information:** The electronic fund transfer from your account will be on the account statement you receive from your financial institution. You will not receive your original check back from your financial institution. For security reasons, your original check will be destroyed, but we will keep a secured copy of the check for record keeping purposes.

**Your Rights:** You should contact your financial institution immediately if you believe that the electronic fund transfer reported on your statement was not properly authorized or is otherwise incorrect. Consumers have protections under the Electronic Fund Transfer Act for any unauthorized or incorrect electronic fund transfer.

---

## CONTACT INFORMATION

**CUSTOMER SERVICE:** 888-480-2432, Monday through Thursday 7 a.m. to 8 p.m. (CT), Friday 7 a.m. to 7 p.m. (CT), and Saturday 8 a.m. to 12 p.m. (CT) [Calls may be monitored and/or recorded for quality assurance purposes].

**24-HOUR AUTOMATED ACCOUNT INFORMATION:** Sign in to www.mrcooper.com OR call 888-480-2432.

**MAILING ADDRESSES:** For Mr. Cooper to treat the address below properly, select the address suited to your needs and remember, sending payments to any address other than the one specifically identified for payments will result in delays and may result in additional fees being assessed to your account.

| PAYMENTS: | NOTICE OF ERROR/ INFORMATION REQUEST/QWR*: | OVERNIGHT DELIVERY CORRESPONDENCE: | INSURANCE RENEWALS/ BILLS: | TAX NOTICES/ BILLS: | BANKRUPTCY NOTICES/ PAYMENTS: |
|---|---|---|---|---|---|
| PO Box 650783 Dallas, TX 75265-0783 | PO Box 619098 Dallas, TX 75261-9741 | Lake Vista 4 800 State Highway 121 Bypass Lewisville, TX 75067 | PO Box 7729 Springfield, OH 45501-7729 Fax (800) 697-4729 | PO Box 9225 Coppell, TX 75019 Fax (817) 826-1861 | PO Box 619094 Dallas, TX 75261-9741 |

*PURSUANT TO RESPA, A "QUALIFIED WRITTEN REQUEST" (QWR) REGARDING THE SERVICING OF YOUR LOAN, A NOTICE ASSERTING THAT AN ERROR OCCURRED WITH RESPECT TO YOUR LOAN OR A NOTICE REQUESTING INFORMATION WITH RESPECT TO YOUR LOAN MUST BE SENT TO THIS ADDRESS: Mr. Cooper PO Box 619098, Dallas, TX 76261-9741, Attn: Customer Relations Officer. A "qualified written request" must comply with the requirements of RESPA, as follows: Qualified written request, by a borrower, a written correspondence (other than notice on a payment coupon or other payment medium supplied by the servicer) that includes, or otherwise enables the servicer to identify, the name and account of the borrower, and includes a statement of the reasons that the borrower believes the account is in error, if applicable, or that provides sufficient detail to the servicer regarding information relating to the servicing of the loan sought by the borrower. A QWR, notice of error or request for information is not timely if it is delivered to a servicer more than 1-year after either the date of transfer of servicing or the date that the mortgage loan is discharged, whichever date is applicable.

Mr. Cooper, its affiliates, successors or its assigns or their officers, directors, agents, or employees, are neither liable nor responsible for, or make any representation regarding the products or services offered on any enclosed inserts.



---

## CHANGE OF ADDRESS OR TELEPHONE NUMBER

CHECK THE APPROPRIATE BOX:    ☐ MAILING ADDRESS    ☐ TELEPHONE NUMBER    LOAN #: _____

| | |
|---|---|
| Borrower's Name: _____ | Co-Borrower's Name: _____ |
| Borrower's New Address: _____ | Co-Borrower's New Address: _____ |
| _____ | _____ |
| _____ | _____ |

| Authorized Borrower's Number(s): | | Authorized Co-Borrower's Number(s): | |
|---|---|---|---|
| Home: ( ____ ) _____ | Mobile: Yes  No | Home: ( ____ ) _____ | Mobile: Yes  No |
| Work: ( ____ ) _____ Ext: ___ | Mobile: Yes  No | Work: ( ____ ) _____ Ext: ___ | Mobile: Yes  No |
| Other: ( ____ ) _____ | Mobile: Yes  No | Other: ( ____ ) _____ | Mobile: Yes  No |
| Signature Required: _____ | | Signature Required: _____ | |

I consent to being contacted by Mr. Cooper at any telephone number I have provided. This includes, but is not limited to, calls from your dialing system to my cellular or mobile telephone.



# Exhibit F

**Relevant Letters between Borrower and Servicer**

*Carolynn E Wood*

Carolynn E. Wood, Plaintiff (Pro Se)

**Carolynn E. Wood**
491 White Plains Road
Anniston, AL 36207
(982)925-8031
carolynn.e.c.wood@gmail.com

June 3, 2025

Mr. Cooper
Loss Mitigation Dept.

(submitted via Insuranceclaimcheck.com)

SUBJECT: Request for Additional Release of Funds
RE: Loan Number: 692141328

1.      The purpose of this letter is to respond to your recent letter which stated that we had not made any progress in our efforts to rebuild our garage. Your letter threatened to apply the insurance funds to our mortgage balance. You do not have the authority to make any such transfer. BUT you DO need to do is release additional funding of at least $30,000 in order for the contractors to begin using the supplies that they have purchased to begin work.

2.      **HISTORY:** Nine months ago we lost our garage to a devastating fire. Insurance covered the garage. Insurance did not cover the additional damage and demolition that had to be done to the swimming pool, the privacy fence and the large two-tiered deck. As we have previously shown with receipts, the additional demolition and haul-off of all of those assets was paid for out of pocket (approx.. $12,000) I won't belabor all of those details again since it was already covered in previous correspondence.

3.      **NEW REPORT** This morning, a lengthy call with Alexis allowed me to provide an extensive update to our situation. The most important "take-away" from the conversation should be this – we are not only maintaining the property, but we have continued to spend our personal funds to protect the property's value, and Mr. Cooper's investment.

   a. **FLOODED KITCHEN** – personal funds to renovate - $7,000

   On March 3, 2025 it was discovered that the dishwasher tubing had been leaking and water had been running underneath the numerous layers of vinyl flooring which was covered by hardwood flooring, so it was not immediately noticed.

   b. Removal of the floor required removal of all of the cabinets and appliances. – See Alabama Damage Specialists invoice and cleared check.

*Ex. F pg. 1*

(When the floor was demolished an open well was revealed.

### c. ELECTRICAL SYSTEM UPGRADE REQUIRED DUE TO OLD WIRING AND OVERLOADED PANEL BOX - $9,000

Electric Plus, Inc. of Heflin, AL has secured financing for this project from Alabama Power (see attached contract/loan DocuSign)

The cabinets taken out of the kitchen have been replaced with an entire new kitchen (see attached receipts from IKEA)

4.      As I mentioned to Alexis, the reason I am bringing the above newly presented issues is in order to prove to you, Mr. Cooper that we are NOT a risk if you release the funds necessary to rebuild. To the contrary, we are doing everything in our power to maintain the property, protect the investment and at some point get to a place where we can enjoy our home again. As of right now, we don't enjoy it at all.

5.      There is nothing new here that an inspection will reveal. I cannot order an inspection of "nothing to see." The $29,000 worth of supplies cannot be delivered until Mr. Cooper provides the funds needed to move forward.

6.      I specifically want to express my appreciation to Alexis for her support, and compassion as I shared with her my struggle with suicidal ideations. I admitted to her that my recent calls to the veterans' hotline encouraged me to call Mr. Cooper and be open and honest about how severely draining this struggle with Mr. Cooper has been and still is. Honestly, and as I told Alexis, I have frequently called the hotline because I do not want to take that potential last step to end my frustrations. Alexis was kind and very concerned. Please do not scold her because she shared something with me on a recorded line. What she said was cherished and meant a lot to me.

7.      At this time, I hereby respectfully request that you release $30,000 immediately to allow further movement on this way past due rebuild.


Thank you,

Carolynn E. Wood

Attached:

1. Alabama Damage Specialists Invoice
2. Cleared checks to ADS (USAA website is down at this time – I will upload these 2 checks as soon as possible)
3. DocuSign contract for Electrical Work
4. IKEA Receipt for cabinets

*Ex. F pg. 2*

**Carolynn E. Wood**
491 White Plains Road
Anniston, AL 36207
(982)925-8031
carolynn.e.c.wood@gmail.com

June 27, 2025

Mr. Cooper                              (submitted via Insuranceclaimcheck.com)
Loss Mitigation Dept.

SUBJECT: Second Request for Additional Release of Funds
RE: Loan Number: 692141328

1.      The purpose of this letter is to respectfully request you release the insurance funds we asked for in our June 3, 2025 letter where we asked you to release additional funding of at least $30,000 in order for the contractors to begin using the supplies that they have purchased to begin work.

3.      We have heard nothing from you regarding the June 3 letter.

2.      **NEW REPORT** We have now replaced the electrical system that supplies the garage and again, we have paid out-of-pocket for this.

3..      At this time, I hereby respectfully request that you release $30,000 in order to allow further movement on this way past due garage rebuild.


Thank you,

*Carolynn E. Wood*

Carolynn E. Wood


Attached: Electric Plus paid invoice for $9,089.00


Copies Furnished: Alabama Damage Specialists
                             Alabama Banking Commission

*Ex. F. pg. 3*

*mr.*
# cooper®

CHANGING THE FACE OF HOME LOANS
PO Box 6501
Springfield, OH 45501

**OUR INFO**
**ONLINE**
www.mrcooper.com

TOMMY WOOD
CAROLYNN WOOD
491 WHITE PLAINS RD
ANNISTON, AL 36207

July 14, 2025

**YOUR INFO**
**LOAN NUMBER:** 0692141328
**PROPERTY ADDRESS:**
491 WHITE PLAINS RD
ANNISTON, AL 36207

Dear TOMMY WOOD and CAROLYNN WOOD,

In reviewing your recent insurance claim, Mr. Cooper shows there have been no updates from you in the past 45 days on the status of the repairs to your property.

As of the date of this letter, your claim has not been successfully completed.

As part of the terms of your claim, you are required to complete all repairs listed on the Adjuster's Worksheet and request an inspection of those repairs. Failure to comply with completing an inspection may cause you to become ineligible for this expedited claims process in the future.

**\*\*\*If you receive additional claim funds, your claim classification may change\*\*\***

Please request an inspection by calling 866-825-9302. After submitting your request, an inspection company will contact you to schedule your inspection. When requesting an inspection, you have (2) options, you may choose to have an inspector come to your home for a cost up to $35.00, or you may be eligible to complete a virtual inspection at your convenience for $54.00. The inspection fee will be charged as an advance on your mortgage and appear on your monthly statement.

If funds exceed the outstanding account balance or the damage has been determined to be a total loss, you can request to have the insurance proceeds applied to the account. The request must be in writing and interest, fees and other charges will continue to accrue on the account until we have received both the insurance proceeds and your written approval to apply the funds to the account. In the event of extreme damage to the property or a total loss, please be aware that Mr. Cooper has the right to apply the insurance proceeds to the account if repair of the property is not economically feasible.



Mr. Cooper is a brand name for Nationstar Mortgage LLC. Nationstar Mortgage LLC is doing business as Nationstar Mortgage LLC d/b/a Mr. Cooper. Mr. Cooper is a registered service mark of Nationstar Mortgage LLC. All rights reserved.

If you are a successor in interest (received the property from a relative through death, devise, or divorce, and you are not a borrower on the loan) that has not assumed, or otherwise become obligated on the debt, this communication is for informational purposes only and is not an attempt to collect a debt from you personally.



Ex F pg 4                    C2 LD949-0924



**mr. cooper**

CHANGING THE FACE OF HOME LOANS



If you have any questions, please contact our Customer Service Department at 866-825-9302. Our hours of operation are Monday through Thursday from 8 a.m. to 9 p.m. (ET), Friday from 8 a.m. to 7 p.m. (ET) and Saturday from 9 a.m. to 3 p.m. (ET).

Sincerely,

Mr. Cooper
Loss Drafts Department

*Ex F pg. 5*

**Carolynn E. Wood**
491 White Plains Road
Anniston, AL 36207
(982)925-8031
carolynn.e.c.wood@gmail.com

July 23, 2025

Mr. Cooper                    (via US Mail certified:                    )
Loss Mitigation Dept.

SUBJECT: Response to your July 16, 2025 Letter and **Third** Request for Release of Funds

RE:  Loan Number: 692141328

1.      The purpose of this letter is to respond to your July 16, 2025 letter which stated that we had not made any progress in our efforts to rebuild our garage. Your letter indicates that uploading documents and documentation via the Insurancecheck.com website is ineffective and therefore, I am mailing this through the US Mail.

2.      For your reference, please find enclosed the previous letters we have uploaded via the insurancecheck.com website which perhaps you have not seen.

3.      We have now paid over $9,000 out of pocket for the electrical service to be replaced so that the work can be done on the garage. (See attached copy of receipt to Electric +)

4.      There is nothing new here that an inspection will reveal. I cannot order an inspection of "nothing to see." The $26,330 worth of supplies cannot be delivered until Mr. Cooper provides the funds needed to move forward.

5.      At this time, I hereby respectfully request that you release $30,000 immediately to allow further movement on this way past due rebuild.


Thank you,


Carolynn E. Wood

CC: Cody Belyeu, Alabama Damage Specialists
CC: Arlene Baldwin, Alabama Banking Commission

Ex. F. pg. 6

**Carolynn E. Wood**
491 White Plains Road
Anniston, AL 36207
(982)925-8031
carolynn.e.c.wood@gmail.com

August 15, 2025

Mr. Cooper                              (submitted via Insuranceclaimcheck.com)
Loss Mitigation Dept.

SUBJECT: Third Request for Additional Release of Funds
RE:  Loan Number: 692141328

**Claim Tracking Number: 12394723**

1.     The purpose of this letter is to respectfully request you release the insurance funds we asked for in our June 3, 2025 letter where we asked you to release additional funding of at least $30,000 in order for the contractors to begin using the supplies that they have purchased to begin work.

2.     We have uploaded the paid invoices covering $9,089 for electrical repair and rewiring required before the rebuild.

3.     **NEW REPORT**  We have now had to install a $4,500 shed to keep tools and machinery safe from the elements. We have also had to purchase a used cargo $3,500 trailer to protect our motorcycle equipment. These purchases are considered "damages" because they would not have been necessary if we had a garage already rebuilt by now.

4.     We are requesting an inspection and we will show the inspector the shed and the cargo trailer and proof of those purchases, title, registration, etc.

5.     At this time, I hereby respectfully request that you release $30,000 in order to allow further movement on this way past due garage rebuild.


Thank you,

*Carolynn E. Wood*

Carolynn E. Wood


Copies Furnished:  Alabama Damage Specialists
                   Alabama Banking Commission

Ex. F Pg. 7

# Exhibit G

**Servicer Transfer Notice (Effective Oct 20 2025)**

Notice of transfer of servicing received from Mr. Cooper indicating imminent transfer despite active dispute.

*Carolynn E Wood*

Carolynn E. Wood, Plaintiff (Pro Se)



8950 Cypress Waters Blvd.
Coppell, TX 75019

CHANGING THE FACE OF HOME LOANS

**OUR INFO**
**ONLINE**
www.mrcooper.com

TOMMY WOOD
CAROLYNN WOOD
491 WHITE PLAINS RD
ANNISTON, AL 36207

10/1/2025

**YOUR INFO**
**LOAN NUMBER:** 0692141328
**PROPERTY ADDRESS:**
491 WHITE PLAINS RD
ANNISTON, AL 36207

Dear TOMMY WOOD and CAROLYNN WOOD:

The servicing of your mortgage loan, that is, the right to collect payments from you, is being transferred from Mr. Cooper to PHH Mortgage Services, effective 10/21/2025.

This transfer does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan such as where to send your payments or make inquiries related to the mortgage loan.

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing.

Your present servicer is Mr. Cooper. If you have any questions relating to the transfer of servicing, please do not hesitate to contact our Customer Service Department at 888-480-2432 or via mail at the address listed above. Our hours of operation are Monday through Thursday from 7 a.m. to 8 p.m. (CT), Friday from 7 a.m. to 7 p.m. (CT) and Saturday from 8 a.m. to 12 p.m. (CT).

**Your new Servicer will be PHH Mortgage Services and your new loan number will be 7913207176. If you have any questions relating to the transfer of servicing to your new servicer, you may call the Customer Service Department of your new servicer at 1-833-632-4697 between the hours of 8:00am to 9:00pm (EST), Monday through Friday and 8:00am to 5:00pm (EST), Saturday.**

Mr. Cooper is a brand name for Nationstar Mortgage LLC. Nationstar Mortgage LLC is doing business as Nationstar Mortgage LLC d/b/a Mr. Cooper. Mr. Cooper is a registered service mark of Nationstar Mortgage LLC. All rights reserved.

If you are a successor in interest (received the property from a relative through death, devise, or divorce, and you are not a borrower on the loan) that has not assumed, or otherwise become obligated on the debt, this communication is for informational purposes only and is not an attempt to collect a debt from you personally.



Exhibit G, Page 1 of 3
Wood v. Nationstar d/b/a Mr. Cooper, *et al*

*mr.*
**cooper**
CHANGING THE FACE OF HOME LOANS

Please note the following important address information for **PHH Mortgage Services:**

Correspondence Address:
PHH Mortgage Services
PO Box 24738
West Palm Beach, FL 33416

Payment Address:
PHH Mortgage Services
PO Box 660093
Dallas, TX 75266-0093

**The date that your present servicer will stop accepting payments from you is 10/20/2025. The date that your new servicer will start accepting payments from you is 10/21/2025. Send all payments due on or after that date to your new servicer.**

The transfer of the servicing of the mortgage loan will require you to contact all hazard and flood insurers to add PHH Mortgage Services as loss payee at the below address. For escrow accounts, insurers need to send billing statements/invoices to the PHH Mortgage Services Loss Payee. **Be sure to provide PHH Mortgage Services with a copy of the Notice to the Insurance Provider.**

PHH Mortgage Services
Its Successors and/or assigns as their interest may appear
Attn: Insurance Department
PO Box 5954
Springfield, OH 45501-5954

If your loan has optional insurance, your mortgage life insurance, disability insurance and/or other optional products will be discontinued at the time of transfer. If you wish to maintain coverage, you must contact your provider about direct billing. If your loan does not have optional products, and you wish to obtain them, you will need to contact your new service provider.

If you are making payments to the present servicer by means of automatic deduction, this service will not continue with the new servicer, and any payments currently scheduled to draft after the effective transfer date 10/21/2025, will be cancelled. To set up automatic deduction with your new servicer, please contact their customer service department.

If you authorize your bank or credit union online bill payment system to automatically pay your mortgage payment, you will need to tell your bank or credit union to make those payments to the new servicer.

If you are currently participating in, or being considered for, a foreclosure avoidance program or loan modification program, we will be transferring any supporting documentation you may have submitted to us to your new servicer. Until the transfer date, you should continue to make your payments (i.e., trial payments, if attempting to qualify for a modification) to us. After transfer, you should make all payments to **PHH Mortgage Services** until such time that you are provided additional direction. Unless you have received a decision from us regarding qualification for these programs, decisions regarding qualification for these programs will be made by PHH Mortgage Services. If you have received a decision from us, PHH Mortgage Services will be advised of that decision and will complete the processing of your workout, in accordance with that decision.

Exhibit G Page 2 of 3

Wood v. Nationstar, d/b/a Mr. Cooper, *et al*



CHANGING THE FACE OF HOME LOANS

Under federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late and a late fee may not be imposed on you.

Sincerely,

Mr. Cooper

# Exhibit H

## Complaints to Alabama State Banking Commission and H.U.D.

Carolynn E. Wood, Plaintiff (Pro Se)





### STATE OF ALABAMA
# STATE BANKING DEPARTMENT

## COMPLAINT FORM
### (Pleas type or print in black ink)

Date: ___7 March 2025___

**NOTE:** For Complaints regarding **State Chartered Banks** please complete this form and mail it to:

State of Alabama Banking Department
P.O.Box 4600
Montgomery, AL 36103-4600
Telephone: (334) 242-3452  Fax: (334) 242-3500

For Complaints regarding all other Financial Institutions please complete this form and mail it to:

State of Alabama Banking Department
ATTN: Arlene Baldwin
P.O. Box 4600
Montgomery, AL 36103-4600
Telephone: (334) 242-3452  Fax: (334) 353-5961

---

**Firm(s) and/or Person(s) Complaint is against:**

Company Name: ___NationsStar d/b/a Mr. Cooper Mortgage___

Please Check One: | |Bank | |Finance Company |✔|Mortgage Broker | |Pawn Shop/Title Pawn
| |Check Casher | |Other(Please Identify) _____

Address: ___Lake Vista 4, 800 State Highway 121 Bypass,___

City: ___Lewisville,___    State: ___TX___    Zip: ___75067___

Who did you deal with? ___Dozens of operators / we have a third-party liaison also involved (Alabama Damage Specialists)___

Company's Phone Number: ___(888) 480-2432___

Your Account Name: ___Tommy and Carolynn Wood___    Your Account Number: ___0692141328___

Your Name: Mr., Ms., Or Mrs.    ___Carolynn___    ___E___    ___Wood___
(circle one)    First    MI    Last

Address: ___491 White Plains Road___

City: ___Anniston___    State: ___AL___    Zip: ___36207___

Home Phone Number: _____    Work Phone Number: ___(928) 925-8031___

1. Have you contacted an attorney?    ☐ Yes    ☑ No

2. If yes please give attorney's name, address & phone number: _____

*Ex. H pg. 1*

\* If you answered yes to Question #1 above, continue completing this form. However, please be aware that
the State Banking Department may be unable to act while there is pending litigation.

3. Would you be willing to testify, under oath, regarding the matters set forth in this complaint?

   [ ✔ ]  Yes          [   ]  No

4. Have you complained to the firm(s) and/or person(s) involved?

   [ ✔ ]  Yes          [   ]  No

5. If yes to Question #4 above, to whom did you complain to, and what was their response?
   "We will not disburse any funds until you pass inspection." We have had 3 inspections, but they do not explain what is
   expected of us to "PASS"

6. Did you sign any documents?          [ ✔ ]  Yes          [   ]  No

7. Place of Transaction:          it was a check written to us, we endorsed it and mailed it to Mr. Cooper

8. Date of Transaction: appr. mid-October 2024     Witness to Transaction:    Carolynn and Tommy Wood

9. Other Government Agencies Contacted:    CFPB; H.U.D.

10. Briefly describe your complaint. Include specific dates. If the company/person involved is licensed with
    the State Banking Department, a copy of this form will be given to the company/person for response or
    action. If the company/person involved is not licensed with the State Banking Department, then we will
    forward your information to the proper regulatory authority. Please include a copy of all relevant documents
    with this complaint form. DO NOT SEND YOUR ORIGINAL DOCUMENTS.

    Our 5-bay garage burned to the ground on 5 September 2024. Also destroyed was a 15'x40' deck, 10' privacy fence,
    mechanical room for the inground swimming pool, and therefore the pool itself. Our insurance company issued $55,000 to
    cover our contents and another check for approx. $110,000 for replacement of the structure (garage only) The check for the
    rebuild was made out to us and Mr. Cooper. We signed the check and mailed it in. We were issued $10,000. The remaining
    amount has been denied for 5 months now.

    Alabama Damage Specialists has had third-party authorization to speak to them on our behalf and they keep getting the
    run-around as well. ADS has copies of our receipts showing we have paid approx. $30,000 to demolish, haul off debris, fill in
    the 85,000 gallon pool and fill it in

    The CFPB was no help and H.U.D.; (Christian Newsome) keeps putting us off stating "it's still on my supervisor's desk"

    (Attach additional sheets if necessary)

11. What action by the company/person involved would resolve this matter to your satisfaction?

    \* Provide the funds to the contractor so that they can finally start to rebuild.
    \* Remit the amount of interest earned on the funds they have held for the past 5 months
    \* Acknowledge that they (Mr. Cooper) refuses to accept our monthly mortgage payments until we remit $38,000 due after our
    Covid forbearance. \* Acknowledge that insurance proceeds have nothing to do with Loan Modification requirements.

By signing below, I verify, under penalty of law, that everything contained in the foregoing complaint is true
and correct to the best of my knowledge and belief. I also give the State Banking Department of Alabama
the right to forward this information to the proper regulatory authority if the company/person involved is not
licensed with the Department.

_Carolyn E Wood_          7 March 2025
Signature of Complainant          Date

| For Departmental Use Only: | |
|---|---|
| Date Received: | |
| Date Settled: | |
| Date Transferred: | |
| Actions Taken by Dept. | |
| Consumer Services Specialist: | |

Ex. H pg. 2

 Gmail

Carolynn Wood <carolynn.e.c.wood@gmail.com>

## 790999 / - Wood, Tommy and Carolynn v Mr. Cooper Mortgage Company

2 messages

**Newsome, Christian D** <Christian.D.Newsome@hud.gov>
To: "carolynn.e.c.wood@gmail.com" <carolynn.e.c.wood@gmail.com>

Fri, Nov 15, 2024 at 1:49 PM

Carolynn and Tommy Wood

491 White Plains Road

Anniston, AL 36207

Dear Complainant:

Subject:   Inquiry Number: 790999

Equal Opportunity Specialist: Christian Newsome

Email Address: Christian.D.Newsome@hud.gov

**Information needed by close of business (4:30 p.m. EST) on:**

**November 20, 2024**

      This letter acknowledges receipt of your correspondence (inquiry) regarding a possible violation(s) of federal fair housing laws. Although you have provided us with some information about your inquiry, we need more information to determine whether this office has jurisdiction under the law to refer your inquiry for investigation. As a result, we have not filed a complaint, nor have we started an investigation.

      The Office of Fair Housing and Equal Opportunity administratively enforces federal statutes, executive orders and regulations designed to afford all persons an equal opportunity to live in housing of their choice and to participate in HUD-assisted programs and activities without regard to <u>**race, color, national origin, sex (including gender identity and sexual orientation), religion, familial status (families with children under 18), or disability**</u>.

      To see examples of the types of discriminatory housing practices FHEO can investigate, please go to: Examples of Housing Discrimination.

      The contact information for the Equal Opportunity Specialist (EOS) assigned to your inquiry is listed above. Please contact the EOS to provide the information we need. If he/she is unavailable at the time of your call, please leave a message which includes a daytime telephone number where you may be reached. If

*Ex. H pg. 3*

possible, please provide the information requested via email. Do not mail correspondence to our office, as we recently relocated and are unable to accept mail delivery.

**From the information you submitted, you stated:** You are being denied a reasonable accommodation to make partial payments on your mortgage with Mr. Cooper Mortgage Company. **We need the following additional information:**

• The complete name, address, email address (if known) and phone number of the person or persons that you feel are discriminating against you.

• Provide a copy of the forbearance agreement signed in May 2023.

• Provide a copy of the accommodation request from July 11, 2024.

• Provide the most recent date that you applied for the VA Repayment Plan.

• Provide the name of the person that informed you that you were denied from the VA Repayment Plan because your loan delinquency exceeds 12 months. Additionally, provide the date of denial. If you received the denial in writing, please provide a copy of the denial

Eviction/Foreclosure is a legal matter involving your rights under your lease agreement and state law. We recommend that you consult with legal aid or a private attorney to ascertain any right of action you may have regarding an eviction under state or local laws. Legal Aid of Alabama: https://portal.hud.gov/hudportal/HUD?src=/states/alabama/homeownership/legalaid

**In order to complete the assessment, please provide the information listed above as soon as possible, but not later than 5 days from the date of this letter, or by close of business on <u>November 20, 2024</u>. If you do not provide the information by the due date, we will take no further action, and your inquiry will be closed. However, the inquiry can be re-opened if you provide all of the requested information as long as it is within the statute of limitations\* period. Please note, at the assessment stage it is only necessary to respond to the specific questions and documents requested. Do not submit additional information unless it is specifically requested.**

For your convenience, I am including a general explanation about the complaint review process and what you can expect after our initial review is completed. Because this office receives hundreds of complaints every month from the entire Southeastern United States, please be advised that the entire process of assessment and acceptance may take several weeks. Your patience and cooperation are appreciated. You may reach the assigned EOS by telephone at

678-732-2277.

EX H  Pg. 4

* Under the federal Fair Housing Act, you have one year from the last date of discrimination if you file with this office, and two years if you file your own action in a state or federal court. Under other federal fair housing laws, the statute of limitation is 180 days.

Sincerely,

*Christian Newsome*

For Darren K. Holbrook, Intake Branch Chief

Region IV Office of Fair Housing and Equal Opportunity

Enclosure

---

**Carolynn Wood** <carolynn.e.c.wood@gmail.com>                    Sun, Nov 24, 2024 at 7:27 PM
To: "Newsome, Christian D" <Christian.D.Newsome@hud.gov>

1. You asked for the complete name, address, email address (if known) and phone number of the person or persons that you feel are discriminating against us.

Nationstar d/b/a Mr. Cooper Mortgage Co.

no email - only uploaded documents via their portal whenever a workout program is in progress.

(888) 480-2432.

2. You asked for **a copy of the forbearance agreement signed in May 2023**.

a. The May 2023 action was merely an extension of the original Pandemic Forbearance. The full letter of 7 18 2023 is attached, here is an excerpt of the relevant information

Dear TOMMY WOOD and CAROLYNN WOOD: As you requested, your Pandemic Forbearance Plan has been extended for an additional period of 3 months. Beginning with the 08/01/2023 payment, **your monthly mortgage payment of $1,797.81 will continue to be paused.** You do not need to make a mortgage payment for 3 months. The same terms and conditions that were detailed in your initial Pandemic Forbearance Plan letter will remain in effect during the period of the extension.

*Ex H pg. 5*

b. The opposite of "your monthly mortgage payment will be paused" is "Your monthly mortgage payment will resume."

3. You asked for **a copy of the accommodation request from July 11, 2024.** I will need an extra day to get that uploaded to you. For now, here is an excerpt from the intake I sent in to HUD:

We sent the following letter on July 11, 2024:

Mr. Cooper Request for Information

Re: Account #0692141328

1. Your letter dated 7/11/2024 informed us that we are going to lose our home which is causing extreme emotional distress.

2. We are therefore now writing to ask for Reasonable Accommodation under the Fair Housing Act. Our request is that, due to disability of both signers on the loan for our home and because both signers for this home are US military veterans, and because Mr. Cooper has only allowed full delinquent payments, not partial payments, and because due to disability we cannot relocate,

a. Mr. Cooper should accept monthly mortgage payments of $1711, and partial payments of $900/per month toward the total arrearage amounts, and

b. Halt any motions toward foreclosure until an agreement can be reached.

3. We are also reaching out regarding the reason given for your denial of the VA Repayment Plan which states "Denial Reason: Loan Delinquency Exceeds 12 months We are unable to approve you for this solution because the arrears on the loan exceed 12 months' worth of mortgage payments."

4. The time period of the arrears reaching 12 months is your fault, not ours. Because you would not accept any amount of money that was short of the total amount due, we only reached the 12 month-mark by what should be considered by the VA as "constructive eviction."

5. Mr. Cooper has forced us to have no rights to our own property because you refused to allow us to make partial payments. We had offered to do so, but you declined.

6. Constructive eviction is against the law and there should be some way for veterans like us to be protected from harmful corporate greed that allows an amount of time to expire all the while refusing to accept any payments just so you can steal our home from us.

Ex H pg. 6

7. We are asking for a reasonable accommodation in that you accept our partial payments so that two disabled veterans are not displaced and become homeless because of your corporate greed. (original letters were signed and sent via Priority Mail)

4. You asked us to **provide the most recent date that we applied for the VA Repayment Plan.** We are not allowed to apply for VA Repayment Plans, that is only done by the servicer (Mr. Cooper)

5. You asked us to **provide the name of the person that informed us that we were denied from the VA Repayment Plan because your loan delinquency exceeds 12 months.**

    a, It was in letter format and I do have the hard copy. Because it has been removed from the online website where all of our other letters are located, please allow me an extra day to get that particular letter from Mr. Cooper, dated May 3, 2024 scanned and uploaded - I do not have it with me where I am at the moment.

6. You asked us to **provide the date of denial. If you received the denial in writing**, please provide a copy of the denial.

    a. This may seem simple. It is just not easy to explain. I will nevertheless attempt to do so once again. In April 2024 after numerous modification processes, we were offered a traditional loan modification which would raise our interest rate to almost double (over 7%) We could not afford it, and we let Mr. Cooper know in writing and on the phone.

    b. Then Mr. Cooper even included that very fact in the letter noted above (May 3, 2024) and that was where the gross error occurred on Mr. Cooper's part. The letter said basically that they had done the math and despite our concerns, we COULD afford the new higher monthly payments.

    c. The error was made on the second page of that letter where it showed exactly what we had said all along - that we would have a negative disposable income were we to have entered into their proposed modification.

    d. When I get back to my PC on Tuesday 11/26/2024 which is at home and I can get that letter uploaded to you, hopefully you will see what I mean.

7. What is completely lacking here is a focus on the fact that we asked for an accommodation under the Fair Housing Act due to the severe and extreme exacerbations of our disabilities being caused by and due to the refusal on the mortgage company's part to allow us to make monthly payments.

Ex. H pg. 7

a. There has been no response as to how it would cause an unnecessary burden or unreasonable cost to the mortgage company for them to allow us to make payments.

b. To provide no response is the same as a denial; and it is a fact that a denial can be considered discriminatory on its face if no justification or express burden has been provided.

c. period.

8. The latest cause of harm: ongoing.

9. Damages are already starting:

a. We have now been dropped by our Homeowner's Insurance Company.

b. There is no garage where a 5-car garage used to stand. There is no longer a swimming pool, deck, fence, greenhouse, or barn. Not that they were covered under insurance, but how can one insure property when half of it is missing?

Again, please extend the due date on your request to 11/26/2024.

Staff Sergeant Carolynn E. Wood, US Army (Ret.)

[Quoted text hidden]

📄 **7 18 2023.pdf**
104K

*Ex H Pg. 8*

 **Gmail**

Carolynn Wood <carolynn.e.c.wood@gmail.com>

**Update - 491 White Plains Road, Anniston, Al**
1 message

**Carolynn Wood** <carolynn.e.c.wood@gmail.com>
To: "Newsome, Christian D" <Christian.D.Newsome@hud.gov>

Thank you for your call last evening.

Here is where we stand at the moment:
Our property (5-car garage) destroyed by fire on September 5, 2024. Insurance proceeds of approx. $80,000 still being held by mortgage company. Insura

We were provided $10,000 on October 22, 2024, but we then paid over $24,000 out of pocket to have the demolished wreckage hauled away to include th
the privacy fence, etc -- we also paid for the rewiring (underground) of the electrical system in order to rebuild the garage.

March 24, 2025 we were provided with approx. $28k to start the rebuild. We paid the contractor all of that money back in April. They cannot deliver the sup
$10,000 but that money is still being held by the mortgage company.

There have been 2 inspections that report back that we are less than 25% complete - so we are not able to receive further disbursements. Our argument h
away?"

Who determines how much percentage of "done" allows more funding?

We have been without a garage almost a year. We have had to get a shed, and a motorcycle trailer just to protect our property, this was not necessary exc
enjoy our property.

Tommy is 79 years old and I am 62. We are both military veterans.

Carolynn Wood

Ex H pg. 9

 Gmail

**Carolynn Wood <carolynn.e.c.wood@gmail.com>**

## Still waiting for your call
1 message

**Carolynn Wood** <carolynn.e.c.wood@gmail.com>                                      Fri, Sep 5, 2025 at 11:04 AM
To: "Newsome, Christian D" <Christian.D.Newsome@hud.gov>

You said you would call

Carolynn Wood

Ex H pg10

# Exhibit I

## Unreasonable Proposed Loan Modification

Contradictory Letter Proposing a Loan Modification, yet Page 2 shows that Plaintiff is not qualified. Plaintiff's response Letter

*Carolynn E Wood*

Carolynn E. Wood, Plaintiff (Pro Se)

MR. and MRS. TOMMY W. (CAROLYNN) WOOD
491 White Plains Road, Anniston, AL 36207
(928)925-8031

15 April 2024

Mr. Cooper Request for Information
PO Box 619098
Dallas, TX 75261-9741

Re:  Account #0692141328

SUBJECT:  APPEAL OF MR COOPER PROPOSED LOAN MODIFICATION

### RESPONSE TO PROPOSED MODIFICATION

1.      We are in receipt of the Loan Modification Proposal, dated 10 April 2024. We are writing to state that we cannot financially afford your proposal. It almost doubles our interest rate, does not add any additional time to the loan to spread out the deficiency and does not create less hindrances, it causes more.

### BACKGROUND

2.      On January 10, 2022 we closed our home with a 3.6% interest rate and a monthly P.I.T.I. of approximately $1700. Due to the Covid 19 Pandemic, we were forced to ask for a forbearance. After 6 months, we believed we would be okay.

3.      In November 2022 our loan was modified, increasing our interest rate by 1%. Once again we were drastically affected by the pandemic with more family deaths, and we were forced to return to forbearance in May 2023.

### REQUEST FOR MORE OPTIONS

4.      We don't want to relocate, nor can we afford to – physically, or financially. We do not want to Short Sell or effect a Deed in Lieu.

5.      We *are* able to go back to our original interest rate (3.6%) and pay the deficit over 12-18 months. Or stay at the current interest rate (4.6%) and pay the deficit over 36 months.

6.      Please provide the Statute, Federal Code, or Regulation you are using that denies us any help from the VA so that we can be informed about what programs there are and what debt-to-income ratios are required.

### SUMMARY

7.      But for the Pandemic, we would not have been in this predicament. Our hardships were not caused by our own doing. We do not find the proposed loan modification to be fair or in our best interest.

Sincerely,

Tommy W. Wood                    Carolynn Wood

Ex I  pg. 1

**mr.**
**cooper®** P.O. Box 619098
Dallas, TX 75261-9741

CHANGING THE FACE OF HOME LOANS

**OUR INFO**
**ONLINE**
www.mrcooper.com

Tommy W. Wood
3 3 SP 0.680 TY P0 AUTO   571749.1-NNNN-39568864
491 White Plains Rd
Anniston, AL 36207

May 3, 2024

**ACCOUNT INFO**
**LOAN NUMBER:** 0692141328
**CASE NUMBER:** 0009278128
**PROPERTY ADDRESS:**
491 White Plains Rd
Anniston, AL 36207
**MORTGAGORS:**
Tommy W. Wood
Carolynn E. Wood

Dear Tommy W. Wood:

We received your letter on April 25, 2024, and have put together this reply with information that we hope will alleviate your concerns. After an investigation, we are sharing with you what we found.

Our review of the loan confirms that the financial information that you provided supports the modification requirement. Your application was submitted to the investor and the investor approved the terms.

Traditional Modification Detail: To be eligible for this program, you must have a positive disposable income post modification.

Gross income: $11,566.2
Net Income: $9,252.96

Capped Unpaid Principal Balance: $310,677.55
Proposed rate: 7.375%
Amortization duration: 341
Proposed Principal & Interest: $2,179.08
Taxes: $0.00
Insurance: $217.39
Shortage: $21.74
Proposed Principal, Interest, Taxes & Insurance: $2,418.21

Miscellaneous Expenses: $1,371.00
Utilities: $1,103.00
Auto Insurance/ Gas: $535.00
Credit card: $175.00
Bank Finance Loans: $491.00

Student Loan: $446.34

Mr. Cooper is a brand name for Nationstar Mortgage LLC.  Nationstar Mortgage LLC is doing business as Nationstar Mortgage LLC d/b/a Mr. Cooper.  Mr. Cooper is a registered service mark of Nationstar Mortgage LLC.  All rights reserved.

If you are a successor in interest (received the property from a relative through death, devise, or divorce, and you are not a borrower on the loan) that has not assumed, or otherwise become obligated on the debt, this communication is for informational purposes only and is not an attempt to collect a debt from you personally.



EQUAL HOUSING
OPPORTUNITY

EX. I pg 2

*mr.*
## cooper™

CHANGING THE FACE OF HOME LOANS

Car Payment: $1,396.00
Additional monthly debt: $5,517.34

Disposable income: negative $1,317.41

Our preference is to help homeowners keep their property, make regular payments, and build equity. However, we are not always able to provide the assistance being requested. Mr. Cooper is required to complete a review in accordance with program guidelines, and any decision that has been rendered has been completed under investor and program guidelines. Due to these guidelines, we are unable to negotiate the terms of any modification program.

To keep the current rate, you will have to reinstate the loan.

- Account Reinstatement: One-time lump sum payment to restore the mortgage loan to its original condition and resuming the original agreed terms

| RESPA RESPONSE TO NOTICE OF ERROR |
| --- |
| Under applicable federal law, we are required to inform you that after completing a reasonable investigation into the issues described above, it has been determined that no error occurred. You have the right to access the document we used in this investigation, and we have enclosed it. The document is:<br>   • Loss Mitigation Evaluation Notice |

If you have any questions, your Dedicated Loan Specialist is Blanca Mondragon who can be reached at 866.316.2432 or via mail at the address listed above. Our hours of operation are Monday through Thursday from 7 a.m. to 8 p.m. (CT), Friday from 7 a.m. to 7 p.m. (CT) and Saturday from 8 a.m. to 12 p.m. Visit us on the web at www.mrcooper.com for more information.

Sincerely,
Mr. Cooper
Customer Relations Specialist
PO Box 619098
Dallas, TX 75261-9741
Phone: 877-783-7480
Fax: 972-315-8637

Enclosure
By U.S. Standard Mail and By E-Mail to carolynn.e.c.wood@gmail.com

Are you experiencing a financial hardship? Our local non-profit partners can help with financial counseling and other services. Please visit these websites for assistance:

- Hud.gov
- Neighborworks.org

*Ex I pg. 3*

571749.1-NNNN-480417535-3.2

MR. and MRS. TOMMY W. (CAROLYNN) WOOD
491 White Plains Road, Anniston, AL 36207
(928)925-8031

8 May 2024

Mr. Cooper Mortgage
Notice of Error / Request for Information
And Reconsideration
PO Box 619097
Dallas, TX 75261-0783

Re:  Account #0692141328

SUBJECT:  RESPONSE TO LOAN MODIFICATION

## ERROR #1 – Premature Modification

You wrote to us on April 10, 2024. Your letter required us to respond within 14 days.

We responded by letter 9 days later, which you received on 24 April 2024 – the 14th day.

in our letter, we stated in relevant part:

> "We are writing to state that we cannot financially afford your proposal. It almost doubles our interest rate, does not add any additional time to the loan to spread out the deficiency and does not create less hindrances, it causes more."

However, you did not even allow us to respond and on 22 April (the 12th day – 2 days before our due date to respond) you mailed out a Modification Packet without even asking us first.

## ERROR #2 – Information on Income and Expenses

2.      On January 10, 2022 we closed our home with a 3.625% interest rate and a monthly P.I.T.I. of approximately $1700. We were impacted by the pandemic and asked you for forbearance. After 6 months we thought we would be okay, so in November 2022 our loan was modified, increasing our interest rate by 1%. Once again we were drastically affected by the pandemic with more family deaths, and we were forced to return to forbearance in May 2023.

## ERROR #3 – No Response To Our Proposal to Repay the Arrears, and No Acceptance of Payments

Although Mr. Cooper has the VA's authority to work with us directly and without their evaluation of our financial stance, you have stated that we are not qualified for a tradition VA modification even though we have stated many times that we <u>can</u> afford our original plan, but you won't let us pay. We are financially fine, but the proposed modification is unreachable. It would be to our detriment to move forward on a plan that will increase our payments by approximately $600-700 (due to the increase in the interest rate from 4.625% to 7.375%)

5.      We *are* able to go back to our original interest rate (3.6%) and pay the deficit over 12-18 months. Or stay at the current interest rate (4.6%) and pay the deficit over 36 months.

*Ex I  pg. 4*

## REQUEST FOR MORE OPTIONS

4.      We don't want to relocate, nor can we afford to – physically, or financially. We do not want to Short Sell or effect a Deed in Lieu.

**ERROR #4 – No Continuity of Information Between What the VA says and What you Say**

6.      But for the Pandemic, we would not have been in this predicament. Our hardships were not caused by our own doing. We do not find the proposed loan modification to be fair or in our best interest.

Sincerely,

Tommy W. Wood                                    Carolynn Wood

EX I pg. 5

# Exhibit J

### Borrower Correspondence

Plaintiff's letters documenting emotional distress, mismanagement of funds, and request for accommodation.

Carolynn E. Wood, Plaintiff (Pro Se)

**Carolynn E. Wood**
491 White Plains Road
Anniston, AL 36207
(982)925-8031
carolynn.e.c.wood@gmail.com

June 3, 2025

Mr. Cooper                                    (submitted via Insuranceclaimcheck.com)
Loss Mitigation Dept.

SUBJECT: Request for Additional Release of Funds
RE: Loan Number: 692141328

1.      The purpose of this letter is to respond to your recent letter which stated that we had not made any progress in our efforts to rebuild our garage. Your letter threatened to apply the insurance funds to our mortgage balance. You do not have the authority to make any such transfer. BUT you DO need to do is release additional funding of at least $30,000 in order for the contractors to begin using the supplies that they have purchased to begin work.

2.      **HISTORY**: Nine months ago we lost our garage to a devastating fire. Insurance covered the garage. Insurance did not cover the additional damage and demolition that had to be done to the swimming pool, the privacy fence and the large two-tiered deck. As we have previously shown with receipts, the additional demolition and haul-off of all of those assets was paid for out of pocket (approx.. $12,000) I won't belabor all of those details again since it was already covered in previous correspondence.

3.      **NEW REPORT** This morning, a lengthy call with Alexis allowed me to provide an extensive update to our situation. The most important "take-away" from the conversation should be this – we are not only maintaining the property, but we have continued to spend our personal funds to protect the property's value, and Mr. Cooper's investment.

    a. **FLOODED KITCHEN** – personal funds to renovate - $7,000

    On March 3, 2025 it was discovered that the dishwasher tubing had been leaking and water had been running underneath the numerous layers of vinyl flooring which was covered by hardwood flooring, so it was not immediately noticed.

    b. Removal of the floor required removal of all of the cabinets and appliances. – See Alabama Damage Specialists invoice and cleared check.

*Ex J. pg 1*

(When the floor was demolished an open well was revealed.

### c. ELECTRICAL SYSTEM UPGRADE REQUIRED DUE TO OLD WIRING AND OVERLOADED PANEL BOX - $9,000

Electric Plus, Inc. of Heflin, AL has secured financing for this project from Alabama Power (see attached contract/loan DocuSign)

The cabinets taken out of the kitchen have been replaced with an entire new kitchen (see attached receipts from IKEA)

4.    As I mentioned to Alexis, the reason I am bringing the above newly presented issues is in order to prove to you, Mr. Cooper that we are NOT a risk if you release the funds necessary to rebuild. To the contrary, we are doing everything in our power to maintain the property, protect  the investment and at some point get to a place where we can enjoy our home again. As of right now, we don't enjoy it at all.

5.    There is nothing new here that an inspection will reveal. I cannot order an inspection of "nothing to see." The $29,000 worth of supplies cannot be delivered until Mr. Cooper provides the funds needed to move forward.

6.    I specifically want to express my appreciation to Alexis for her support, and compassion as I shared with her my struggle with suicidal ideations. I admitted to her that my recent calls to the veterans' hotline encouraged me to call Mr. Cooper and be open and honest about how severely draining this struggle with Mr. Cooper has been and still is. Honestly, and as I told Alexis, I have frequently called the hotline because I do not want to take that potential last step to end my frustrations. Alexis was kind and very concerned. Please do not scold her because she shared something with me on a recorded line. What she said was cherished and meant a lot to me.

7.    At this time, I hereby respectfully request that you release $30,000 immediately to allow further movement on this way past due rebuild.


Thank you,

Carolynn E. Wood

Attached:

1.  Alabama Damage Specialists Invoice
2.  Cleared checks to ADS (USAA website is down at this time – I will upload these 2 checks as soon as possible)
3.  DocuSign contract for Electrical Work
4.  IKEA Receipt for cabinets

EX J Pg. 2

# Exhibit K

## Photographic Evidence of Property and Loss

Photographs depicting the cabana apartment, garage, pool, and greenhouse destroyed by fire.

*Carolynn Ellwood*

Carolynn E. Wood, Plaintiff (Pro Se)

**The Cabana—$850/month**

Private entrance

Bathroom with shower

Living Room,

Kitchenette, microwave, icemaker and mini-fridge

Bedroom with Queen-size bed, desk and office chair, filing cabinet

Internet

Roku TV with Hulu

All utilities incl.

AC and electric

Fireplace w/ heater

Linens, kitchenware and storage

Use of pool

Gas grill








Ex K pg. 1



Part of 250-
foot privacy
fence

<———-

Greenhouse built in July 2023 from vintage windows





90% of all glass panes are cracked
or broken

Ex. K pg. 2









Ex K pg. 3



The Cabana

Living Room

The Cabana

Parking bay

—->



Wood

Shop

And

Bay for

our

truck

<—-



Private

entrance to

The Cabana

<———

Ex K pg. 4

# Exhibit L

## Servicer Correspondence Offering Repayment Options

Letters dated Oct 15 and Dec 2 2023 showing that repayment options were initially offered then revoked.

*Carolynn E Wood*

Carolynn E. Wood, Plaintiff (Pro Se)



10/15/2023



OUR INFO
**ONLINE**
www.mrcooper.com

YOUR INFO
**LOAN NUMBER**
0692141328

**PROPERTY ADDRESS**
491 WHITE PLAINS RD
ANNISTON, AL 36207

PO Box 619097
Dallas, TX 75261

TOMMY WAYNE WOOD
CAROLYNN ELIZABETH WOOD
491 WHITE PLAINS RD
ANNISTON, AL 36207

Dear TOMMY WOOD and CAROLYNN WOOD:

Enclosed please find a loss mitigation application which must be completed in full and returned to us in order for you to be evaluated for loss mitigation options. Please return the attached documents to us by 11/14/2023.

**The Loss Mitigation Application ("Application")**
The Application incorporates all necessary information required for us to evaluate you for assistance. The form must be signed, dated and returned. The following are the sections to be completed:

- Borrower and Co-Borrower Information
- Hardship Information – this section explains the circumstances that have or will make it difficult for you to stay up to date with your mortgage payments. There is no notary requirement and the loan can be either current or delinquent.
- Household Income and Expenses

Please read the Application carefully and note that some of the hardship and income options require that you submit additional documentation to us with your Application to verify the hardship/income.

The Application might direct you to provide tax return information to verify your income. If you already have a copy of your tax return information, you can submit a copy to us but if you do not have the requested information, you can request your documents online at https://www.irs.gov/individuals/get-transcript. Once you receive the tax return information from the IRS, you must provide it to us, as the IRS will not send it directly to us.

**Send Us the Information We Need to Help You**
Requesting help is the first step. Start by providing information and documentation to help us understand the challenges you are facing. To do this, follow the detailed instructions on the attached Homeowner Checklist to complete and submit your loss mitigation application to us.

**Successor in Interest**
If you are not already a borrower on the loan, but are a successor in interest to a borrower and have received ownership due to transfer, divorce or death, please complete the attached Assuming Party Questionnaire and send in all appropriate documents establishing your interest in the property.

In the event you are unable to retain your property and you are interested in pursuing a Short Sale or Deed In Lieu of foreclosure/Mortgage Release option, we have enclosed a Third-Party Authorization Form (for Short Sale) and a Statement of Information (for Deed In Lieu/Mortgage Release) for your convenience. **You are only required to return these items to us if you are pursuing one of these non-retention options. We can consider your application complete without these documents.**

Once we have received and evaluated your information, we will contact you regarding your options and next steps.

*Ex L Pg. 1*

Mr. Cooper is a brand name for Nationstar Mortgage LLC. Nationstar Mortgage LLC is doing business as Nationstar Mortgage LLC d/b/a Mr. Cooper. Mr. Cooper is a registered service mark of Nationstar Mortgage LLC. All rights reserved.
If you are a successor in interest (received the property from a relative through death, devise, or divorce, and you are not a borrower on the loan) that has not assumed, or otherwise become obligated on the debt, this communication is for informational purposes only and is not an attempt to collect a debt from you personally.



2-29

## Information on Avoiding Foreclosure

These options may be available to you depending on your hardship. There are options to help you stay in your home and bring your mortgage current, and options that allow you to leave your home while avoiding foreclosure. We can answer any questions you may have about these options, including the general eligibility requirements.

| OPTIONS TO STAY IN YOUR HOME | OVERVIEW | BENEFIT |
|---|---|---|
| Reinstatement | • Pay all past due amounts in a single lump-sum payment.<br>• Available if you have the funds to pay now. | • Allows you to bring your mortgage current immediately. |
| Repayment Plan | • Pay all past due amounts together with your regular monthly payments over an extended period of time.<br>• Available if you have sufficient income to cover more than your regular monthly payment. | • Allows you time to bring your mortgage current without having to make a single lump-sum payment. |
| Forbearance Plan | • Make reduced payments or no payments for a specific period of time (for example, six months). During this time, your mortgage will become increasingly delinquent. | • Allows you time to improve your financial situation and possibly qualify for another option, such as a modification, upon completion of the forbearance plan. |
| Modification | • Make modified payments based on new terms.<br>• May require the successful completion of a trial period plan. | • Allows you to bring your mortgage current by permanently modifying your mortgage.<br>• Intended to make your payments or terms more manageable; typically results in a lower monthly payment. |

| OPTIONS TO LEAVE YOUR HOME | OVERVIEW | BENEFIT |
|---|---|---|
| Short Sale | • Sell your property.<br>• Proceeds from the sale are used to pay off a portion of the mortgage balance when it is higher than the sales price of your home. | • Allows you to transition out of your home to avoid foreclosure.<br>• Relocation funds may be available.<br>• The remainder of your mortgage debt after the transfer of ownership may be forgiven, but there may be tax consequences – consult a tax advisor. |
| Deed-in-Lieu of Foreclosure | • Transfer ownership of your property to us in exchange for relief from some or all of the mortgage debt. | • Allows you to transition out of your home if you are unable to sell your home to avoid foreclosure.<br>• Relocation funds may be available.<br>• The remainder of your mortgage debt after the transfer of ownership may be forgiven, but there may be tax consequences – consult a tax advisor. |

EX  L  pg. 2

**Important Facts:**

- There are no fees associated with any foreclosure prevention options that could be available to you. However, you are responsible for any fees and costs that are present on your account as a result of any delinquency on the loan.
- We must receive a complete loss mitigation application in order for us to begin the evaluation process.
- Once we receive your application, we will provide you with an acknowledgement to let you know whether your application is complete or whether documentation or information is missing. In the event information is missing and the application has not been received too close to a scheduled foreclosure sale to permit us to evaluate your application, we will provide you with a reasonable date within which the missing information must be provided to us.
- Prior to our receipt of the missing/complete documents, a foreclosure process may be initiated or if the foreclosure has already been initiated, the foreclosure process will continue until all documents are received unless state law provides otherwise.
- In determining whether you are eligible for a modification program, we may obtain a valuation of your property such as an appraisal or BPO. In such case, we will promptly provide you with a copy of any such valuation regardless of whether you are approved for a modification. Copies of valuations will be provided at no cost to you.
- If we receive a complete loss mitigation application less than 37 calendar days before a scheduled foreclosure sale, there is no guarantee we can evaluate you for a foreclosure alternative prior to sale. Even if we are able to approve you for a foreclosure alternative prior to a sale, a court with jurisdiction over the foreclosure proceedings (if any) or public official charged with carrying out the sale may not halt the scheduled sale.

**Learn More and Act Now**
For more information, please see the Frequently Asked Questions and other information provided with this letter.

**Additional Resources**
For a list of HUD-approved housing counseling agencies that can provide free foreclosure prevention and debt management information, as well as translation or other language assistance, contact one of the following federal government agencies.

- The U.S. Department of Housing and Urban Development (HUD) at (800) 569-4287 or www.hud.gov/counseling
- The Consumer Financial Protection Bureau (CFPB) at (855) 411-2372 or www.consumerfinance.gov/mortgagehelp

**Remember, you must complete and return the entire Application by 11/14/2023. The sooner you provide the information to us, the better!**

If you have any questions, your Dedicated Loan Specialist is Blanca Mondragon and can be reached at (866)-316-2432 or via mail at PO Box 619097, Dallas, TX 75261. Our office hours are Monday through Thursday from 7 a.m. to 8 p.m. (CT), Friday from 7 a.m. to 7 p.m. (CT) and Saturday from 8 a.m. to 12 p.m. (CT). Visit us on the web at www.mrcooper.com for more information.

Sincerely,

Mr. Cooper

Ex L pg 3



**RETURN SERVICE ONLY**
PLEASE DO NOT SEND MAIL TO THIS ADDRESS
PO Box 816050
5801 Postal Road
Cleveland, OH 44181

**12/02/2023**



OUR INFO
**ONLINE**
www.mrcooper.com

YOUR INFO
**LOAN NUMBER**
0692141328

**PROPERTY ADDRESS**
491 WHITE PLAINS RD
ANNISTON, AL 36207

TOMMY WAYNE WOOD
CAROLYNN ELIZABETH WOOD
491 WHITE PLAINS RD
ANNISTON, AL 36207

Dear TOMMY WOOD and CAROLYNN WOOD:

If you are having trouble making your mortgage payments, we welcome the opportunity to discuss possible alternatives that may be available to you. Call us today to learn more about your options and instructions for how to apply for assistance.

This letter is being provided to you as required by law. If you have already submitted an application for loss mitigation, we will continue processing that application. If you have not already submitted an application, the purpose of this letter is to encourage you to do so. If you were placed on a forbearance plan after submitting an application (for example, you informed us you were financially impacted by the pandemic), the loss mitigation review will be paused during the plan. You can always contact us during the forbearance plan if you would like to be reviewed for all possible loss mitigation options. Please note that if a foreclosure is scheduled less than 37 days from the date you receive this notice, or if you submit or have submitted a loss mitigation application to us less than 37 days from the date of the foreclosure sale, there is no guarantee that we can evaluate you for a loss mitigation option in time to stop the foreclosure sale or that a court with jurisdiction over the foreclosure proceeding or public official charged with carrying out the sale will permit us to halt the sale.

**Possible Loss Mitigation Options\*:**
If you need help, the following options may be possible (most are subject to lender approval):

- **Refinance the loan with us or another lender;**
- **Modify the loan terms with us;**
- **Payment forbearance temporarily suspends or reduces your monthly payment (if you are currently on a forbearance plan and would like to be reviewed for other loss mitigation options, please contact us);**
- **Repayment plans that allow missed payments to be made up over time; or**
- **If you are not able to continue paying the mortgage, your best option may be to find more affordable housing. You may be able to either surrender your home through a Deed in Lieu or sell your home and use the proceeds to pay off the loan, even if the proceeds are not enough to pay the loan in full (short sale).**

If you have any questions, your Dedicated Loan Specialist is Blanca Mondragon and can be reached at (866)-316-2432 or via mail at PO Box 619097, Dallas, TX 75261. Our hours of operation are Monday through Thursday from 7 a.m. to 8 p.m. (CT), Friday from 7 a.m. to 7 p.m. (CT) and Saturday from 8 a.m. to 12 p.m. (CT). Visit us on the web at www.mrcooper.com for more information.

**Housing Counselors:**
For help exploring your options, the Federal government provides contact information for housing counselors, which you can access by contacting the Consumer Financial Protection Bureau at http://www.consumerfinance.gov/mortgagehelp, the Department of Housing and Urban Development at http://apps.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or by calling 1-800-569-4287.

Sincerely,

Mr. Cooper

\*Borrower must meet certain requirements to qualify for any of the options/products referenced above. Terms are subject to change.

*Ex'L pg. 4*

Mr. Cooper is a brand name for Nationstar Mortgage LLC. Nationstar Mortgage LLC is doing business as Nationstar Mortgage LLC d/b/a Mr. Cooper. Mr. Cooper is a registered service mark of Nationstar Mortgage LLC. All rights reserved.
If you are a successor in interest (received the property from a relative through death, devise, or divorce, and you are not a borrower on the loan) that has not assumed, or otherwise become obligated on the debt, this communication is for informational purposes only and is not an attempt to collect a debt from you personally.

6-25



### Notices of Error:

If you believe an error has been made with respect to the mortgage loan, you should provide to us in writing the following information: Your name (and the name of the borrower, if you are an authorized third party), the loan account number, and the error you believe has occurred. To submit a notice of error, you must send this information to the following address:

Mr. Cooper
Attn: Notice of Error/Request for Information
PO Box 619098
Dallas, TX 75261-9741

### Requests for Information:

To request information regarding the account, you should provide to us in writing the following information: Your name (and the name of the borrower, if you are an authorized third party), the loan account number, and the information you are requesting with respect to your mortgage loan. To submit a request for information, you must send this information to the following address:

Mr. Cooper
Attn: Notice of Error/Request for Information
PO Box 619098
Dallas, TX 75261-9741

EX  L  pg. 5

# Exhibit M

## Borrower Correspondence Regarding Repayment and Forbearance

Letters outlining early repayment and forbearance options, later reversed.

Carolynn E. Wood, Plaintiff (Pro Se)

MR. and MRS. TOMMY W. (CAROLYNN) WOOD
491 White Plains Road, Anniston, AL 36207
(928)925-8031

11 July 2024

Mr. Cooper Request for Information
PO Box 619098
Dallas, TX 75261-9741

Re: Account #0692141328

SUBJECT: 7/11/2024 Correspondence from Mr. Cooper

1.      Your letter dated 7/11/2024 informed us that we are going to lose our home which is causing extreme emotional distress.

2.      We are therefore now writing to ask for Reasonable Accommodation under the Fair Housing Act. Our request is that, due to disability of both signers on the loan for our home and because both signers for this home are US military veterans, and because Mr. Cooper has only allowed full delinquent payments, not partial payments, and because due to disability we cannot relocate,

   a.      Mr. Cooper should accept monthly mortgage payments of $1711, and partial payments of $900/per month toward the total arrearage amounts, and

   b.      Halt any motions toward foreclosure until an agreement can be reached.

3.      We are also reaching out regarding the reason given for your denial of the VA Repayment Plan which states

   "Denial Reason: Loan Delinquency Exceeds 12 months We are unable to approve you for this solution because the arrears on the loan exceed 12 months' worth of mortgage payments."

4.      The time period of the arrears reaching 12 months is your fault, not ours. Because you would not accept any amount of money that was short of the total amount due, we only reached the 12 month-mark by what should be considered by the VA as "constructive eviction."

5.      Mr. Cooper has forced us to have no rights to our own property because you refused to allow us to make partial payments. We had offered to do so, but you declined.

6.      Constructive eviction is against the law and there should be some way for veterans like us to be protected from harmful corporate greed that allows an amount of time to expire all the while refusing to accept any payments just so you can steal our home from us.

7.      We are asking for a reasonable accommodation in that you accept our partial payments so that two disabled veterans are not displaced and become homeless because of your corporate greed.

Tommy W. Wood

Carolynn Wood

Ex. M pg. 1



P.O. Box 619098
Dallas, TX 75261-9741

OUR INFO
ONLINE
www.mrcooper.com

Tommy W. Wood
491 White Plains Rd
Anniston, AL 36207

July 30, 2024

ACCOUNT INFO
LOAN NUMBER: 0692141328
CASE NUMBER: 0010063296
PROPERTY ADDRESS:
491 White Plains Rd
Anniston, AL 36207
MORTGAGORS:
Tommy W. Wood
Carolynn E. Wood

Dear Tommy W. Wood:

We received your letter on July 22, 2024, and have put together this reply with information that we hope will alleviate your concerns. After an investigation, we are sharing with you what we found.

Thank you for reaching out regarding your loan modification request. We understand that managing financial obligations can be challenging, and we are committed to providing clear information regarding the status of your application.

Upon careful review of your account and the options available, we regret to inform you that your request for a loan modification has been denied. Below, we outline the reasons for this decision and the evaluations conducted:

1. **Government Forbearance:** Your application for government forbearance was denied because your loan delinquency exceeds 12 months. This program requires that the account not be more than 12 months delinquent to qualify for repayment options under this scheme.

2. **Traditional Modification:** We also evaluated the possibility of a traditional modification. Unfortunately, this was not approved because the investor associated with your loan does not participate in such modifications. Additionally, the proposed terms would have resulted in an increase in your monthly payment, which is contrary to the objectives of the modification programs.

Mr. Cooper is a brand name for Nationstar Mortgage LLC. Nationstar Mortgage LLC is doing business as Nationstar Mortgage LLC d/b/a Mr. Cooper. Mr. Cooper is a registered service mark of Nationstar Mortgage LLC. All rights reserved.

If you are a successor in interest (received the property from a relative through death, devise, or divorce, and you are not a borrower on the loan) that has not assumed, or otherwise become obligated on the debt, this communication is for informational purposes only and is not an attempt to collect a debt from you personally.

EQUAL HOUSING
OPPORTUNITY

Ex M pg 2



## Here are the details considered in this decision:

- Gross Income: $12,081.20
- Current Principal and Interest (P&I): $1,494.44
- Capped Unpaid Principal Balance (UPB): $312,884.82
- Interest Rate: 7.375%
- Amortization Duration: 339 months
- Proposed P&I: $2,189.39

This modification would have increased your monthly payment by $694.95, which does not meet the standard criteria for reducing financial burden through modification.

We understand that these outcomes may not be what you were hoping for. As per the current situation and the guidelines we must adhere to, we are unable to negotiate or offer special terms outside of these frameworks. You may consider the following options:

1. **Reapplication:** You may consider reapplying for the loan modification if there is a significant change in your financial circumstances that could favourably affect the DTI ratio or lead to a greater reduction in your monthly payment.

2. **Reinstatement:** You can choose to reinstate your account by clearing the past dues in full, if feasible.

3. **Liquidation Options:** If maintaining the loan is no longer viable, exploring liquidation options such as Short Sale or Deed in Lieu might be another path to consider.

---

### RESPA RESPONSE TO NOTICE OF ERROR

Under applicable federal law, we are required to inform you that after completing a reasonable investigation into the issues described above, it has been determined that no error occurred. You have the right to access the documents we used in this investigation, and we have enclosed them. Those documents are:
- Loss Mitigation Evaluation Notice
- Mortgage Assistance Application

---

Reach out to us right away. If you can submit the following documents to us immediately — within 15 calendar days from the date of this letter — we can review your application again and hopefully get you approved.

- Modification Application
- 2 Months' Proof of Income for all sources (i.e., last quarter's profit and loss statement, pay stubs, award letter of benefits statement, bank statements, etc.)
- 2022 Tax Return with Extension Form 4868 or 2023 Tax Return (signed and dated)

Please send your documents to:

Mr. Cooper
Attn: Modification Department

Ex M pg 3

**Tommy and Carolynn Wood**
491 White Plains Road
Anniston, AL 36207
(928)925-8031 - carolynn.e.c.wood@gmail.com

August 13, 2024

Mr. Cooper
via portal upload

As requested, the purpose of this letter is to recap the events that led to two separate forbearances.

1. Our initial hardships that caused the first forbearance:

a) Hardship #1 – April 2022, our first payment was due to Mr. Cooper. But, Covid-related deaths had already begun in our immediate family with the first loss on 2/3/2022, the second, on 3/5/22, the third on 5/5/2022, and the fourth on 6/26/2022. Travel to/from each of the funerals, and caring for the sibling who lost his wife on 5/5/2022 took all of our money. Mr. Cooper allowed a forbearance.

b) Believing that we were ready to resume mortgage payments, sometime in November 2022 we signed a new contract with Mr. Cooper which increased our interest rate by 1% from 3.6% to 4.6%.

c) We made 6 payments from November 2022 through April 2023:
   1) 11/16/2022 – 1,701.31
   2) 12/21/2022 – 1,701.31
   3) 02/01/2023 – 1,701.31
   4) 03/16/2023 – 1,958.99
   5) 05/01/2023 – 1,797.81

2. The events that kept us in the hardships causing the second forbearance:

a) 11/26/2022 another close family member died.

b) The widow is a sibling who is mentally disabled and we became her guardians. The expenses of travel to/from Alabama to North Carolina to place sibling in an assisted living facility and court hearings on four different dates between December 2022 and March 2023 took all of our funds.

c) We continued to barely survive financially yet had indeed paid the mortgage to the best of our ability from December 2022 going forward, but in May 2023 we reentered another forbearance.

3. The only hardship now – that is keeping us in the hardship:

*Ex M pg. 4*

a) When it came time to resume our mortgage payments after the second forbearance, Mr. Cooper refused our payments unless we paid the full amount due of approximately $17,000-19,000.

b) We were not able to accept a refinance offer which would double our interest rate to over 7%. If we had completed that contract, we still would not have been able to remain in our home because the payments were going to be too high.

c) Because we refused to refinance, Mr. Cooper refused to even allow us to resume our previously agreed upon monthly mortgage payments which were to have started back up in November 2023.

d) However, we did have to figure out some way to at least pay the escrow so that our insurance wouldn't lapse. We were able to do that through the separate escrow payment portal online at Mr. Cooper's website.

e) When we got caught paying the escrow through the separate escrow portal Mr. Cooper shut that option down.

4. <u>Continued hardship has been solely due to Mr. Cooper's actions/inactions</u>:

a) In October 2023, we offered to pay our mortgage payments plus another $900 each month to catch up the deficit. Mr. Cooper said, "no." We probably would have been caught up by now.

b) We asked again. This time we asked you to accept 1 and a 1/2 payments as reasonable accommodation under the Fair Housing Act. Mr. Cooper said, "no."

c) Mr. Cooper's unwillingness to allow us to make any payments at all pushed us over the one year point wherein we are now told by Mr. Cooper that we don't qualify for any Veterans Affairs program.

d) Mr. Cooper states that we haven't made any payments since April 2023, however, we are not getting any credit for having paid into our escrow in January 2024.

e) Emotional damage/distress is causing suicidal ideations on a constant basis. Therapy is helping somewhat. But every time we get a letter stating we have only 2 choices: Short Sale or Deed-in-Lieu of Foreclosure, it just sets us back once again.

f) Too often, veterans like us are left wondering why not just end it all? The next letter that comes in the mail, may just do the job. So, be it known – that if that does happen, we tried our best.

/s/Tommy W. Wood                    /s/Carolynn E. Wood
Tommy Wood                          Carolynn Wood

Ex M pg 5

# Exhibit N

## Servicer Correspondence Does Not Acknowledge Errors and Loss-Draft Mishandling

Correspondence acknowledging borrower communications, yet does not address Plaintiff's complaint about internal accounting errors.

Carolynn E. Wood, Plaintiff (Pro Se)



**mr.**
**cooper** P.O. Box 619098
Dallas, TX 75261-9741
CHANGING THE FACE OF HOME LOANS

OUR INFO
ONLINE
www.mrcooper.com

Carolynn Wood
491 White Plains Rd
Anniston, AL 36207

November 19, 2024

ACCOUNT INFO
LOAN NUMBER: 0692141328
CASE NUMBER: 0011009280
REFERENCE: 241113-16935005
PROPERTY ADDRESS:
491 White Plains Rd
Anniston, AL 36207
MORTGAGORS:
Tommy W. Wood
Carolynn E. Wood

Dear Carolynn Wood:

We received your correspondence through the Consumer Financial Protection Bureau (CFPB) and an email on November 13, 2024, and have compiled this reply with information that we hope will alleviate your concerns. After an investigation, we are sharing with you what we found.

### Loss Mitigation

We understand that varying factors may arise during homeownership that prevent our customers from remitting timely mortgage payments. We are dedicated to assisting our borrowers in preserving their dream of homeownership through the assistance programs made available by the investors of the loans we service. As you may know, the right option depends on the individual circumstances, which must be evaluated according to the criteria and guidelines set forth by the investor. As such, the terms of the loss mitigation workout are not negotiable.

In cooperation with the investors of the loans we service and our executive team, we were able to offer special Forbearance Plans to our impacted customers in an effort to ease the burden of making a mortgage payment while experiencing a hardship. The Forbearance Plan was a temporary suspension or reduction of the mortgage payments intended to allow customers the time and flexibility to manage the financial challenges affecting their ability to pay their mortgage. Our records indicate that you were

Mr. Cooper is a brand name for Nationstar Mortgage LLC. Nationstar Mortgage LLC is doing business as Nationstar Mortgage LLC d/b/a Mr. Cooper. Mr. Cooper is a registered service mark of Nationstar Mortgage LLC. All rights reserved.

If you are a successor in interest (received the property from a relative through death, devise, or divorce, and you are not a borrower on the loan) that has not assumed, or otherwise become obligated on the debt, this communication is for informational purposes only and is not an attempt to collect a debt from you personally.



EQUAL HOUSING
OPPORTUNITY

*Ex  N  pg. 1*



enrolled in a voluntary Forbearance Plan from March 1, 2022, through August 31, 2022, and May 1, 2023, through October 31, 2023.

Please note the suspended payments were not waived under the Forbearance Agreement. Once the Forbearance Plan ended, the loan had to be evaluated for a loss mitigation option if reinstating was not affordable, as Mr. Cooper was unable to accept partial payments due to the delinquency. Each loan is evaluated based on the guidelines set forth by the investor of the loan account, and we are unable to guarantee the approval of any workout without a thorough review, nor are the terms of an approved workout negotiable. Please note with a modification, the current terms of your mortgage may change, such as the interest rate.

On April 10, 2024, the loan was approved for a modification, resulting in an interest rate increase from 4.625% to 7.375% and a principal and interest payment increase from $1,494.44 to $2,179.08. The investor approved the terms of the modification, but on May 22, 2024, you requested the modification be withdrawn. The modification was rejected on May 23, 2024, and a denial letter was issued.

Our records show subsequent denials were issued on July 11, 2024, and October 22, 2024, because the loan exceeded the delinquency requirements. Enclosed for your records are copies of the Denial Letters dated July 11, 2024, and October 22, 2024.

Mr. Cooper is reviewing your most recent request for loss mitigation assistance. An update regarding this review will be issued under separate cover. Mr. Cooper will review the loan for all available loss mitigation workouts.

Reinstatement

The amount to reinstate the loan as of the date of this letter is $33,883.69; this amount is subject to change, and we ask that you please get in touch with us before remitting funds. Please see the breakdown below:

| | |
|---|---|
| Past Due Principal and Interest (P&I) | $28,394.36 |
| Escrow (Taxes and Insurance) | $4,990.21 |
| Corporate Advance Total | $260.00 |
| Late Fee Balance | $239.12 |
| Payments Delinquent | 19 |
| Reinstatement Amount | $33,883.69 |

As of the date of this letter, the loan account is due for the May 5, 2023 payment and all subsequent payments due thereafter. Please note when an account is multiple past-due payments, online access is restricted for remitting payments. Enclosed for your review is a copy of the Transaction History, which reflects the dates that we received and posted payments to the account, as well as applicable escrow disbursements and/or deposits and fee assessments and/or adjustments.

Due to the account's delinquency status, we are unable to accept any payment less than the full amount due. Because of this, our agents are unable to accept partial payments. Mr. Cooper believes its record of the account, including the calculation of all amounts due and owing therein, is correct.

Ex N pg. 2



### Loss Draft

We regret to hear of any challenges you have experienced during your time of loss and recovery. Mr. Cooper understands your concerns regarding the Loss Draft process, and the desire to have funds released timely to complete the repairs on your home.

Mr. Cooper is in receipt of your documents evidencing the damage sustained at the mortgaged property and initiated the loss draft process to monitor the progress of the repairs. Please be informed a restricted escrow account was established to hold the claim funds for your monitored insurance claim. A portion of the claim funds will be released during various stages of the loss draft process.

A claim was created on September 16, 2024, and we received the Adjuster's Worksheet. The Attestation to Repair the Property document was received on September 23, 2024. This document is a crucial step in the process, ensuring that the necessary repairs are planned and verified.

On October 2, 2024, an Orion Insurance claim check number 006975 for $115,938.75 was received. This check was sent for deposit into a restricted escrow account to ensure the funds were allocated appropriately for the repairs.

A $10,000.00 advance was sent by mail to expedite the restoration on October 9, 2024. On October 10, 2024, a 90% inspection was requested. This request was noted, and we subsequently received 10% inspection results from Safeguard on October 23, 2024. These inspection results are essential for verifying the progress of the repairs and ensuring that the funds are being used correctly.

It is important to note that 25% of the inspection results are required to release additional funds. This step maintains transparency and accountability throughout the repair process. The established delinquent monitored procedures disbursed the funds appropriately. We are committed to the accurate execution of all processes. Currently, funds of $105,938.75 are in the hazard loss draft funds account.

The hazard loss draft funds, which were erroneously applied to the loan to reinstate the account on October 4, 2024, were reversed on October 29, 2024, as they were applied in error. The funds were reversed and deposited into the hazard loss draft funds account for monitoring. At this time, no adjustments are warranted.

We regret any frustration this matter may have caused; however, we respectfully deny any wrongdoing in connection with this loan file and maintain that we have serviced the loan in accordance with all applicable laws and regulations.

| RESPA RESPONSE TO NOTICE OF ERROR |
| --- |
| Under applicable federal law, we are required to inform you that after completing a reasonable investigation into the issues described above, it has been determined that an error occurred because the hazard loss draft funds were credited to the past due balance on October 4, 2024. On October 29, 2024, we corrected the error by reversing the application of the funds and applying them back to the hazard loss draft account for monitoring. You have the right to access the documents we used in this investigation, which we have enclosed. Those documents are:<br>• Evaluation Letters (4)<br>• Transaction History<br>• Unexecuted Modification Agreement |

*Ex N pg. 3*



If you have any questions, your Dedicated Loan Specialist is Shereka Irving, who can be reached at 888-480-2432 or via mail at the address listed above.  Our hours of operation are Monday through Thursday from 7 a.m. to 8 p.m. (CT), Friday from 7 a.m. to 7 p.m. (CT), and Saturday from 8 a.m. to 12 p.m.  Visit us on the web at www.mrcooper.com for more information.

I hope this information is helpful and addresses your concerns. If you have any specific questions about the information I have provided, please contact me directly, using the information below.

Sincerely,

Jenee Hall-Butler
Mr. Cooper
Customer Relations Specialist
PO Box 619098
Dallas, TX 75261-9741
Phone: 469-851-4919
E-mail: Jenee.HallButler@mrcooper.com
Enclosures 6
By CFPB Portal

Are you experiencing a financial hardship? Our local non-profit partners can help with financial counseling and other services. Please visit these websites for assistance:

- Hud.gov
- Neighborworks.org

*Ex N pg. 4*

# Exhibit O

## Borrower Communications and Retaliatory Default Sequence

Correspondence (Apr 11–Nov 29 2024) documenting modification appeals, denials, and retaliation.

Carolynn E. Wood, Plaintiff (Pro Se)

# mr. cooper®

CHANGING THE FACE OF HOME LOANS

Mr. Cooper
8950 Cypress Waters Blvd.
Coppell, TX 75019
Phone: (866) 316-2432
Fax: (214) 488-1993
www.mrcooper.com

11/20/2024

Carolynn Elizabeth Wood
491 White Plains Rd
Anniston, AL 36207-0406

RE:    Loan ("Loan") Number:    692141328
       Property Address:        491 WHITE PLAINS RD
                                ANNISTON, AL 36207

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED, OR IS SUBJECT TO AN AUTOMATIC STAY OF A BANKRUPTCY ORDER UNDER TITLE 11 OF THE UNITED STATES CODE, THIS NOTICE IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO IMPOSE PERSONAL LIABILITY FOR SUCH OBLIGATION. BY PROVIDING THIS NOTICE WE DO NOT WAIVE ANY APPLICABLE EXEMPTIONS FROM STATE OR FEDERAL COLLECTION LAWS.**

Dear Tommy Wayne Wood and Carolynn Elizabeth Wood:

This letter is formal notice by Mr. Cooper ("Mr. Cooper") on the above referenced loan ("Loan"), that you are in default under the terms of the documents creating and securing your Loan, including the Note ("Note") and Deed of Trust/Mortgage/Security Deed ("Security Instrument"). The nature of the default is the failure to make the payments required for this Loan, as agreed to in the Note and Security Instrument. Failure to respond to this letter may result in the loss of the property ("the Property") referenced above.

As of the date of this notice, the total past due amount required to cure the default is $33,943.47, which consists of the following:

| | |
|---|---|
| Total Monthly Payments Due: | $33,384.57 |
| Late Charges: | $298.90 |
| Uncollected NSF Fees: | $0.00 |

---

*Mr. Cooper is a brand name for Nationstar Mortgage LLC. Nationstar Mortgage LLC is doing business as Nationstar Mortgage LLC d/b/a Mr. Cooper. Mr. Cooper is a registered service mark of Nationstar Mortgage LLC. All rights reserved.*

*Nationstar Mortgage LLC d/b/a Mr. Cooper is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been discharged, but is provided for informational purposes only.*

*If you are a successor in interest (received the property from a relative through death, devise, or divorce, and you are not a borrower on the loan) that has not assumed, or otherwise become obligated on the debt, this communication is for informational purposes only and is not an attempt to collect a debt from you personally.*

PACKAGE_BRE_AL01 P500OCT24.0
Page 1 of 6

*Ex O pg 1*

20396113_133_1018100882



010988-00005731-0 [PAG.0] [DOC 233 3/8 Id 683713]

**HUD Counseling:** For additional assistance, the United States Department of Housing and Urban Development ("HUD"), which is a government agency, sponsors housing counseling agencies throughout the country that can provide you advice on foreclosure alternatives, budgetary issues, and even assistance with understanding this notice. There is no fee for this service. If you would like assistance, you can contact a HUD-approved housing counselor by calling 1-800-569-4287 or you can reach the HOPE Hotline number at 1-888-995-HOPE. You may also visit the HUD website at http://www.hud.gov/counseling.

**HUD Consejería:** Para obtener ayuda adicional, el Departamento de Vivienda y Desarrollo Urbano ("HUD") de Estados Unidos, que es una agencia del gobierno, patrocina agencias de asesoría de vivienda en todo el país que le puede proporcionar asesoramiento sobre las alternativas de ejecución hipotecaria, las cuestiones presupuestarias, e incluso la asistencia con la comprensión de este aviso. No hay que pagar por este servicio. Si desea ayuda, puede ponerse en contacto con un asesor de vivienda aprobado por HUD llamando al 1-800-569-4287 o puede llegar a la Línea Directa de HOPE al 1-888-995-HOPE. También puede visitar el sitio web de HUD en http://www.hud.gov/counseling.

If you are hearing or speech impaired, you can access HUD's toll-free number via Text Telephone (TTY) by calling the Federal Information Relay Service at (800) 877-8339.

**Attention Servicemembers and Dependents:** Servicemembers on "active duty" or "active service", or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC §§ 3901 et seq.) (SCRA). If you are entitled to or have questions as to whether you are entitled to legal protections under SCRA, you should contact your unit's Judge Advocate, your installation's Legal Assistance Officer at https://legalassistance.law.af.mil/, or the Military OneSource at www.militaryonesource.mil/legal or 1-800-342-9647 to find out more information. You can also contact (866) 316-2432 if you have any questions about your rights under SCRA.

If you disagree with the assertion that the Loan is in default, or if you disagree with the calculation of the total amount past due required to cure the default, you may contact us by calling (866) 316-2432 ((888) 364-2432 (TDD)). If you prefer to reach us by mail, please include your Loan number and the Property address with your question(s), and send to:

> Mr. Cooper
> PO Box 619098
> Dallas, TX 75261

If you have questions about any of the items contained in this notice, or need any additional information, please contact Mr. Cooper at (866) 316-2432 ((888) 364-2432 (TDD)), Monday through Thursday from 7 a.m. to 8 p.m. (CT), Friday from 7 a.m. to 7 p.m (CT) and Saturday from 8 a.m to 12 p.m. (CT).

This matter is very important. Please give it your immediate attention.

Sincerely,

Mr. Cooper
(866) 316-2432
(888) 364-2432 (TDD)
Monday through Thursday from 7 a.m. to 8 p.m. (CT), Friday from 7 a.m. to 7 p.m (CT) and Saturday from 8 a.m to 12 p.m. (CT)

Enclosure:    Information on Avoiding Foreclosure
              Additional Statutory Required Disclosures

*EX O pg. 2*



# Information on Avoiding Foreclosure

These options may be available to you depending on your hardship. There are options to help you stay in your home and bring your mortgage current, and options that allow you to leave your home while avoiding foreclosure. We can answer any questions you may have about these options, including the general eligibility requirements.

| OPTIONS TO STAY IN YOUR HOME | OVERVIEW | BENEFIT |
|---|---|---|
| Reinstatement | ▪ Pay all past due amounts in a single lump-sum payment.<br>▪ Available if you have the funds to pay now. | ▪ Allows you to bring your mortgage current immediately. |
| Repayment Plan | ▪ Pay all past due amounts together with your regular monthly payments over an extended period of time.<br>▪ Available if you have sufficient income to cover more than your regular monthly payment. | ▪ Allows you time to bring your mortgage current without having to make a single lump-sum payment. |
| Payment Deferral | ▪ Defer repayment of two to six months of past-due principal and interest payments, and certain other amounts into a non-interest bearing balance due and payable at the maturity of the mortgage or earlier upon the sale or transfer of the property, refinance of the mortgage, or payoff of the interest-bearing unpaid principal balance. | ▪ Allows you to bring your mortgage current by delaying repayment of past-due principal and interest and certain other amounts without changing other terms of your mortgage.<br>▪ Interest is not charged on those amounts. |
| Forbearance Plan | ▪ Make reduced payments or no payments for a specific period of time (for example, six months). During this time your mortgage will become increasingly delinquent. | ▪ Allows you time to improve your financial situation and possibly qualify for another option, such as a modification, upon completion of the forbearance plan. |
| Modification | ▪ Make modified payments based on new terms.<br>▪ Requires your successful completion of a three-month trial period plan. | ▪ Allows you to bring your mortgage current by permanently modifying your mortgage.<br>▪ Intended to make your payments or terms more manageable; typically results in a lower monthly payment. |
| OPTIONS TO LEAVE YOUR HOME | OVERVIEW | BENEFIT |
| Traditional Sale (selling with equity) | ▪ Sell your property.<br>▪ Proceeds from the sale are used to pay off the mortgage debt and any other debts secured by the property. | ▪ Keep the excess proceeds from the sale once all debts and closing costs are paid.<br>▪ Allows you to transition out of your home to avoid foreclosure. |

*Ex D pg. 3*

| | | |
|---|---|---|
| **Short Sale** | ▪ Sell your property.<br><br>▪ Proceeds from the sale are used to pay off a portion of your mortgage balance when you owe more on your mortgage than the home is worth. | ▪ Allows you to transition out of your home to avoid foreclosure.<br><br>▪ Relocation funds may be available.<br><br>▪ The remainder of your mortgage debt after the transfer of ownership may be forgiven, but there may be tax consequences – consult a tax advisor. |
| **Mortgage Release (Deed-in-Lieu of Foreclosure)** | ▪ Transfer ownership of your property to us in exchange for relief from some or all of the mortgage debt. | ▪ Allows you to transition out of your home if you are unable to sell your home to avoid foreclosure.<br><br>▪ Relocation funds may be available.<br><br>▪ The remainder of your mortgage debt after the transfer of ownership may be forgiven, but there may be tax consequences—consult a tax advisor. |

*Ex O Pg. 4*



# Exhibit P

## Borrower Requests and Compliance Under VA Relief Programs

Correspondence (Feb 28–Aug 13 2024) showing compliance with VA COVID-19 and VASP relief programs.

Carolynn E. Wood, Plaintiff (Pro Se)

**TOMMY W. and CAROLYNN E. WOOD**
491 White Plains Road, Anniston, AL 36207
(928)925-8031     Carolynn.e.e.wood@gmail.com

February 28, 2024                          via Certified Mail # _____

Mr. Cooper Mortgage Company
P.O. Box 619097
Dallas, TX 75261

Subject: Loan #0692141328 – Request for VA Disaster Modification

Dear Mr. Cooper,

1.     We have just this day been made aware of the February 9, 2024, Veterans Benefits Administration's Circulars 26-24-2, and 26-24-3, Department of Veterans Affairs February 9, 2024, and would appreciate your immediate assistance.

2.     IAW the VA's assistance outlined in the Circulars, we are writing to request the following actions. based on our family's personal assessment of our current and future financial needs following our forbearance:

        In our case all the following conditions are met:
             a. We missed at least one payment covered by a COVID-19 forbearance;
             b. Our VA guaranteed loan was made on or after March 1, 2020; and
             c. We occupy the property securing the guaranteed loan, as our primary residence.

3.     We can resume monthly payments, but we cannot pay all of the amounts missed under the COVID-19 forbearance arrearages all at once, and within a brief time will more than likely cause hardship because we have no savings left at all.

4.     So, we believe that the VA's purchase of the arrearages, plus Mr. Cooper's modification of the guaranteed loan would achieve at least a 10 percent reduction in our monthly principal and interest payment if Mr. Cooper does not increase our current 4.6% interest rate.

5.     We are also asking for a 360-month repayment schedule for the modified loan, as measured from the due date of the first installment required under the modification.

6.     We are convinced that we can benefit from the VA's assistance in purchasing our arrearages and we are asking that Mr. Cooper modify the guaranteed loan with that in mind. (The HAF program is closed in Alabama)

7.     It is our belief that the VA never intended for the Covid-19 relief Forbearance relief to cause us veterans more harm than already being suffered, and for that reason, we personally did not understand why our first modification increased our interest rate 1%. When we could not afford the new payments, we had to go right back into another forbearance. And although we have been restricted from making any payments, Mr. Cooper still added late fees currently totaling over $150.00.

Sincerely,

*Tommy W. Wood*                                         *Carolynn Wood*

                                                        Ex P pg. 1

**Tommy and Carolynn Wood**
491 White Plains Road
Anniston, AL 36207
(928)925-8031 - carolynn.e.c.wood@gmail.com

August 13, 2024

Mr. Cooper
via portal upload

We have now provided everything in the way of documents for income.

We believe that we are completely eligible for the VA's VASP relief. Please proceed to that step.

/s/Tommy W. Wood                          /s/Carolynn E. Wood
Tommy Wood                                Carolynn Wood

*Ex P pg. 2*

# Exhibit Q

**Initial Servicer Correspondence Offering ~~Forbearance~~ and Repayment**

V, A, S, P,

Letters (Mar 31 & Jun 27 2023) confirming early cooperation and acknowledgment of curable arrears.

*Carolynn E Wood*

Carolynn E. Wood, Plaintiff (Pro Se)

*Exhibits R Removed ( Duplicated )*

# Exhibit S

---

## Final Demand and Pre-Suit Correspondence

Letters (Jun 27–Sept 9 2025) showing continued obstruction and acknowledgment of prior 'error.'

Carolynn E. Wood, Plaintiff (Pro Se)

9/9/2025

Mr. Cooper Loss Mitigation

RE: Claim Number: 12394723

SUBJECT: FAIR WARNING of Pending Litigation

We are not threatening, we are proposing that you consider the expense of a federal court action for declaratory relief and breach of contract versus providing the funds you have continued to keep from us.

Attached is a draft. Please read it.

If after 15 days from today we hear nothing back from you, we will assume that you have decided **not to avoid** this proposed lawsuit, and we will move forward.

Do not pour over the enclosed proposed filing trying to poke holes in our arguments thinking you will find some legal loophole to have this dismissed. In Alabama we have a lot of options for pro bono assistance. Plus, there will be hundreds of pages of exhibits that no jury would ignore.

You might want to revisit Belton v. Nationstar from Lousiana Federal Court a few years' back. Mrs. Belton's case pretty much mirrors ours.

We have done our due diligence. Now, do yours.

/s/

Carolynn E. Wood
491 White Plains Road
Anniston, AL 36207
(928)925-8031

*Ex S. pg. 1*

# Exhibit T

**Verified Demolition and Restoration Costs (Thrasher
Contracts & Receipts)**

Contracts, invoices, and payment confirmations establishing proper use of insurance
proceeds for demolition and restoration work.

*Carolynn E. Wood*

Carolynn E. Wood, Plaintiff (Pro Se)



# "PARTNERSHIPS BUILT FOR LIFE..."

3053 Steele Station Road, Rainbow City, AL 35906 - Office: 256-413-0612 - Fax: 256-413-0613 - office@ttcllc.pro

9/19/2024

### *DEMOLITION*

**CAROLYNN WOOD**
**(928) 925-8031**
**491 WHITE PLAINS ROAD**
**ANNISTON, AL 30267**
**carolynn.e.c.wood@gmail.com**

: ONE YEAR LIMITED WARRANTY ON LABOR
: MANUFACTURERS WARRANTY ON ALL NEW MATERIAL AND PARTS
: PERMITS WHEN REQUIRED

TRENT THRASHER CONSTRUCTION, LLC IS FULLY LICENSED AND INSURED – GENERAL LIABILITY AND WORKERS COMPENSATION
ANY CHANGES FROM WHAT IS OUTLINED IN THIS CONTRACT BY SELLER, BUYER, EMPLOYEE OR SUBCONTRACTOR, MUST BE PRESENTED IN WRITTEN FORM
AND SIGNATURE APPROVED BY AN OFFICER OF TRENT THRASHER CONSTRUCTION, LLC.

### SCOPE OF WORK:
- **PROVIDE DUMPSTER FOR DEBRIS**
- **PORTABLE TOILET**
- **PROVIDE EQUIPMENT FOR DEMOLITION**
- **DEMOLISH EXISTING FIRE DAMAGED STRUCTURE**
- **REMOVAL OF DEBRIS**
- **PRESSURE WASH FLOOR AFTER DEBRIS REMOVAL**

| | |
|---|---|
| DRAW FOR MOBILIZATION AT SIGNING | $ 5,472.00 |
| DRAW DUE AT COMPLETION OF CONTRACT | $ 5,472.00 |
| **TOTAL AMOUNT OF CONTRACT** | **$ 10,944.00** |

*THE ABOVE PRICE IS GOOD FOR 14 DAYS FROM DATE LISTED ON CONTRACT*

THE PRICES, SPECIFICATIONS AND CONDITIONS ARE SATISFACTORY AND ARE HEREBY ACCEPTED SUBJECT TO THE TERMS PROPOSED ABOVE, PAYMENT WILL BE MADE AS OUTLINED ABOVE, ALL WORK WILL BE DELAYED
IF CONTRACT PAYMENTS ARE NOT MET. A 15% FEE PER MONTH WILL BE ADDED TO ANY PAYMENT NOT RECEIVED PER CONTRACT AGREEMENT. ANY COLLECTION OR ATTORNEY FEE'S WILL BE THE RESPONSIBILITY OF
THE BUYER. ALL PRICES QUOTED ARE VALID FOR FOURTEEN (14) DAYS FROM ABOVE DATE. IF YOU ARE REQUIRED TO HAVE A CO (CERTIFICATE OF OCCUPANCY), IT WILL NOT BE APPLIED FOR UNTIL ALL INVOICES (THIS
INCLUDES WORK ORDER CHANGES, EXTRAS OR ADD-ONS) ARE PAID IN FULL. SIGNATURE REQUIRED FROM BOTH PARTIES. THIS CONTRACT IS NOT BINDING UNTIL SIGNED BY BOTH SELLER AND BUYER.

TRENT THRASHER CONSTRUCTION, LLC
tb

**(BUYER)**
AUTHORIZED SIGNATURE _~~Carolynn E Wood~~_____    DATE _9/20/2024_

TRENT THRASHER CONSTRUCTION, LLC (SELLER)
AUTHORIZED SIGNATURE _____    DATE _____

*Ex T pg. 1*



## "PARTNERSHIPS BUILT FOR LIFE..."

3053 Steele Station Road, Rainbow City, AL 35906  -  Office: 256-413-0612  -  Fax: 256-413-0613  -  office@ttcllc.pro

9/25/2024

### *DEMOLITION OF POOL, DECK, FENCE & WOODEN TOWER*

**CAROLYNN WOOD**
**(928) 925-8031**
**491 WHITE PLAINS ROAD**
**ANNISTON, AL 30267**
**carolynn.e.c.wood@gmail.com**

: ONE YEAR LIMITED WARRANTY ON LABOR
: MANUFACTURERS WARRANTY ON ALL NEW MATERIAL AND PARTS
: PERMITS WHEN REQUIRED

TRENT THRASHER CONSTRUCTION, LLC IS FULLY LICENSED AND INSURED – GENERAL LIABILITY AND WORKERS COMPENSATION
ANY CHANGES FROM WHAT IS OUTLINED IN THIS CONTRACT BY SELLER, BUYER, EMPLOYEE OR SUBCONTRACTOR, MUST BE PRESENTED IN WRITTEN FORM
AND SIGNATURE APPROVED BY AN OFFICER OF TRENT THRASHER CONSTRUCTION, LLC.

**SCOPE OF WORK:**
- **PROVIDE DUMPSTER FOR DEBRIS**
- **PROVIDE PORTABLE TOILET**
- **PROVIDE EQUIPMENT FOR DEMOLITION**
- **DEMOLISH EXISTING POOL STRUCTURE**
- **FILL IN EXISTING POOL STRUCTURE AREA WITH CONCRETE MATERIALS FROM DEMOLITION**
- **TRANSPORT NINE (9) LOADS OF CHERT AND USE AS ADDITIONAL FILLER FOR POOL AREA**
  - **FILL AND GRADE POOL AREA**
- **DEMO AND REMOVE WOODEN FENCING AROUND ENTIRE POOL AREA**
- **DEMO AND REMOVE WOODEN TOWER IN POOL AREA**
- **DEMO AND REMOVE WOODEN DECK NEAR HOUSE AND ADJACENT TO POOL AREA**

| | |
|---|---|
| DRAW FOR MOBILIZATION AT SIGNING | $ 6,390.00 |
| DRAW DUE AT COMPLETION OF CONTRACT | $ 6,390.00 |
| **TOTAL AMOUNT OF CONTRACT** | **$ 12,780.00** |

*THE ABOVE PRICE IS GOOD FOR 14 DAYS FROM DATE LISTED ON CONTRACT*

THE PRICES, SPECIFICATIONS AND CONDITIONS ARE SATISFACTORY AND ARE HEREBY ACCEPTED SUBJECT TO THE TERMS PROPOSED ABOVE. PAYMENT WILL BE MADE AS OUTLINED ABOVE. ALL WORK WILL BE DELAYED
IF CONTRACT PAYMENTS ARE NOT MET. A 15% FEE PER MONTH WILL BE ADDED TO ANY PAYMENT NOT RECEIVED PER CONTRACT AGREEMENT.  ANY COLLECTION OR ATTORNEY FEE'S WILL BE THE RESPONSIBILITY OF
THE BUYER.  ALL PRICES QUOTED ARE VALID FOR FOURTEEN (14) DAYS FROM ABOVE DATE. IF YOU ARE REQUIRED TO HAVE A CO (CERTIFICATE OF OCCUPANCY), IT WILL NOT BE APPLIED FOR UNTIL ALL INVOICES (THIS
INCLUDES WORK ORDER CHANGES, EXTRAS OR ADD-ONS) ARE PAID IN FULL. SIGNATURE REQUIRED FROM BOTH PARTIES. THIS CONTRACT IS NOT BINDING UNTIL SIGNED BY BOTH SELLER AND BUYER.

**TRENT THRASHER CONSTRUCTION, LLC**
tb

**(BUYER)**
**AUTHORIZED SIGNATURE** _Carolynn E Wood_                    DATE _9/27/2024_

TRENT THRASHER CONSTRUCTION, LLC (SELLER)

AUTHORIZED SIGNATURE _____     DATE _____

*Ex T pg. 2*



From    Electric Plus, Inc.
746 Lakeview Dr
Heflin, AL 36264
bryantjenkins@gmail.com
+12568484018

| | | |
|---|---|---|
| Job ID # | 100357224 | |
| Invoice # | 40611 | |
| Payment terms | COD | |
| Issue date | Jun 17, 2025 | |
| Work start date | Jun 01, 2025 | |
| Job Address | 491 White Plains Rd, Anniston AL, 36207 | |

Invoice for    Carolynn Wood
491 White Plains Rd
Anniston, AL 36207
carolynn.e.c.wood@gmail.com
+19289258031

| Item | Quantity | Price | Total |
|---|---|---|---|
| 240v 60amp Circuit Underground feeder | 1 | $4,500.00 | $4500.00 |
| 60 amp panel box Nema 3 | 1 | $1,089.00 | $1089.00 |
| 240v 30 amp Circuit Underground | 1 | $3,500.00 | $3500.00 |

| | |
|---|---|
| Subtotal | $9,089.00 |
| Tax | $0.00 |
| Total | $9,089.00 |
| Payment - Offline card | $9,089.00 |
| Balance Due | $0.00 |

*Ex T pg. 3*